UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                      :

PHILIP PIDOT, NANCY HAWKINS and STEVEN    :
AXELMAN, individually and as representatives of    :
eligible Republican Party voters in Suffolk, Nassau and   :   Civil Action No.  1:16-CV-859[FJS/CFH]
Queens Counties within New York's Third Congressional : 
District,                                           :

                          Plaintiffs,           :   **COMPLAINT**

       -against-                              :

                                                      :
NEW YORK STATE BOARD OF ELECTIONS;        :
SUFFOLK COUNTY BOARD OF ELECTIONS;        :
NASSAU COUNTY BOARD OF ELECTIONS; BOARD :
OF ELECTIONS IN THE CITY OF NEW YORK;      :
PETER KOSINSKI and DOUGLAS KELLNER, in their :
official capacities as Commissioners and Co-Chairs of the :
New York State Board of Elections; ANDREW J.     :
SPANO and GREGORY P. PETERSON, in their official :
capacities as Commissioners of the New York State    :
Board of Elections; TODD D. VALENTINE and      :
ROBERT A. BREHM, in their official capacities as Co- :
Executive Directors of the New York State Board of   :
Elections; and JACK MARTINS,              :

                          Defendants.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

       Plaintiffs Philip Pidot, Nancy Hawkins and Steven Axelman, individually and as

representatives of eligible Republican Party voters in Suffolk, Nassau, and Queens Counties

located within New York's Third Congressional District, by and through their counsel, Stroock

& Stroock & Lavan LLP, as and for a Complaint, hereby allege the following:

                               **PRELIMINARY STATEMENT**

       1.      Plaintiff Philip Pidot is a candidate for the Republican nomination for New

York's Third Congressional District, having been deemed eligible by the New York Supreme

Court, Nassau County, in a proceeding brought pursuant to Article 16 of the New York Election

Law. However, because that state Supreme Court determination came just days before the

scheduled June 28, 2016 primary election, Pidot was excluded from the ballot because it was believed by the Court to be "impossible" to add his name to the ballot. The Court also denied Pidot's request to reschedule the election to a date that would allow enough time to make arrangements for a vote that would include both qualified candidates.  Once Pidot was excluded, there was only one other Republican candidate for that Congressional seat—Defendant Jack Martins, a New York State Senator. New York law provides that where there is just one candidate on the ballot, no actual primary election is held. Thus, Senator Martins automatically received the nomination without a single vote cast in his favor.

2.      One reason cited for the so-called impossibility of placing Pidot's name on the ballot was the federal Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), as amended in 2009 by the Military and Overseas Voter Empowerment Act ("MOVE Act"). UOCAVA was enacted to *promote and protect* voting right of uniformed and other overseas voters by, among other things, requiring states to mail timely-requested absentee ballots to such voters at least 45 days before an election.  52 U.S.C. § 20302(a)(8). But the law also contemplates that, in certain limited circumstances, modification of that 45-day requirement may be necessary. Thus, where, as here, a "legal contest" causes a "delay in generating ballots," Defendant New York State Board of Elections (the "Board") is ***required*** to seek a "hardship exemption." 52 U.S.C. § 20302(g)(1) (providing that the board "***shall*** request … a waiver" from the 45-day requirement under certain circumstances), § 20302(g)(2)(B)(ii) (setting forth the "legal contest" exemption). The Board never sought a waiver.

3.      Ultimately, the constitutionally-protected associational rights of 152,879 voters enrolled as Republican Party members residing in New York's Third Congressional District—

2

103 of whom are military personnel and 126 are "federal voters"—were violated.[1]  As relief,

