UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PHILIP PIDOT, NANCY HAWKINS and STEVEN AXELMAN, individually and as representatives of eligible Republican Party voters in Suffolk, Nassau and Queens Counties within New York's Third Congressional District,

: Civil Action No. 16-CV-859-FJS-CFH

                        Plaintiffs,

   -against-

NEW YORK STATE BOARD OF ELECTIONS; SUFFOLK COUNTY BOARD OF ELECTIONS; NASSAU COUNTY BOARD OF ELECTIONS; BOARD OF ELECTIONS IN THE CITY OF NEW YORK; PETER KOSINSKI and DOUGLAS KELLNER, in their official capacities as Commissioners and Co-Chairs of the New York State Board of Elections; ANDREW J. SPANO and GREGORY P. PETERSON, in their official capacities as Commissioners of the New York State Board of Elections; TODD D. VALENTINE and ROBERT A. BREHM, in their official capacities as Co-Executive Directors of the New York State Board of Elections; and JACK MARTINS,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR REQUEST TO PROCEED BY ORDER TO SHOW CAUSE AND FOR A NEW ELECTION**

                                                           **STROOCK & STROOCK & LAVAN LLP**
                                                                 180 Maiden Lane
                                                                New York, New York
                                                                    (212) 806-5400

*On the Brief*:
Jerry H. Goldfeder
David V. Simunovich

NY 76265970v1
07/21/2016 3:15 PM

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ........................................................................................................................ 2

    A.    Pidot Timely Files the Requisite Number of Signatures to Appear on the Ballot for the Republican Nomination for New York's Third Congressional District; Martins Tries to Exclude Pidot from the Ballot ................................................................................. 2

    B.    The Board Incorrectly Invalidates Pidot's Designating Petition; Pidot Commences a Special Proceeding in State Supreme Court Challenging that Invalidation ............................................................................. 2

    C.    The Supreme Court Wrongly Dismisses Pidot's Special Proceeding for Improper Service of Process; the Appellate Division Reverses and Remands for a Hearing on the Merits ...................... 3

    D.    The Supreme Court Determines that the Board Struck Too Many of Pidot's Signatures; Holds that Pidot Is Qualified to Appear on the Republican Primary Ballot .......................................................... 4

    E.    Pidot and Hawkins Commence a Pro Se Federal Court Action One Day Before the Primary .................................................................. 6

    F.    Pidot Appeals Justice Diamond's Order to the Appellate Division, Second Department .......................................................................... 7

ARGUMENT ............................................................................................................................. 8

POINT I    PLAINTIFFS SHOULD BE ALLOWED TO PROCEED BY ORDER TO SHOW CAUSE BECAUSE WITHOUT A PROMPT DECISION, NO RELIEF WILL BE WILL BE AVAILABLE .................................................................................................... 8

POINT II    PLAINTIFFS WERE DEPRIVED OF THEIR RIGHT TO FREEDON OF ASSOCIATION, PROTECTED BY THE FIRST AMENDMENT ................................................................................................. 8

    A.    Plaintiffs Have Standing ................................................................................. 8

        1.    As Disenfranchised Voters, Plaintiffs Have Standing to Assert Claims Based Upon the Deprivation of Their Right to Vote ................................................................................. 9

        2.    Pidot Has Standing to Assert Claims in His Capacity as a Candidate for Congress ............................................................ 9

|   |   |   |   |
|---|---|---|---|
|   | B. | The Boards' Conduct Violated Plaintiffs' First Amendment Right of Association .................................................................................. | 10 |
| POINT III | | THE STATE BOARD OF ELECTION VIOLATED UOCAVA .......................... | 12 |
|   | A. | Pidot Has Standing to Sue the State Board of Election for Its Violation of UOCAVA's Voter Protection Provisions................................. | 12 |
|   | B. | The Board Violated UOCAVA By Ignoring Its Obligation to Seek a "Hardship Exemption" Based on the "Legal Contest" Concerning Pidot's Candidacy ...................................................................... | 12 |
| POINT IV | | THE COURT SHOULD ORDER THE BOARDS TO SCHEDULE A REPUBLICAN PRIMARY ELECTION FOR NEW YORK'S THIRD CONGRESSIONAL DISTRICT .................................... | 14 |
| CONCLUSION | | ....................................................................................................................................... | 15 |

