UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PHILIP PIDOT, NANCY HAWKINS and STEVEN AXELMAN, individually and as representatives of eligible Republican Party voters in Suffolk, Nassau and Queens Counties within New York's Third Congressional District,

: Civil Action No. 16-CV-859-FJS-CFH

Plaintiffs,

-against-

: **DECLARATION OF JERRY H.**
: **GOLDFEDER IN SUPPORT OF**
: <u>**ORDER TO SHOW CAUSE**</u>

NEW YORK STATE BOARD OF ELECTIONS; SUFFOLK COUNTY BOARD OF ELECTIONS; NASSAU COUNTY BOARD OF ELECTIONS; BOARD OF ELECTIONS IN THE CITY OF NEW YORK; PETER KOSINSKI and DOUGLAS KELLNER, in their official capacities as Commissioners and Co-Chairs of the New York State Board of Elections; ANDREW J. SPANO and GREGORY P. PETERSON, in their official capacities as Commissioners of the New York State Board of Elections; TODD D. VALENTINE and ROBERT A. BREHM, in their official capacities as Co-Executive Directors of the New York State Board of Elections; and JACK MARTINS,

Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

I, JERRY H. GOLDFEDER, hereby declare:

1.  I am Special Counsel at the law firm of Stroock & Stroock & Lavan LLP and represent Plaintiffs in this action. I am familiar with the matters discussed in this Declaration.

2.  I submit this Declaration in support of Plaintiffs' request for an order to show cause and the relief requested in Plaintiffs' Complaint. In this action, Plaintiffs seek an order from this Court requiring Defendants to schedule and hold a Republican primary election for New York's Third Congressional District (which covers parts of Nassau, Suffolk and Queens counties).

1

3.  Proceeding by order to show cause is necessary because of multiple, pressing time constraints caused by: (i) the time needed by the New York State Board of Elections, the Suffolk County Board of Elections, the Nassau County Board of Elections, and the Board of Elections in the City of New York (collectively, the "Boards") to hold an election, which requires, among other things, printing and mailing ballots, programming and delivering optical vote scanning machines, collecting and counting votes from the various election districts, and certifying a winning candidate; (ii) federal law, known as Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), as amended in 2009 by the Military and Overseas Voter Empowerment Act ("MOVE Act"), which requires that absentee ballots be sent to military and other overseas voters who timely request such ballots not later than 45 days before a federal election (including primaries for a Congressional seat, as is the case here); and (iii) a court-imposed deadline of September 24, 2016 to mail absentee ballots to overseas voters who have requested such ballots for the federal general election.[1]

4.  In sum, if this Court is to enter an Order granting the relief Plaintiffs seek—specifically, a Republican primary election for New York's Third Congressional District—that Order would have to be entered as soon as possible so as to not jeopardize the State's compliance with the September 24, 2016 UOCAVA/MOVE Act deadline for the federal general election.

## BACKGROUND

5.  Plaintiff Philip Pidot is seeking the Republican nomination for New York's Third Congressional District.

6.  Pursuant to ballot access requirements set by state law, in order to appear on the ballot as candidate for the Republican nomination, Pidot was required to submit the signatures of

---

[1] The 2016 federal election calendar for the State of New York was so-ordered by the Honorable Gary Sharpe in connection with United States v. New York, 10-cv-1214 (GLS/RFT) (N.D.N.Y.) (Dkt. No. 88, dated October 29, 2015).

1,250 voters who are enrolled in the Republican Party and reside in New York's Third Congressional District.

7. On April 14, 2016, Pidot timely filed a designating petition which included the signatures of 2,191 such voters. Pursuant to applicable rules and statutes, these signatures were deemed presumptively valid by New York State Board of Election (the "State Board"). The timing of Pidot's filing was dictated by Judge Sharpe's Order, which sets all relevant dates for the 2016 federal election cycle in the State of New York.

8. On April 25, 2016 and April 26, 2016, four individuals aligned with the campaign of Pidot's opponent, Defendant Jack Martins (hereinafter, the "Martins Objectors"), filed with the State Board objections to Pidot's designating petition. Then, on April 27, 2016, the Martins Objectors exercised their rights under Article 16 of the New York Election Law to commence a special proceeding in New York State Supreme Court, Nassau County, to invalidate Pidot's designating petition.

9. On May 4, 2016, and in response to the challenge brought by the Martins Objectors, the State Board issued a determination that Pidot's designating petition contained invalid signatures. Ultimately, the State Board struck 957 of Pidot's signatures, leaving him with 1,234 qualifying signatures—sixteen short of the qualifying threshold.

10. On May 6, 2016, Pidot commenced a special proceeding in New York State Supreme Court under Article 16 of the N.Y. Election Law to dispute the State Board's determinations and otherwise validate his designating petition. Pidot proceeded by order to show cause.