Plaintiffs ask this Court to:

    a.    Modify an order of the Honorable Gary Sharpe, issued in <u>United States v. New York</u>, 10-CV-1214 (Dkt. No. 88, dated October 29, 2015) and direct a Republican primary election for New York's Third Congressional District with a ballot that names both Martins and Pidot, the two validated Republican candidates, for a date that complies with federal law UOCAVA; or, alternatively,

    b.    If it is determined that a Republican primary election for the Third Congressional District cannot be held in compliance with UOCAVA's 45-day requirement, require the Board to seek a "hardship exemption" pursuant to 52 U.S.C. § 20302(g)(2)(B)(ii) which, if granted, would allow the Defendants to shorten the 45-day requirement while still making reasonable accommodations for the mailing and counting of overseas absentee ballots; or, alternatively,

    c.    If it is determined that a Republican primary election for the Third Congressional District cannot be held in compliance with UOCAVA's 45-day requirement, declare UOCAVA's 45-day requirement unconstitutional as applied here, and direct that a Republican primary election be held on a date that is practicable for the New York State Board of Elections, the Suffolk County Board of Elections, the Nassau County Board of Elections, and the Board of Elections in the City of New York (collectively, the "Boards"), all of whom are named Defendants, and which allows for, *inter alia*, a reasonable amount of time for the mailing and counting of military and overseas ballots and which will not impact the State's

---

[1] A "federal voter" is a term used to refer to non-military, overseas voters. This would include, for instance, Department of State employees working in an American embassy in a foreign country.

3

compliance with the 45-day requirement for the November 8, 2016 federal

general election; and,

    d.  Grant such other an further relief as this Court deems appropriate under the facts

        and circumstances herein.

4.    Plaintiffs seek expedited relief because any delay in scheduling a vote for the

Republican primary election for the Third Congressional District could jeopardize the State's

compliance with the 45-day requirement for the November 8, 2016 federal general election.

**PARTIES**

5.    **Plaintiff Philip Pidot** is an enrolled Republican living in Glen Cove, New York,

eligible to vote in the Republican primary election for the public office of Representative in

Congress from New York's Third Congressional District.  He was, and remains, a duly

authorized candidate for the Republican primary ballot in the Third Congressional District.

6.    **Plaintiff Nancy Hawkins** is an enrolled Republican voter and was at all times

eligible to vote in the Republican primary for the Third Congressional District. Hawkins lives in

Glen Cove, Nassau County, New York. She asserts claims for relief individually and on behalf of

other similarly-situated registered Republican voters who are eligible to vote in the primary.

7.    **Plaintiff Steven Axelman** is an enrolled Republican voter and was at all times

eligible to vote in the Republican primary for the Third Congressional District. Axelman lives in

Queens County, New York. He asserts claims for relief individually and on behalf of other

similarly-situated registered Republican voters who are eligible to vote in the primary.

8.    **Defendant New York State Board of Elections** has "jurisdiction of, and [is]

responsible for, the execution and enforcement of . . . statutes governing campaigns, elections

and related procedures" in the State of New York.  N.Y. Election Law § 3-104(1)(b). The Board

4

acts pursuant to state law in order to ensure that local boards of elections throughout New York State comply with and implement federal and state election laws.  It also receives designating petitions for candidates for Congress from the Third Congressional District, New York State. The Board's principal office is in Albany, New York.

9.      **Defendant Suffolk County Board of Elections** has its principal office in Yaphank, New York. The Suffolk County Board of Elections is responsible for, *inter alia*, administering elections in Suffolk County.

10.     **Defendant Nassau County Board of Elections** has its principal office in Mineola, New York. The Nassau County Board of Elections is responsible for, *inter alia*, administering elections in Nassau County.

11.     **Defendant Board of Elections in the City of New York** has its principal office in New York County, and is responsible for, *inter alia*, administering elections in Queens County.

12.     **Defendant Andrew J. Spano** is one of four Commissioners of the Board and has "jurisdiction of and is responsible for the execution and enforcement of ... statutes governing campaigns, elections and related procedures."

13.     **Defendant Gregory P. Peterson** is one of four Commissioners of the Board and has "jurisdiction of and is responsible for the execution and enforcement of ... statutes governing campaigns, elections and related procedures."

14.     **Defendant Peter Kosinski** is one of four Commissioners and is a Co-Chair of the Board and has "jurisdiction of and is responsible for the execution and enforcement of ... statutes governing campaigns, elections and related procedures."

15.     **Defendant Douglas Kellner** is one of four Commissioners and is a Co-Chair of the Board and has "jurisdiction of and is responsible for the execution and enforcement of ... statutes governing campaigns, election and related procedures."