## TABLE OF AUTHORITIES

Page(s)

**Cases**

Anderson v. Celebrezze,
    460 U.S. 780 (1983)...................................................................................................9, 10, 12

Dean v. Blumenthal,
    577 F.3d 60 (2d Cir. 2009)....................................................................................................12

Green Party of New York State v. N.Y.S. Bd. of Elections,
    389 F.3d 411 (2d Cir. 2004)..................................................................................................10

Harman v. Forssenius,
    380 U.S. 528 (1965)................................................................................................................1

Lopez-Torres v. N.Y.S. Bd. of Elections,
    411 F. Supp. 2d 212 (E.D.N.Y.), aff'd, 462 F.3d 161 (2d Cir. 2006), rev'd on
    other grounds, 552 U.S. 196 (2008)........................................................................................9

Mains v. City of Rochester,
    No. 03-CV-6363T(F), 2004 WL 1663997 (W.D.N.Y. July 23, 2004) ...................................10

Moore v. Ogilvie,
    394 U.S. 814 (1969)................................................................................................................9

Storer v. Brown,
    415 U.S. 724 (1974)................................................................................................................9

Swann v. Charlotte-Mecklenburg Bd. of Educ.,
    402 U.S. 1 (1971)..................................................................................................................14

United States v. Alabama,
    778 F.3d 926 (11th Cir. 2015) ...............................................................................................12

United States v. Classic,
    313 U.S. 299 (1941)................................................................................................................9

Yick Wo v. Hopkins,
    118 U.S. 356 (1886)................................................................................................................1

**Statutes**

52 U.S.C. § 20302................................................................................................................ *passim*

NY 76265970v1
07/21/2016 3:15 PM

## **PRELIMINARY STATEMENT**

This action arises from the exclusion of Plaintiff Philip Pidot from the ballot for the June 28, 2016 Republican primary election for the Third Congressional District and the cancellation of the vote for that office after Pidot was excluded.

Pidot followed the rules. He adhered to deadlines; submitted the requisite number of signatures to qualify for the ballot; timely and diligently exercised his rights in court; and opposed the efforts of his opponent, Defendant Jack Martins, to exclude him from the ballot. In the end, Pidot overcame the challenges to his candidacy when, on June 24, 2016, the New York State Supreme Court, Nassau County held that he was qualified to appear on the ballot. By that time, however, the Court ruled that it was simply too late in the process to add him to the ballot for the June 28th primary. Because Pidot's exclusion left just one other validated candidate for the ballot (Martins), no actual vote was held; Martins automatically received the nomination, without a single vote cast in his favor.

By cancelling the vote, 152,879 enrolled Republican Party voters of Queens, Nassau, and Suffolk Counties were disenfranchised—deprived of the right that forms the "essence of a democratic society" and is "preservative of all governmental rights." Harman v. Forssenius, 380 U.S. 528, 537 (1965); Yick Wo v. Hopkins, 118 U.S. 356, 370 (1886). The constitutional deprivations here are profound, and the unfairness is palpable. This Court can rectify both by directing the state and county election boards (named as Defendants here) to hold an election as soon as is practicable.

**BACKGROUND**

A. *Pidot Timely Files the Requisite Number of Signatures to Appear on the Ballot for the Republican Nomination for New York's Third Congressional District; Martins Tries to Exclude Pidot from the Ballot*

In order to appear on the ballot as a candidate for the Republican nomination for New York's Third Congressional District, Pidot was required to submit the signatures of 1,250 voters who are enrolled in the Republican Party and reside in the Third Congressional District in New York State. Complaint ("Compl.") ¶ 22. On April 14, 2016, Pidot timely filed his designating petition, containing the signatures of 2,191 voters. Id. ¶ 23.[1] Pursuant to applicable rules and statutes, Pidot's designating petition was deemed presumptively valid and, thus, he was at that time qualified to appear on the ballot. Id.