11. Supreme Court Justice Michael Melkonian issued the show cause order, setting forth, among other things, the method and timing of service. Justice Melkonian set the return

date for a hearing in Pidot's case for May 11, 2016. That return date was scheduled for a mere three days before the May 14, 2016 deadline to mail overseas and absentee ballots for the June 28, 2016 federal primary election. The May 14th deadline was dictated both by UOCAVA's 45-day requirement and Judge Sharpe's Order.

12. On May 11, 2016, Justice Thomas Adams of the New York Supreme Court, Nassau County, held a hearing on Pidot's special proceeding. Counsel for the Martins Objectors moved to dismiss Pidot's case for failure to properly effect service. The Martins Objectors argued that Pidot's service of process did not comply with the CPLR. Pidot argued that his service of process complied with the requirements set forth in Justice Melkonian's show cause order. At the May 11th hearing, Justice Adams orally granted the motion to dismiss.

13. Two days later, and before a written order was entered, Pidot submitted to Justice Adams a decision from the New York Appellate Division, Second Department that should have resulted in the denial of the Martins Objectors' motion to dismiss or, at that point, reconsideration of the oral ruling. Pidot thereafter moved to vacate Justice Adams's oral ruling. Justice Adams denied Pidot's motion to vacate on June 7, 2016.

14. Pidot immediately filed a Notice of Appeal in the Appellate Division, Second Department. Oral argument was held on June 17, 2016. That same day, the court unanimously reversed Justice Adams's order dismissing Pidot's validating petition and held that Pidot properly effected service of process. A copy of the Appellate Division's decision is attached to the Complaint in this action as Exhibit 2.

15. The Appellate Division remanded the matter to the Supreme Court for "a determination of the petition on the merits forthwith." At this point—just eleven days before the

court-ordered June 28, 2016 Republican Party primary election—the 45-day period before which military and overseas absentee ballots must be mailed pursuant to UOCAVA had long passed.

16. Pidot immediately notified the Clerk of the Supreme Court in Nassau County of the Appellate Division's ruling. Pidot's case was docketed for 10:00 a.m. on Monday, June 20, 2016 before Justice Arthur M. Diamond. On the morning of June 20, 2016, the Court adjourned the matter to Tuesday, June 21, 2016, because it had not yet received the Appellate Division's remittitur.[2] Having received the remittitur, the hearing on Pidot's designation began on Tuesday morning, June 21st.

17. The hearing in Supreme Court lasted three days. Justice Diamond ruled from the bench on the afternoon of Thursday, June 23, 2016, holding that Pidot had filed more than enough valid signatures to appear on the Republican primary ballot.

18. After finding that Pidot had a sufficient number of signatures to appear on the primary election ballot, Justice Diamond heard argument on the Martin Objectors' motion to dismiss the validating proceeding on the ground that it was "impossible" for the Boards to conduct the primary election with Pidot on the ballot. The Martins Objectors' sole argument for dismissal was timing. With certain of the Boards concurring, the Martins Objectors argued that the June 28, 2016 primary could not be held in that it was not possible to comply with UOCAVA's requirement that military and absentee ballots be mailed 45-days before an election and that it was logistically impossible to implement all of the steps required to add Pidot's name to the ballot.

19. On Friday, June 24, 2016, Justice Diamond issued his decision. A copy of that decision is attached to the Complaint in this action as Exhibit 3. Justice Diamond agreed that

---

[2] A "remittitur" in state court is akin to a "mandate" from the United States Court of Appeals.

5

Pidot had enough signatures to appear on the ballot, but held that it was now "impossible" to add Pidot to the ballot. As a result of that determination, Pidot was excluded from the ballot, leaving Senator Martins as the only Republican candidate to run for the Third Congressional District. Pursuant to New York law, in such circumstances, no actual primary is held. Instead, without one vote being cast, Senator Martins "won" the nomination by operation of law.

20. I am advised that there are 152,879 enrolled Republican Party voters in the Third Congressional District, including 229 overseas military and "federal voters" (a term used to refer to overseas voters other than uniformed personnel) who had timely requested absentee ballots. The decision to exclude Pidot from the ballot, which therefore cancelled the actual election altogether, resulted in the complete deprivation of these voters' constitutionally-protected right to vote.

21. On June 27, 2016, the next business day after Justice Diamond issued his decision, Plaintiffs Pidot and Hawkins filed a *pro se* complaint in the United States District Court for the Eastern District of New York. That action was assigned to Judge Joseph P. Bianco.

22. After filing that *pro se* complaint, and before an answer was filed, Plaintiffs engaged Stroock as their counsel. On July 5, 2016, after reviewing the relevant facts and circumstances, and the law, I entered a notice of appearance in the action pending before Judge Bianco and voluntarily dismissed it without prejudice pursuant to Rule 41(a) of the Federal Rules of Civil Procedure.

23. Subsequently, I determined that a federal civil rights action should be brought in this Court and that I should submit to the Court an application to designate this case as related to United States v. New York, 10-cv-1214 (GLS/RFT) (N.D.N.Y.). I made that determination based on the arguments asserted by the Martins' Objectors in the state court proceedings.