16.     **Defendant Todd D. Valentine** is a Co-Executive Director of the Board.

17.     **Defendant Robert A. Brehm** is a Co-Executive Director of the Board.

18.     **Defendant Jack Martins** is a New York State Senator and, like Pidot, is a validated Republican candidate for New York's Third Congressional District. After Pidot was excluded from the ballot, Martins was the only name left on the Republican Party ballot, and therefore "won" the Republican nomination without having received a single vote from a Republican voter.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, 28 U.S.C. § 2201, and 42 U.S.C. § 1983.

20.     This Court has personal jurisdiction over the Defendants, all of whom work and/or reside in the State of New York.

21.     Venue in this District is proper under 28 U.S.C. § 1391 because a substantial part of the actions or omissions giving rise to this action took place in this judicial district and because the  Board's principal office is in Albany, New York.

## BACKGROUND

**A.      *Pidot Timely Files the Requisite Number of Signatures to Appear on the Ballot for the Republican Nomination for New York's Third Congressional District***

22.     Among other requirements set by state law, in order to appear on the ballot as candidate for the Republican nomination for New York's Third Congressional District, Pidot

was required to submit the signatures of 1,250 voters who are enrolled in the Republican Party and reside in that district.

23.     On April 14, 2016, Pidot timely filed his designating petition which included the signatures of 2,191 such voters.[2]  Pursuant to applicable rules and statutes, these signatures were deemed presumptively valid by the Board. The timing of Pidot's filing was dictated by a schedule set in Judge Sharpe's Order. See Exhibit 1. Under this court-ordered election calendar, candidates were required to submit their designating petitions on any day from April 11, 2016 through April 14, 2016.

**B.      *Senator Martins Exercises His Rights Under Article 16 of the New York Election Law to Try to Exclude Pidot from the Ballot***

24.     After Pidot submitted his designating petition, his opponent in the race, Senator Martins, attempted to exclude Pidot from the ballot.  On April 25 and April 26, 2016, Senator Martins' surrogates (hereinafter, the "Martins Objectors") exercised their rights under the Election Law to file objections to Pidot's designating petition with the Board.  Also pursuant to the Election law, on April 27, 2016, the Martins Objectors commenced an anticipatory special proceeding in New York State Supreme Court, Nassau County, to invalidate Pidot's designating petition.

**C.      *The Board Incorrectly Invalidates Pidot's Designating Petition; Pidot Challenges that Invalidation in State Supreme Court***

25.     On May 4, 2016, in response to the Martins Objectors' invalidating proceeding, the Board issued a determination that Pidot's designating petition contained a number of invalid signatures.  The Board determined that Pidot submitted 1,234 qualifying signatures—sixteen short of the qualifying threshold.

---

[2] A "designating petition" is a document, the form of which is governed by state law, which contains the signatures of voters in support of a candidate's right to run for a particular office.

26.     On May 6, 2016, Pidot exercised his right to commence a special proceeding under New York Election law (referred to as a "validating proceeding") in New York State Supreme Court to dispute the Board's erroneous determinations and otherwise validate his designating petition.

27.     Given the urgency, Pidot proceeded by order to show cause. Supreme Court Justice Michael Melkonian granted the show cause order, setting forth, among other things, the method and timing of service.  Justice Melkonian set a May 11, 2016 return date—just two days prior to the 45-day period before which military and overseas absentee ballots were to be mailed pursuant to UOCAVA.

**D.     *The Supreme Court Wrongly Dismisses Pidot's Special Proceeding for Improper Service of Process; the Appellate Division Reverses and Remands for a Hearing on the Merits***

28.     Justice Thomas Adams of the New York Supreme Court, Nassau County, presided over the May 11th hearing. The Martins Objectors moved to dismiss Pidot's petition for failure to properly effect service, arguing that Pidot's service of process did not comply with the CPLR, notwithstanding that it complied with Justice Melkonian's orders concerning service. Justice Adams orally granted the motion to dismiss.

29.     Two days later—and before a written order was entered—Pidot provided Justice Adams with Appellate Division authority that should have resulted in the denial of the Martins Objectors' motion to dismiss or, at that point, reconsideration of his oral ruling.