After Pidot submitted his designating petition, Martins launched an effort to exclude him from the ballot. Id. ¶ 24. On April 25 and April 26, 2016, Senator Martins' surrogates (hereinafter the "Martins Objectors") filed objections to Pidot's designating petition with the Defendant New York State Board of Elections (hereinafter the "Board"). Id. And on April 27, 2016, the Martins Objectors commenced a special proceeding in New York State Supreme Court, Nassau County, to invalidate Pidot's designating petition. Id.

B. *The Board Incorrectly Invalidates Pidot's Designating Petition; Pidot Commences a Special Proceeding in State Supreme Court Challenging that Invalidation*

On May 4, 2016, in response to the Martins Objectors' challenge, the Board issued a determination that Pidot's designating petition contained a number of invalid signatures.

---

[1] The timing of Pidot's filing of signatures with the Board was dictated by a schedule set by an Order entered by the Honorable Gary Sharpe on October 29, 2015 in United States v. New York, 10-CV-1214 (Dkt. Entry 88, dated Oct. 29, 2015). Compl., Exhibit 1 (Judge Sharpe's Order dated October 29, 2015).

Id. ¶ 25. The Board determined that Pidot submitted 1,234 qualifying signatures—sixteen short of the qualifying threshold. Id.

On May 6, 2016, Pidot exercised his right to commence a special proceeding pursuant to the New York Election Law in New York State Supreme Court to dispute the Board's determinations and otherwise validate his designating petition. Id. ¶ 26. Given the urgency, Pidot proceeded by order to show cause. Id. ¶ 27. Supreme Court Justice Michael Melkonian granted the show-cause order, setting forth, among other things, the method and timing of service. Id. Justice Melkonian set the return date for a hearing on Pidot's special proceeding for May 11, 2016—two days prior to the 45-day period before which military and overseas absentee ballots were to be mailed pursuant to the federal Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), as amended in 2009 by the Military and Overseas Voter Empowerment Act ("MOVE Act"). Id.

**C.**   ***The Supreme Court Wrongly Dismisses Pidot's Special Proceeding for Improper Service of Process; the Appellate Division Reverses and Remands for a Hearing on the Merits***

On May 11, 2016, Justice Thomas Adams of the New York Supreme Court, Nassau County, held a hearing on Pidot's special proceeding. Id. ¶ 28. The Martins Objectors moved to dismiss Pidot's petition for failure to properly effect service, arguing that Pidot's service of process did not comply with New York Civil Practice Law and Rules, notwithstanding that it complied with Justice Melkonian's order concerning service. Id. At the May 11th hearing, Justice Adams orally granted the motion to dismiss. Id.

Two days later, and before a written order was entered, Pidot provided Justice Adams with a New York Supreme Court Appellate Division decision that should have resulted in the denial of the Martins Objectors' motion to dismiss. Id. ¶ 29. Justice Adams nevertheless issued

-3-

his written order dismissing Pidot's petition.  Id. ¶ 30.  Pidot moved to vacate Justice Adams's oral ruling on May 28, 2016 and Justice Adams denied it on June 7, 2016.  Id. ¶ 32.

Pidot immediately filed a notice of appeal.  Id. ¶ 31.  Oral argument was held in the Appellate Division, Second Department on June 17, 2016 and, that same day, the court unanimously reversed Justice Adams's order and reinstated Pidot's petition.  Id.; see also Compl., Exhibit 3 at 1 (Appellate Division's "Decision & Order," dated June 17, 2016).  The Appellate Division remanded the matter to the Supreme Court for "a determination of the petition on the merits forthwith."  Compl. ¶ 32.

At this point—just eleven days before the court-ordered June 28, 2016 Republican Party primary election—the 45-day period before which military and overseas absentee ballots must be mailed pursuant to UOCAVA had long passed.  Yet the Board had not taken any steps to seek a "hardship exemption" under UOCAVA—despite its affirmative obligation to do so.  See 52 U.S.C. § 20302(g)(1) & (g)(2)(B)(ii); Compl. ¶ 2.  Nor had the state or relevant county election boards taken any steps to prepare for a Republican Party primary election that would include both Martins and Pidot.  Compl. ¶ 33.  In failing to seek a "hardship exemption" or to take any proactive steps to prepare for  an election that included Pidot, the state and county election boards created the very "impossibility" later cited as the basis for excluding Pidot from the ballot after the Supreme Court held that he was a qualified candidate.