Specifically, the Martins Objectors argued that, in <u>United States v. New York</u>, Judge Gary Sharpe so-ordered an election calendar setting relevant dates for the 2016 federal election calendar in the State of New York and, in particular, the June 28, 2016 primary date. The Martins Objectors argued that the State Supreme Court was stripped of its power (vested pursuant to Article 16 of the New York Election Law) to order a new Republican primary election for the Third Congressional District as that would be inconsistent with Judge Sharpe's Order, which set June 28th as the primary election date in the State. <u>United States v. New York</u>, 10-cv-1214 (GLS/RFT) (N.D.N.Y.) (Dkt. No. 88) (hereinafter "Judge Sharpe's Order").

24. Thus, after Plaintiffs filed the Complaint in this action on July 13, 2016, Plaintiffs field a "Notice of Related Cases" form. Plaintiffs also requested an expedited determination of whether this action is related to <u>United States v. New York</u>. On July 18, 2016, Judge Sharpe entered a summary order in this case denying Plaintiffs' request to designate the two cases as related. <u>Pidot v. N.Y.S. Bd. of Elections</u>, 16-CV-859-FJS-CFH (Doc. 11).

### RELATED STATE COURT LITIGATION

25. As set forth above, Plaintiff Philip Pidot has been vigorously litigating his rights under the New York Election Law in state court.

26. On July 7, 2016, Pidot filed a Notice of Appeal in the New York Appellate Division, Second Department, challenging the Supreme Court's ruling refusing to order a new election. That appeal was handled on an expedited basis; briefing was completed and oral argument was held on Tuesday, July 19, 2016. On Thursday, July 21, 2016, the Appellate Division issued a written decision denying Pidot's request for a new election.

27. Although the relief requested in this action and in the Appellate Division is the same, Plaintiffs are **not** asking this Court to decide the same, or even similar, issues that were

7

presented to the Appellate Division (or the State Supreme Court, for that matter). In fact, the issues presented in Plaintiffs' Complaint—claims asserted by voters to vindicate their constitutionally-protected right to associate by voting, and claims by Pidot under UOCAVA—**could not have been raised** in the state court proceedings. [3]

## EXPEDITED RELIEF IS WARRANTED HERE

28. Plaintiffs' Complaint asserts several claims for relief which are predicated on the deprivation of Plaintiffs' associational rights which are protected by the First Amendment. The Complaint also asserts claims under UOCAVA.

29. Plaintiffs, as well as 152,876 other enrolled Republican voters in the Third Congressional District, have been deprived of their right to vote. As a result of the confluence of factors surrounding the hotly-contested litigation concerning Pidot's candidacy, Pidot was excluded from the ballot and the Republican primary election for the Third Congressional District was cancelled.

30. The only remedy for the deprivation of these rights is to schedule a vote for the Republican nomination for the Third Congressional District using a ballot that names the two validated Republican candidates—Pidot and Martins.

31. There are a number of factors and constraints at issue here that render a traditional motion practice schedule inadequate.

32. As an initial matter, the federal general election is scheduled for November 8, 2016. To comply with UOCAVA, and to be consistent with Judge Sharpe's election calendar,

---

[3] As set forth above, the state court proceedings are governed by Article 16 of the New York Election Law. Article 16 authorizes certain "special proceedings," truncated litigations that are limited to certain statutorily-authorized claims—i.e., to validate or invalidate a designating petition or to challenge the form or content of a ballot. See, e.g., N.Y. Election Law § 16-102, § 16-104.

timely-requested overseas absentee ballots for the general election must be mailed no later than Saturday, September 24, 2016.

33. For purposes of this instant application, I assume here that all the logistical aspects required for that mailing—i.e., the preparation of the ballots; the proofing and printing of the ballots; physically sealing and mailing envelopes—could be accomplished within a few days prior to the September 24th deadline. This means that a rescheduled Republican primary election must be held—and time allotted for any post-election challenges—sufficiently in advance of September 24th. Accordingly, as I have been advised, a rescheduled primary should be held no later than the end of August or the beginning of September. And this means, of course, that time must be allotted for briefing, oral argument, and a decision from this Court on Plaintiffs' instant application.

34. Thus, even though the September 24, 2016 deadline for the mailing of absentee ballots is more than 60 days away, there are multiple steps involved in this litigation and in the election process that will jeopardize the State's ability to comply with that deadline. Thus, in that there is a very real possibility that complying with the 45-day UOCAVA requirement for this primary election will jeopardize compliance with the 45-day UOCAVA requirement for the federal general election, Plaintiffs have asked this Court for various forms of relief to shorten the 45-day UOCAVA requirement for the Republican primary election for the Third Congressional District.

35. For the reasons stated herein, and as set forth in the Complaint, I respectfully request that this Court grant the relief requested herein.

36. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: New York, New York
July 21, 2016

EXECUTED:

_____

JERRY H. GOLDFEDER