30.     On May 18, 2016, Pidot filed a motion to vacate Justice Adams's oral ruling. Justice Adams denied the motion to vacate on June 7, 2016.

31.     Pidot immediately filed a Notice of Appeal in the Appellate Division, Second Department. Oral argument was held on June 17, 2016. That same day, the Appellate Division

unanimously reversed Justice Adams's order and reinstated Pidot's validating petition. A copy of the Appellate Division's June 17th decision is attached hereto as Exhibit 2.

32.     The Appellate Division remanded the matter to the Supreme Court for "a determination of the petition on the merits forthwith."  At this point—just eleven days before the court-ordered June 28, 2016 Republican primary election—the 45-day period before which military and overseas absentee ballots must be mailed pursuant to UOCAVA had long passed.

33.     At this point, as well, the Board should have sought a "legal contest" waiver from UOCAVA's 45-day requirement. 52 U.S.C. § 20302(g)(2)(B)(ii).  It did not. Furthermore, the county election boards should have taken steps to prepare for a Republican primary election between Martins and Pidot. In fact, none of the election boards took any such steps.

**E.**     ***The Supreme Court Determines that the Board Struck Too Many of Pidot's Signatures and Holds that Pidot Is Qualified to Appear on the Republican Primary Ballot***

34.     After the Appellate Division reinstated Pidot's validating petition, Pidot immediately notified the Clerk of the Supreme Court in Nassau County.  Pidot's case was docketed for 10:00 a.m. on Monday, June 20, 2016, before Justice Arthur M. Diamond.

35.     On the morning of June 20, 2016, the Supreme Court, Nassau County, adjourned the matter to Tuesday, June 21, 2016, because it had not yet received the Appellate Division's remittitur.[3]  Having received the remittitur, the hearing on Pidot's designation began on Tuesday morning, June 21st.

36.     The hearing lasted three days. Justice Diamond ruled from the bench on the afternoon of Thursday, June 23rd, and held that Pidot had filed more than enough valid signatures to appear on the Republican primary ballot.

---

[3] A "remittitur" in state court is akin to a "mandate" from the United States Court of Appeals.

37.     Justice Diamond then heard argument on the Martin Objectors' motion to dismiss. Their sole argument for dismissal was timing. That is, they argued that, with the primary election scheduled for just five days away, there simply was not enough time to add Pidot's name to the ballot, notwithstanding that Pidot was qualified to appear on the ballot.

38.     In support of their argument, the Martins Objectors offered the affidavit of Louis Savinetti, Commissioner of the Defendant Nassau County Board of Election. Savinetti stated that it was necessary to exclude Pidot from the ballot, which would result in an automatic selection of Senator Martins as the Republican candidate for the Third Congressional District, "so as to not disenfranchise members of the military." That is a truly through-the-looking-glass inversion of UOCAVA—Savinetti cites a federal law designed to *promote and protect* right to vote as justification for *canceling the vote altogether*. The Suffolk County Commissioners, Anita Katz and Nick Lalota, parroted the same argument in their own supporting affidavits.

39.     On Friday, June 24, 2016, Justice Diamond issued his decision. A copy of that decision is attached hereto as Exhibit 3. Justice Diamond ruled that Pidot had enough signatures to appear on the ballot but held that it was "impossible" to add Pidot to the ballot.  While Pidot's then-counsel acknowledged the short time line, even at this time the Board could have printed ballots for Republican Party voters and programmed the optical scanners.  If they could not program the optical scanners and deliver them on time (or if they had already been delivered for the Democratic primary election for the Third Congressional District), the printed ballots could have been delivered and canvassed manually. As an alternative, Pidot's counsel had requested the Court to order a new primary date beyond June 28, 2016 so that Republican Party voters would have an opportunity to choose between the two validated candidates for Congress.  The Court declined to do so, thus depriving Pidot of his rightful place on the ballot and preventing

10

152,879 eligible Republican Party voters from participating in this important congressional primary election.