**D.**   ***The Supreme Court Determines that the Board Struck Too Many of Pidot's Signatures; Holds that Pidot Is Qualified to Appear on the Republican Primary Ballot***

After the Appellate Division reinstated Pidot's designating petition, Pidot immediately notified the Clerk of the Supreme Court in Nassau County.  Id. ¶ 34.  Pidot's case was docketed for 10:00 a.m. on Monday, June 20, 2016, to proceed before Justice Arthur M. Diamond.  Id.  On

the morning of June 20th, the Supreme Court adjourned the matter to Tuesday, June 21, 2016, because it had not yet received the Appellate Division's remittitur.[2]  Having received the remittitur, the hearing on Pidot's designation began on June 21st.

After a three-day hearing, Justice Diamond ruled from the bench on the afternoon of Thursday, June 23, 2016.  Id. ¶ 36.  Justice Diamond held that Pidot had filed more than enough valid signatures to appear on the Republican primary ballot.  Id.  After reaching that conclusion, Justice Diamond then heard argument on the Martin Objectors' motion to dismiss.  Id. ¶ 37.

The Martins Objectors' sole argument for dismissal was timing.  Id.  They argued that with the primary election just four days away, there was not enough time to add Pidot's name to the ballot, notwithstanding that Pidot was found by the Court to be qualified to appear on the ballot.  Id.  In support of their argument, the Martins Objectors offered the affidavit of Louis Savinetti, Commissioner of Defendant Nassau County Board of Elections.  Id. ¶ 38.  Commissioner Savinetti stated that it was necessary to exclude Pidot from the ballot, which would result in an automatic selection of Senator Martins as the Republican candidate for the Third Congressional District, "so as to not disenfranchise members of the military."  Declaration of David V. Simunovich in Support of Plaintiffs' Request for Injunctive Relief ("Simunovich Decl."), Exhibit 1 ¶¶ 3, 15 (Affidavit of Louis Savinetti).  The Suffolk County Commissioners, Anita Katz and Nick Lalota, parroted the same argument in their own "joint" affidavit.  Simunovich Decl., Exhibit 2 ¶ 3 (Joint Affidavit of Anita Katz and Nick LaLota).

On Friday, June 24, 2016, Justice Diamond issued his written Decision and Order.  Compl., Exhibit 2.  Justice Diamond held that Pidot had enough signatures to appear on the ballot, but also ruled that it was, at that time, "impossible" to add Pidot to the ballot.  Id. at 2-3.

---

[2] In state court, the Appellate Division's "remittitur" is akin to a "mandate" from the U.S. Court of Appeals.

-5-

While Pidot's counsel acknowledged the short timeline, even at this time the Board could have printed ballots for Republican Party voters. Compl. ¶ 39. If the elections boards could not program the optical scanners and deliver them on time (or if they had already been delivered for the Democratic Party primary election for the Third Congressional District), the printed ballots could have been delivered and canvassed manually. Id.

As an alternative, Pidot's counsel requested the Court to order a new primary date beyond June 28, 2016 so that Republican Party voters would have an opportunity to choose between the two validated candidates for Congress from the Third Congressional District. Id. The Supreme Court declined to do so, thus depriving 152,879 eligible Republican Party voters from participating in this congressional election. Id.

E.   *Pidot and Hawkins Commence a* **Pro Se** *Federal Court Action One Day Before the Primary*

On June 27, 2016, the next business day after Justice Diamond issued his written decision, Pidot and Hawkins filed a *pro se* complaint in the United States District Court for the Eastern District of New York. Compl. ¶ 41. That Complaint was voluntarily dismissed without prejudice pursuant to Rule 41(a) of the Federal Rules of Civil Procedure. Simunovich Decl., Exhibits 3 & 4.