**F.      *Pidot and Hawkins Commence a Pro Se Federal Court Action One Day Before the Primary***

      40.      On June 27, 2016, the next business day after Justice Diamond issued his decision, Pidot and Plaintiff Nancy Hawkins filed a *pro se* complaint in the United States District Court for the Eastern District of New York.  That action was assigned to Judge Joseph P. Bianco.

      41.      Before an answer was filed, Pidot and Hawkins retained the undersigned counsel. On July 5, 2016, counsel entered notices of appearance in that action and voluntarily dismissed it without prejudice pursuant to Rule 41(a) of the Federal Rules of Civil Procedure.

**G.      *Expedited Relief Is Warranted Here***

      42.      Plaintiffs are proceeding by order to show cause because time is of the essence.

      43.      As an initial matter, Plaintiffs have a substantial likelihood of success on the merits. Pidot is qualified to appear on the Republican primary ballot.  Pidot's exclusion from the ballot is directly traceable to the Boards' failure to take a number of steps that would have protected Pidot's rights, and the rights of the voters that would have supported him in the primary election, including Plaintiffs Hawkins and Axelman. Moreover, the Board ignored its *mandatory* obligation to seek a waiver from UOCAVA's 45-day notice requirement.

      44.      There can be no dispute that Plaintiffs have suffered, and will continue to suffer, irreparable harm if this Court does not order the Boards to promptly hold a Republican primary for the Third Congressional District.  Plaintiffs, and 152,876 other Republican voters in the Third Congressional District, were completely deprived of their fundamental right to associate by voting for the candidate of their choosing. Absent an order from this Court directing that an

11

actual primary be held, those voters will continue to be deprived of their right to associate by voting for a candidate of their choice in the Republican primary election.

45.     The equities weigh heavily in Plaintiffs' favor. Plaintiffs and all other Republican voters in their Congressional district  were deprived of their right to vote for a qualified candidate of their choosing.  Pidot adhered to all Court-ordered deadlines, diligently exercised his rights in state Court pursuant to Article 16 of the New York Election Law, and was found by the New York Supreme Court to be qualified to appear on the ballot for the Republican primary election. He was excluded from the ballot through a confluence of improper administrative and judicial decisions that required extensive litigation to rectify. Then, once his candidacy was validated, Pidot and his supporters were told that it was "impossible" to add Pidot's name to the ballot for the June 28th primary election.

46.     The right to associate through voting is the lifeblood of a democratic society. There can no doubt that ordering Defendants to hold a Republican primary election for the Third Congressional District advances that vital public interest.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

**(Declare the UOCAVA Unconstitutional as Applied
to the Extent It Is Construed to Limit this Court's Power to Schedule a Vote for the
Republican Primary Election for the Third Congressional District)**

47.     Plaintiffs repeat and incorporate each and every allegation set forth in the preceding paragraphs.

48.     Plaintiffs respectfully request that this Court enter an order, as soon as possible, requiring the Defendants election boards to schedule and hold a Republican Party primary

election for New York's Third Congressional District with a ballot that names both Senator Martins and Pidot and that complies with UOCAVA's 45-day mailing period.

49.     However, in the event that, by the time the Court rules in this matter, it may be impossible to comply with UOCAVA's 45-day requirement for the Republican primary election while at the same time complying with UOCAVA's 45-day requirement for the federal general election, which requires mailing timely-requested overseas absentee ballots by September 24, 2016.  Even though that deadline is more than two months away, there are multiple steps involved in the primary election process that might jeopardize the State's ability to comply with that deadline.

50.     Even assuming that all logistical aspects required for the mailing of those absentee ballots—i.e., preparation of the ballots; proofing and printing of the ballots; physically sealing and mailing envelopes—could be accomplished within a few days prior to the September 24th deadline, a rescheduled Republican primary election must be held (and time allotted for any post-election challenges) sufficiently in advance of that date.  Accordingly, a rescheduled primary should be held no later than the end of August or the beginning of September. And before that election can be scheduled, time must also be allotted for briefing, oral argument, and a decision from this Court on Plaintiffs' instant application.