It has been argued in the proceedings before Justice Diamond (by the Martins Objectors), as well as in the Appellate Division, that the state courts lack the power to order a new election because doing so would conflict with Judge Sharpe's so-ordered election calendar. Simunovich Decl., Exhibit 5 at 5:16-7:21(Excerpts of the Transcript of Proceedings before Justice Diamond) (excerpting the argument by the Martins Objectors' counsel that the Supreme Court "lacks the authority to countermand Judge Sharpe's order and order a primary election be moved"); Simunovich Decl., Exhibit 6 at 16 (arguing, in brief to the Appellate Division submitted by the

Martins Objectors' counsel, that the Appellate Division "has no jurisdiction to adjust the dates for a federal primary election as set by Judge Sharp[e] in U.S. v. New York").

Plaintiffs disagree with that position. As Pidot argued in the state court proceedings, nothing in Judge Sharpe's Order limits the state courts' powers to order a new election under Article 16 of the New York Election Law.  Simunovich Decl., Exhibit 7 at 17-20.  Nevertheless, in light of the time-sensitive nature of the relief sought, and to avoid any delays caused by a judicial determination that Judge Sharpe's so-ordered election calendar prevents the state court (or a another United States District Court Judge) from ordering a new election here as a remedy for the statutory and constitutional violations set forth in the Complaint, Plaintiffs commenced this action in this Court.  Plaintiffs also requested that this case be designated as related to United States v. New York, 10-CV-1214; on July 18, 2016, Judge Sharpe issued a summary order declining to designate the two cases as related.  Pidot v. N.Y.S. Bd. of Elections, 16-CV-859-FJS-CFH (Doc. 11).[3]

**F.**    ***Pidot Appeals Justice Diamond's Order to the Appellate Division, Second Department***

On July 7, 2016, Pidot filed a notice of appeal from Justice Diamond's order. Declaration of Jerry H. Goldfeder in Support of the Order to Show Cause ("Goldfeder Decl.") ¶ 26.[4]  The Martins Objectors cross-appealed Justice Diamond's decision.  The Appellate Division set an expedited briefing schedule and oral argument was held on Tuesday, July 19, 2016.  Id.  On July 21, 2016, the Appellate Division denied Pidot's request for a new election. Simunovich Decl., Exhibit 9.

---

[3] Judge Sharpe's order declining to designate the two cases as related is, at the very minimum, an implicit rejection of the argument that Judge Sharpe's October 29, 2015 Order restricts another court's power to order a new election, either under Article 16 of the New York Election Law, or under this Court's power to remedy constitutional and statutory violations.

[4] We note here that Pidot did not retain Stroock until July 5, 2016.  Until then, he was represented in the state court proceedings by different counsel.

-7-

# ARGUMENT

## POINT I
### PLAINTIFFS SHOULD BE ALLOWED TO PROCEED BY ORDER TO SHOW CAUSE BECAUSE WITHOUT A PROMPT DECISION, NO RELIEF WILL BE WILL BE AVAILABLE

Plaintiffs seek to proceed by order to show cause, pursuant to Local Rule 7.1(a). As set forth more completely in the Goldfeder Declaration, proceeding on an expedited schedule is necessary because of multiple, pressing time constraints caused by:

> (i) the time needed by the New York State Board of Elections, the Suffolk County Board of Elections, the Nassau County Board of Elections, and the Board of Elections in the City of New York (collectively, the "Boards") to hold an election, which requires, among other things, printing and mailing ballots, programming and delivering optical vote scanning machines, collecting and counting votes from the various election districts, and certifying a winning candidate;
>
> (ii) federal law, known UOCAVA, as amended by the MOVE Act, which requires that absentee ballots be sent to military and other overseas voters who timely request such ballots not later than 45 days before a federal election (including primaries for a Congressional seat, as is the case here); and
>
> (iii) a deadline, set by Judge Sharpe in United States v. New York, of September 24, 2016 to mail absentee ballots to overseas voters who have requested such ballots for the federal general election.

Goldfeder Decl. ¶ 3. Accordingly, if the Court grants the relief that Plaintiffs seek and schedules an election, such an order must be entered as soon as possible.