51.     Because there is a very real possibility that compliance with the 45-day requirement for the primary election that Plaintiffs seek may jeopardize the State's compliance with the 45-day requirement for the federal general election, Plaintiffs hereby respectfully request that the Court schedule an election for a date that is both practicable for the Boards and which protects the rights of military and overseas voters by, *inter alia*, providing a reasonable amount of time for the mailing and counting of military and overseas ballots and which will not

impact the State's compliance with the 45-day requirement for the November 8, 2016 federal general election.[4]

52.     Because UOCAVA requires 45 days notice, Plaintiffs also respectfully request that, in so scheduling this election on such shortened notice, the Court declare UOCAVA's 45-day requirement, 52 U.S.C. § 20302(a)(8), unconstitutional as applied herein because strict adherence to its terms could result in the disenfranchisement of Republican voters in the Third Congressional District and/or could jeopardize the State's compliance with the September 24, 2016 deadline for the general election.

53.     Alternatively, Plaintiffs respectfully request that this Court enter an order directing the Board to comply with its obligation under UOCAVA to seek a waiver of the 45-day requirement.

## SECOND CLAIM FOR RELIEF

### (Declaration that the State Board of Elections Violated Pidot's Rights Under UOCAVA)

54.     Plaintiffs repeat and incorporate each and every allegation set forth in the preceding paragraphs.

55.     The Board violated UOCAVA by failing to abide by its affirmative obligation to seek a "legal contest" exemption as a result of the litigation concerning Pidot's candidacy. 52 U.S.C. § 20302(g)(2)(B)(ii).

---

[4] For instance, the Court could require the Board to accept and count absentee ballots that are received *after* the election date.  See, e.g., Doe v. Walker, 746 F. Supp. 2d 667, 681 (D. Md. 2010) (ordering state to count absentee ballots received 20 days after the election date); see also https://www.justice.gov/opa/pr/justice-department-reaches-agreement-protect-rightsmilitary-and-overseas-voters-illinois (describing agreement to extend the MOVE Act ballot receipt deadline for Illinois by 14 days); https://www.justice.gov/opa/pr/justice-departmentreaches-agreement-protect-rights-military-and-overseas-voters-wisconsin (describing agreement to extend the MOVE Act ballot receipt deadline for Wisconsin by 17 days). Putting aside, for the moment, the details of how the Court fashions the relief here, what matters most is that (i) a vote is held and (ii) steps are taken to protect, to the greatest extent possible, the voting rights of the uniformed men and women serving this country, and all other overseas voters, in addition to the enrolled Republican voters currently residing in the Third Congressional District.

56.     By failing to seek a waiver "as soon as practicable" once it became apparent that the legal contest involving Pidot's candidacy could impact the State's ability to print ballots, the Board violated UOCAVA. 52 U.S.C. § 20302(g)(3)(B).

57.     The Board's violation of UOCAVA was one of the reasons cited for the "impossibility" of adding Pidot's name to the ballot after he was found to be qualified.

58.     Pidot has standing to assert a claim for relief under UOCAVA because the Board's conduct deprived Pidot of an opportunity to receive votes from uniformed and overseas voters who requested absentee ballots.

59.     Accordingly, Plaintiffs seek judgment, pursuant to 28 U.S.C. § 2201, declaring that the Board violated UOCAVA.

## THIRD CLAIM FOR RELIEF

### (Violation of Voters' First Amendment Rights)

60.     Plaintiffs repeat and incorporate each and every allegation set forth in the preceding paragraphs.

61.     The right to associate through voting is fundamental and is protected by the First Amendment to the United States Constitution.

62.     The Defendant Boards of Elections' conduct here has imposed, is imposing and/or will continue to impose, severe burdens on those rights. For instance, by refusing to undertake required action under UOCAVA, the Boards prevented 152,879 voters from exercising those constitutionally-protected rights. Furthermore, by failing to take any steps to prepare for a primary election between Martins and Pidot, Boards violated Plaintiffs' constitutional rights.

63.     Plaintiffs respectfully request that this Court enter judgment that the Boards violated their First Amendment rights and order the Boards to schedule and hold a primary

15

election for Republican voters in the Third Congressional District to vote on the two validated candidates.