## POINT II
### PLAINTIFFS WERE DEPRIVED OF THEIR RIGHT TO FREEDOM OF ASSOCIATION, PROTECTED BY THE FIRST AMENDMENT

**A.**   *Plaintiffs Have Standing*

Hawkins and Axelman are pursuing claims as voters deprived of their right to free association. Compl. ¶¶ 6-7. Pidot is pursuing claims both in his capacity as a voter and a

candidate for office.  Id. ¶ 5.  Each of the Plaintiffs have standing to assert the claims in the Complaint.

> 1. **As Disenfranchised Voters, Plaintiffs Have Standing to Assert Claims Based Upon the Deprivation of Their Right to Vote**

All three Plaintiffs are enrolled Republican voters residing in New York's Third Congressional District.  Id. ¶¶ 5-7.  Each was deprived of the right to vote for a candidate of their choosing on June 28th.  Id. ¶¶ 1, 44.  Because the Supreme Court of the United States has held that the right to vote in a federal primary election is a right protected by the United States Constitution, all three Plaintiffs have the right to assert claims that vindicate that constitutional right.  United States v. Classic, 313 U.S. 299, 323 (1941) (holding that "the right to participate through the primary in the choice of representatives in Congress [is] a right clearly secured by the Constitution"); see also Moore v. Ogilvie, 394 U.S. 814, 818 (1969) ("All procedures used by a state as an integral part of the election process must pass muster against … the abridgement of the right to vote.").

> 2. **Pidot Has Standing to Assert Claims in His Capacity as a Candidate for Congress**

As the candidate excluded from the ballot, Pidot has standing to assert constitutional claims.  Storer v. Brown, 415 U.S. 724, 738 & n.9 (1974) (holding that, because "it is [the candidates' names that go on the … ballot for consideration of the voters," an excluded candidate has "ample standing to challenge the [ballot access statute at issue]"); see also Lopez-Torres v. N.Y.S. Bd. of Elections, 411 F. Supp. 2d 212, 241 n. 37 (E.D.N.Y.) ("A former and would-be candidate such as López-Torres has standing to challenge ballot access requirements."), aff'd, 462 F.3d 161 (2d Cir. 2006), rev'd on other grounds, 552 U.S. 196 (2008); see also Anderson v. Celebrezze, 460 U.S. 780, 786 (1983) (holding that "the rights of voters and the rights of

-9-

candidates do not lend themselves to neat separation; laws that affect candidates always have at least some theoretical, correlative effect on voters").

**B.     *The Boards' Conduct Violated Plaintiffs' First
         Amendment Right of Association***

Claims based on violations of the right to free association are evaluated under the U.S. Supreme Court's "character and magnitude" test. Anderson, 460 U.S. at 786 (explaining that courts begin their constitutional analysis by evaluating the "character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate"). In Anderson, the Supreme Court was confronted with facially valid state laws (requiring third-party presidential candidates to comply with filing deadlines that were the same as the deadlines for established-party candidates) that had the effect of "totally exclud[ing] any candidate who [made] the decision to run for President as an independent after [a certain date]." Id. at 792. Finding that the early filing deadlines imposed a "particular burden on an identifiable segment of [the state's] … voters," the Court then considered the state's asserted interest in the statutes at issue and determined that voters' associational rights "unquestionably outweigh[ed] the state's asserted interests in that case. Id. at 793, 806; see also Green Party of New York State v. N.Y.S. Bd. of Elections, 389 F.3d 411, 418-23 (2d Cir. 2004) (affirming district court order finding First Amendment constitutional violations where a facially neutral state election law imposed a severe burden on third-party candidates' access to the gubernatorial ballot); Mains v. City of Rochester, No. 03-CV-6363T(F), 2004 WL 1663997, at *1 (W.D.N.Y. July 23, 2004) (applying Anderson and invalidating a local ballot access law that limited the number of public offices candidates could hold).