## FOURTH CLAIM FOR RELIEF

### (Violation of Voters' Equal Protection Rights)

64.     Plaintiffs repeat and incorporate each and every allegation set forth in the preceding paragraphs.

65.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution protects citizens from, *inter alia*, unequal treatment under state law.

66.     The Boards' conduct here placed a severe burden on Plaintiffs' Fourteenth Amendment rights, including the right to freely associate through voting and to equal protection of the law.

67.     As set forth above, the Boards' failure to take steps—including statutorily-required action—to hold a Republican primary election for the Third Congressional District imposes, and continues to impose, a severe burden on Plaintiffs' rights to freely associate by preventing any such vote from taking place.

68.     The disenfranchisement of Republican voters in the Third Congressional District treats those Republican voters differently than similarly situated voters throughout the State of New York, whose right to vote was not infringed.  This disparate treatment constitutes a violation of those Republican voters' rights under the Equal Protection clause of the Fourteenth Amendment in that similarly situated voters were not deprived of their right to vote.

69.     Accordingly, Plaintiffs' respectfully request that this Court enter judgment finding that the Boards violated their Fourteenth Amendment rights. Plaintiffs' seek a judgment that the Boards violated their rights and ask the Court to order the Boards to schedule and hold a primary

election for Republican voters in the Third Congressional District to vote on the two validated

candidates.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1.       Modify the order of the Honorable Gary Sharpe, issued in United States v. New

York, 10-CV-1214 (Dkt. No. 88, dated October 29, 2015) and direct a Republican primary

election for New York's Third Congressional District with a ballot that names both Martins and

Pidot, the two validated Republican candidates, for a date that complies with UOCAVA's 45-day

requirement.

2.        Alternatively, if it is determined that a Republican primary election for the Third

Congressional District cannot be held in compliance with UOCAVA's 45-day requirement,

require the Board to seek a "hardship exemption" pursuant to 52 U.S.C. § 20302(g)(2)(B)(ii)

from UOCAVA's 45-day requirement as a result of the "legal contest" concerning Pidot's

candidacy and which, if granted, would allow the Defendants to shorten the 45-day requirement

while still making reasonable accommodations for the mailing and counting of overseas absentee

ballots.

3.       Alternatively, if it is determined that a Republican primary election for the Third

Congressional District cannot be held in compliance with UOCAVA's 45-day requirement,

declare UOCAVA's 45-day requirement unconstitutional as applied here, and direct that a

Republican Party primary election be held on a date that is as early as is practicable for the

Boards and which allows for, *inter alia*, a reasonable amount of time for the mailing and

counting of military and overseas ballots and which will not impact the State's compliance with

the 45-day requirement for the November 8, 2016 federal general election.

17

4.      Enter declaratory judgment against the Boards for violating Pidot's rights under

UOCAVA.

5.      Enter judgment against the Boards for violating Plaintiffs' First Amendment

rights.

6.      Enter judgment against the Boards for violating Plaintiffs' Fourteenth

Amendment rights.

7.      Order such other and further relief as is required to ensure that (i) Defendants take

all steps that are necessary to ensure that Pidot, a recognized and valid Republican candidate for

United States Congress for New York's Third Congressional District, is identified as such on

primary election ballots; and (ii) eligible Republican voters in New York's Third Congressional

District are ensured their right to cast for the candidate of their choice in a manner consistent

with state and federal law.

8.      Award Plaintiffs their attorneys' fees and costs, pursuant to 42 U.S.C. § 1983, 42

U.S.C. § 1988.

9.      Grant such other and further relief as this Court deems just and equitable.

Dated: New York, New York
        July 13, 2016                          **STROOCK & STROOCK & LAVAN LLP**

                                        By:     */s/ James L. Bernard*
                                                _____
                                                James L. Bernard
                                                Jerry H. Goldfeder (*pro hac vice* pending)
                                                David V. Simunovich (*pro hac vice* pending)
                                                180 Maiden Lane
                                                New York, New York 10038
                                                (212) 806-5857
                                                jgoldfeder@stroock.com

                                                *Counsel for Plaintiffs*

18