Here, too, Plaintiffs were subjected to a "particular burden" when Pidot was excluded from the ballot and the vote for the Republican primary election was cancelled. Unlike most

cases asserting freedom of association claims, the instant action is not based on the application of a single statute or rule. The constitutional violations here stem from the thorny confluence of parties' enforcing their litigation rights under the New York Election Law, the election calendar issued by Judge Sharpe, and inaction by the county and state election boards, including:

- The four-day window, ending April 14, 2016, set by Judge Sharpe in <u>United States v. New York</u>, 10-CV-1214, for candidates to submit designating petitions for the federal primary election;

- A process pursuant to Article 16 of the New York State Election Law allowing the Martins' Objectors to file with the New York State Board of Elections challenges to the signatures on Pidot's designating petition;

- A process pursuant to Article 16 of the New York State Election Law allowing Pidot to seek judicial review of the State Election Board's invalidation of his designating petition, which was commenced on May 6, 2016, and did not result in a state Supreme Court determination until June 24, 2016;

- A process pursuant to Article 16 of the New York State Election Law allowing the Martins Objectors to seek judicial review of the State Election Board's rulings that did not sustain their original objections;

- The county election boards' failure to prepare for an election that would include both Pidot and Martins, rendering it "impossible" to add Pidot's name to the ballot after the Supreme Court held that he was qualified;

- UOCAVA's requirement that timely-requested overseas ballots be mailed 45 days before the June 28, 2016 election which passed more than one month before the Supreme Court finally adjudicated Pidot's candidacy; and

- The State Board's failure to take any steps, despite its ***obligation*** to do so, to obtain a "hardship exemption" from UOCAVA's 45-day requirement based on the "legal contest" involving Pidot's candidacy.

What must not be lost in all the detail and nuance here is the strikingly unjust outcome: Pidot followed the rules and was found to be qualified for the ballot, but was nevertheless excluded from it. A federal law and a court order designed to protect the voting rights of uniformed men and women around the world were upended and used to deprive them—and all other Republican voters in the Third Congressional District, including Pidot—of their rights by

-11-

cancelling an election.  State election laws designed to ensure that only validated candidates appear on a ballot took so long to be adjudicated that, when the State Supreme Court validated Pidot's candidacy, it was "impossible" to add his name to the ballot.   Plaintiffs request that the Court cure this constitutional violation by ordering a new election.

## POINT III
## THE STATE BOARD OF ELECTION VIOLATED UOCAVA

A. *Pidot Has Standing to Sue the State Board of Election for Its Violation of UOCAVA's Voter Protection Provisions*

Pidot is not a "uniformed" or other "overseas" voter, but he nevertheless has standing to assert rights under UOCAVA.  As an initial matter, courts have long recognized that, for purposes of standing in election law cases, the distinction between voters and the candidates they support "do[es] not lend [itself] to neat separation."  Anderson, 460 U.S. at 786.  Moreover, the Board's violation of UOCAVA contributed to the "impossibility" of adding Pidot's name to the ballot.  Thus, as Pidot's injury is traceable to the Board's statutory violation, he has standing on that basis as well.  See Dean v. Blumenthal, 577 F.3d 60, 67 n. 4 (2d Cir. 2009) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992), and explaining that "[t]o establish Article III standing, a plaintiff must allege that she has suffered an injury-in-fact that is traceable to the challenged action of the defendant, and that is likely to be redressed by the requested relief").

B. *The Board Violated UOCAVA By Ignoring Its Obligation to Seek a "Hardship Exemption" Based on the "Legal Contest" Concerning Pidot's Candidacy*

UOCAVA and the MOVE Act were intended to *protect* and *promote* voting rights for military and other overseas voters.  In United States v. Alabama, 778 F.3d 926, 928 (11th Cir. 2015), the Court of Appeals for the Eleventh Circuit described the underlying problem of

NY 76265970v1
07/21/2016 3:15 PM

military voter disenfranchisement, and the means by which UOCAVA and the MOVE Act would address the problem:

> [A]ctive military personnel and their families have faced severe difficulties exercising their fundamental right to vote. For affected service members, the decision to serve their country was the very act that frequently deprived them of a voice in selecting its government. Congress responded to this real problem by passing the [UOCAVA], *a comprehensive series of requirements aimed at ending the widespread disenfranchisement of military voters stationed overseas*. … By passing UOCAVA, and later by strengthening its protections [with the MOVE Act], Congress unequivocally committed to eliminating procedural roadblocks, which historically prevented thousands of service members from sharing in the most basic of democratic rights.

The Board violated UOCAVA by failing to abide by its affirmative obligation to seek a "legal contest" exemption as a result of the litigation concerning Pidot's candidacy. 52 U.S.C. § 20302(g)(2)(B)(ii). The Board should have sought a waiver "as soon as practicable" once it became apparent that the "legal contest" involving Pidot's candidacy could impact the State's ability to print ballots. 52 U.S.C. § 20302(g)(3)(B).

The Board should have sought a waiver **no later than June 17, 2016**, when the Appellate Division reinstated Pidot's validating proceeding and remanded to the Supreme Court for a prompt hearing on the merits. Compl. ¶ 32; 52 U.S.C. § 20302(g)(3)(B).[5] The Board's failure to seek a timely waiver of UOCAVA's 45-day requirement was one of the reasons cited for the "impossibility" of adding Pidot's name to the ballot after he was found to be qualified. Compl., Exhibit 2.[6]

---

[5] Guidance by the Federal Voting Assistant Program encourages state election authorities to begin working with their counsel as soon as a legal contest is filed "to realistically assess the merits of the contest and whether it is reasonably foreseeable that the legal contest will prevent the timely production of ballots for UOCAVA voters before seeking a waiver." Simunovich Decl., Exhibit 8 at 3 (Guidance on Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) Ballot Delivery Waivers (Federal Voting Assistance Program)).

[6] Indeed, in briefing the matter before the Appellate Division, it is still being argued that the UOCAVA bars relief. Simunovich Decl., Exhibit 6 at 22-23.

# POINT IV
# THE COURT SHOULD ORDER THE BOARDS TO SCHEDULE A REPUBLICAN PRIMARY ELECTION FOR NEW YORK'S THIRD CONGRESSIONAL DISTRICT

This Court has broad power to order equitable relief to remedy the foregoing constitutional and statutory violations. Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies.").

Based on the constitutional and statutory violations set forth above, Plaintiffs ask for the following relief:

1. Direct a Republican primary election for New York's Third Congressional District with a ballot that names both Martins and Pidot, the two validated Republican candidates, for a date that complies with UOCAVA's 45-day requirement and, if it is determined to be necessary to effectuate that relief, modify the Order of the Honorable Gary Sharpe, issued in *United States v. New York*, 10-CV-1214 (Dkt. No. 88, dated October 29, 2015) to allow for such an election.

2. Alternatively, if it is determined that a Republican primary election for the Third Congressional District cannot be held in compliance with UOCAVA's 45-day requirement, require the Board to seek a "hardship exemption" pursuant to 52 U.S.C. § 20302(g)(2)(B)(ii) from UOCAVA's 45-day requirement as a result of the "legal contest" concerning Pidot's candidacy and which, if granted, would allow the Defendants to shorten the 45-day requirement while still making reasonable accommodations for the mailing and counting of overseas absentee ballots.

3. Alternatively, if it is determined that a Republican primary election for the Third Congressional District cannot be held in compliance with UOCAVA's 45-day requirement, declare UOCAVA's 45-day requirement unconstitutional as applied here, and direct that a Republican Party primary election be held on a date that is as early as is practicable for the Boards and which allows for, *inter alia*, a reasonable amount of time for the mailing and counting of military and overseas ballots and which will not impact the State's compliance with the 45-day requirement for the November 8, 2016 federal general election.

## **CONCLUSION**

For the reasons set forth above, as well as in the supporting papers and the Complaint, Plaintiffs respectfully request that the Court enter an Order granting the relief set forth above as soon as is practicable for the Court and the parties.

Dated: New York, New York
       July 21, 2016                 **STROOCK & STROOCK & LAVAN LLP**

                                      By:   */s/ Jerry H. Goldfeder*
                                                Jerry H. Goldfeder (admitted *pro hac vice*)
                                                David V. Simunovich (admitted *pro hac vice*)
                                                180 Maiden Lane
                                                New York, New York 10038
                                                (212) 806-5857
                                                jgoldfeder@stroock.com

                                                *Counsel for Plaintiffs*