# EXHIBIT 6

TO BE ARGUED BY
*JOHN CIAMPOLI, ESQ.*
**15 MINUTES REQUESTED**

SUPEREME COURT : STATE OF NEW YORK
SECOND DEPARTMENT
------------------------------------------------------------------------X

In the Matter of the Application of
**Dominic Macedo, Robert Donno, Mark Sauvigne,**
**and Marlene Lobato**

                                Petitioners

       -against-

**Philip M. Pidot, candiate, and**

Gregory Peterson, Peter Kosinski,

                                  **NASSAU CO.**
                                  **INDEX NO.**
                                  **3124 / 2016**

**Douglas Kellner and Andrew Spano**
**Commissioners constituting the**
**New York State Board of Elections,**

                              Respondents,

------------------------------------------------------------------------X

In the matter of
Philip M. Pidot,

                  Petitioner - Appellant

                                 NASSAU COUNTY
                                 INDEX NO. 16-3448
                                 .

-against-

                                 **APPELLATE DIVISION**
                                 **DOCKET NO.**

Dominic J. Macedo, Robert Donno, Mark S. Sauvigne,
and Marlene Lobato, and

The New York State Board of Elections,

                            Respondents - Respondents.
_____X

---

### BRIEF ON APPEAL / CROSS APPEAL FOR RESPONDENTS
### MACEDO, DONNO & LOBATO

---

                              **John Ciampoli, Esq.**
                              *Of counsel to*
                              **Sinnreich, Kosakoff & Messina, LLP**
                              **267 Carleton Avenue Suite 301**
                              **Central Islip, NY 11722**
                              **631.650.1200**

## PRELIMINARY STATEMENT

Appellant Pidot, after failing to avail himself of legal opportunities to seek administrative and judicial review of his nominating petitions and after causing multiple and needless delays in the judicial review of those petitions, now seeks relief from the very problems which he created.  Like the child who murdered his parents and then begged the court to show him mercy because he was an orphan, Pidot argues as if the rules, deadlines, and the very law, itself, should be applied differently, just for him, because of the unique circumstances, which he created, in what he slyly denominates "a case of first impression."

If anything, this is NOT a case of first impression as the Appellant Pidot would have this Court believe.

This is a case where the Court made the appropriate findings of fact on the Objectors' motion to dismiss the Pidot validating proceeding. The Court properly determined that it was impossible to place Pidot on the ballot for the June 28th Federal Primary. Indeed, on the last day of trial, just before the proceedings ended, Pidot's Attorney relented and changed his position conceding the fact that it was impossible for him to obtain the relief he requested in his petition, Transcript of Proceedings, pp. 400, l. 14, et seq.

The reversible error by the Supreme Court was the failure to grant the objectors' motion to dismiss the proceeding (which was based on a number of reasons) on the basis of impossibility. The Supreme Court came to the correct factual determination, however, it failed to apply the law established by the Court of Appeals, and this Department, which requires dismissal when a litigant seeks to secure a judicial remedy after it has become physically and legally impossible for the judiciary to provide meaningful relief.

Moreover, the claim that the petition was properly validated is specious. The New York State Board of Elections properly invalidated the Pidot designating petition.

Pidot appeared at the administrative hearing represented by former attorney Thomas Spargo and Brendon Quinn, consultants experienced in the petition / objection process. The Pidot team had documents in their possession, including what they claimed were certified voter registration records and other information from the Pidot campaign and subscribing witnesses which if introduced at the hearing might have had a rehabilitative effect on the invalid Pidot petition. Pidot submitted nothing, even though he had been given an extra day to do so by the hearing officer. The petition was invalidated on May4, 2016, see Video of the report / Board Meeting available on the New York State Board of Elections website, http://www.elections.ny.gov/ , Flash Drive Exhibit to Motion to Dismiss.

Pidot then brought on a validating proceeding. Contrary to his allegations that the case was dismissed at a preliminary hearing, both the validating and invalidating proceeding were called up on the Court's calendar. The Court, after argument, and deliberation, granted the oral application to dismiss for improper commencement on May 11, 2016,

Pidot then delayed for nearly two weeks before returning to the Supreme Court with an application to vacate the prior order. Upon getting an order to show cause signed bringing on the application, Pidot then created further delay by improperly serving an incomplete set of papers on the respondents himself. After giving him a second chance to properly serve a complete set of papers, the Supreme Court decided the application on June 7th. Notably, Pidot could have immediately appealed to this Court but chose to do nothing.

This Court reversed the Supreme Court ruling and remanded for trial. Proceedings commenced before Justice Diamond on June 20, 2016, with evidence being received as of June 21st after the remittitur was completed. The hearing was continued each day until June 23rd, and a decision rendered on June 24, 2016.

The Primary Election was held, as scheduled by an order of the United States District Court for the Northern District of New York, Sharp, J., case no. 1:10-CV-1214, on June 28, 2016.

3

On June 27, 2016 Pidot went to the Federal Courts with a Summons and Complaint, however, did not request any temporary relief from the Court to restrain the primary Election from proceeding without him. Judge Bianco of the Eastern District of New York held a conference on June 30, 2016 and set a briefing / motion schedule. On July 5, 2016, the deadline for Defendants' and Intervenors' (the Objectors in these proceedings) papers to be filed, Pidot moved to voluntarily dismiss his federal action. Dismissal was granted the next day.

At the end of the week, on July 7th, some two weeks after Justice Diamond's decision of June 24, 2016, Pidot turned to this Court by filing a notice of Appeal.

In short, the decision by the Supreme Court below was the product of Pidot's own actions. He occasioned delay after delay. Whether it was making the tactical decision to not appeal to this Court immediately after the May 11th ruling; serving an order to show cause without supporting papers himself; or charging off to Federal Court and then having his own proceeding dismissed; Pidot's actions caused the clock to run out on the date set by Northern District Court Judge Sharpe for the Federal Primary. Even now, with argument set for July 19th, Ordering a Primary for either September 6th or 13th would not provide the Boards of Elections with the needed time (50 Days plus seven days to return ballots and one dayto count ballots for a total of 58 days) to avoid being in violation of the Federal MOVE Act.

The conclusion of law here is inescapable. The matter should have been dismissed once the Supreme Court determined that the remedy requested, placement on the June 28, 2016 primary ballot was impossible.

Now Pidot, as an appellant, would ask this Court to give him a specially ordered primary election. Yet the local Boards of Elections (Suffolk, Nassau and New York City) who would have to run and pay for Pidot's personal election are not parties to the proceedings. Additionally, the Appellant has not joined the United States (Department of Justice) or the State of New York to these proceedings even though they were parties to the federal lawsuit which set the calendar for this election.

The relief requested by Appellant Pidot would require this Court to act in contravention of precedent. The Election Law does not delegate the power to the Courts to award such a remedy. In addition, Pidot proposes to have this Court legislate from the bench in violation of the Constitution. Finally, the remedy that appellant Pidot proposes requires this Court to amend or supersede the order of the Federal District Court establishing the date of the Primary and the election calendar therefor – something that the Appellate Division just does not have the power to do.

Should this Court examine the record beyond the error of finding impossibility and not dismissing the case; it must find that the Supreme Court should not have declared the Pidot designating petition valid for the reasons advanced herein.

## STATEMENT OF FACTS

Cross Appellants, Dominic Macedo, Robert Donno, Mark Saugvine, and Marlene Lobato, are citizen objectors who entered objections to the Republican Designating Petitions of Appellant Philip Pidot. They were successful in obtaining an order of invalidity from the New York State Board of Elections after a hearing on their objections.

Cross Appellants also brought a proceeding before the Nassau Supreme Court to invalidate the Pidot petitions for reasons that included a line by line review of the petitions, and allegations of fraud.

This case is overshadowed by the sequence of events and the Election Calendar set for the Federal Primary Election by the Federal District Court for the Northern District. (Appellant Pidot stipulated to the following time line on the record in Federal Court - up to June 28th subsequent dates have been added):

### 3RD CONGRESSIONAL DISTRICT – TIMELINE OF EVENTS

| | |
|---|---|
| April 14 | Last Day to File / Post Designating Petitions |
| April 15 | Pidot petitions received by SBOE |
| April 18 | Last Day to file / Post General Objections |
| April 19 | Emily Pidot files Objections to Martins' Republican Petitions |
| April 25 | Last Day to file / Post Specific Objections (service on Pidot required) |

7

| | |
|---|---|
| April 26 | Objections to Pidot Petitions received by SBOE |
| April 27 | <u>Macedo v. Pidot</u> Index No. 3124/16 Order Signed / Served |
| May 2 | SBOE Hearing (Record held open for rebuttal until May 3rd – BOE receives nothing from Pidot) |
| May 4 | State Board of Elections meets, invalidates Pidot petition, notes on the record that Pidot offered no defense for his petition |
| May 6 | Pidot v. Macedo, Order signed in Ulster Co. |
| May 7 | Pidot v. Macedo, Index No. 3448/16 Order Served |
| May 11 | Return Date, Supreme Court, Nassau Co., Adams, J. |
| May 11 | Pidot v. Macedo (3448/16) dismissed |
| May 14 | Deadline for mailing Military Ballots under MOVE Act |
| May 18 / 19 | Pidot returns to Nassau Supreme Court with a motion to vacate Justice Adams' order / order signed |
| | Order to Show Cause signed / served |
| May 21 | Macedo, et al move to dismiss application |
| | for service of incomplete papers & service by the petitioner |
| May 23 | Pidot requests permission to reserve without extending return date |
| May 24 | Court extends return date until May 31st (on papers only) |
| June 7 | Supreme Court decision rendered adhering to prior order |
| June 9 | Notice of Appeal filed by Pidot |
| June 13 | Appeal perfected by Pidot |
| June 15 | Respondents' Brief filed. |
| June 17 | Argument before Appellate Division 2nd Dept. |
| June 17 | Order reversed and remitted to Nassau Supreme Court (after 5:00 PM) |

8

| | |
|---|---|
| June 20 | Appearances in Nassau Supreme Court, Remittitur not completed – case conferenced |
| June 21 | Voting machines deployed by local Boards (Nassau, Suffolk, NYC) to polling sites |
| June 21 | Written motion to dismiss handed up by Macedo, et al |
| June 21 - 23 | Trial |
| June 23 | Pidot concedes that it is impossible for him to be placed on the Primary Ballot |
| June 24 | Decision issued by Nassau Supreme Court |
| June 27 | Pidot files in EDNY |
| June 28, 2016 | Federal Primary Election held |
| June 30 | Conference in Federal Court |
| July 5 | Pidot withdraws Federal Complaint |
| July 6 | Voluntary Dismissal Ordered, EDNY, Bianco, J. |
| July 7 | Notice of Appeal served / filed |
| July 10 | Last day to begin the election process for a September 6 Primary Election (July 10 is a Sunday) |
| July 11 | Notice of Appeal (cross appeal) filed / served |
| July 19 | Appellate Division Argument |
| Sept 6 | Latest date proposed by Pidot for a Court Ordered Primary Election |
| Sept 13 | State Primary Election |
| Sept 15 | Last day to certify November Federal Ballot |

On June 24th the Court held that it was impossible for Appellant Pidot to be placed on the ballot for the June 28, 2016 Federal Primary Election. Inexplicably, the Court refused to grant the Cross-Appellants' motion to dismiss Pidot's case for

this very reason, Decision, p. 3. In addition, the Court denied motions to dismiss

for failure to properly complete service on all respondents, and the failure to

exhaust administrative remedies, Decision, p. 3. We note that, contrary to the

Appellant Pidot's contention, no part of the Motion to Dismiss was granted.

As to facts relevant to the Cross Appeal, the appellant, Pidot rested his case

on June 21st, see Transcript, p. 378, l. 10 – 12. Two days later the Supreme Court

improperly allowed additional evidence to be admitted as "rebuttal witnesses" after

Pidot had wrapped up his case, see Transcript, p. 355, et seq., over the objections

of the cross appellants, who had not put a single witness on the stand.

This error resulted in the validation of twelve signatures (witnessed by

Cummings) and twenty-four signatures (witnessed by Gallo [10 signatures] and

Budraitis [14 signatures]). In addition, the Court erred by validating fifty-eight

signatures collected by Lawrence Bassett, who was maintaining active voter

registrations in Florida and New York simultaneously (a violation of Election Law

Sec. 17-104, which is a felony).

As the Court found that the petition was valid by only eleven signatures,

these glaring errors of law and procedure point up the fact that the Pidot

designating petition is in fact invalid.

As of this writing, it is more than two weeks past the date of the Supreme Court's decision and Order.

Justice Diamond found the delay in prosecuting his case incredible, see Transcript, p. 388, l.6 - 17

The Appellant, however, believes that the rules do not apply to him. He openly maintains, "Administrators would simply have to turn on the machines and put on election inspectors,", June 29, 2016, see NEWSDAY, http://www.newsday.com/long-island/politics/philip-pidot-lawsuit-in-3rd-cd-gets-july-11-hearing-1.11985357 . It is simply unfathomable to believe that this arrogant selfish and simplistic attitude could be rewarded by the Courts.

# POINT I

## UPON A FINDING OF IMPOSSIBILITY
## THE PIDOT VALIDATING PROCEEDING
## SHOULD HAVE BEEN DISMISSED

It is the law of this State, and particularly this Department, that where it is found that it has become impossible for the Court to render meaningful relief the appropriate remedy is dismissal. The Supreme Court completely missed this point and proceeded to reach the merits of the designating petition in its decision (see Decission, p. 3).

The Court of Appeals held in Hunter v. Orange County Board of Elections, 11 N.Y.3d 813 (2008), "Order reversed, without costs, and matter remitted to Supreme Court, Orange County, with directions to dismiss the proceeding. Under the circumstances of this case, it would be impossible, if this Court were to entertain the merits, to render meaningful relief in compliance with the Election Law." In Hunter, supra., the election was merely days away. The petitioner sought a Court ordered adjustment of the Primary returns, or a new primary Election.

It was physically impossible for the Court to grant relief after ballots were printed, machines [mechanical machines were in use at the time] were being programed, and absentee, military, and special ballots had been distributed. With the new generation of electronic voting machines, the ability to change the ballot

has been limited by the time required to reprogram and test each individual

machine with any court ordered change, see, <u>Hensley v Matthews</u>, 2014 WL

5469941(Sup. Ct. Suffolk Co., Smith, J.).

This Department has applied the rule of the <u>Hunter</u> case, see matter of

Semple, 121 A.D.3d 798 (2nd Dept., 2014); and, <u>Matter of King v. Board of

Elections in City of N.Y.</u>, 65 A.D.3d 1060; see also <u>Matter of Breitenbach v.

Heffernan</u>, 245 App.Div. 374, 375–376.

We must note here that the fifty-eight days required for compliance with the

Federal MOVE Act [Military and Overseas Voter Empowerment Act], 42 U.S.C.

1973ff,  further pressures the election calendar, and makes a finding of

impossibility to conduct a legal election for federal offices, as is the case here,

more likely.

Once the Supreme Court found that it was impossible to grant the relief

requested by the Appellant, the appropriate remedy under the Hunter rule was

dismissal. This makes any finding as to the number of signatures in the designating

petition irrelevant.

Accordingly, the decision and order of the Supreme Court, Diamond, J.,

should be reversed or modified, and the motion to dismiss for impossibility should

be granted.

## POINT II

## THIS COURT DOES NOT HAVE
## THE POWER TO GRANT THE RELIEF
## REQUESTED OR
## TO MODIFY A FEDERAL COURT ORDER

The election law is a narrow grant of authority by the legislature to the

Courts to govern the Election Process. It is axiomatic, therefore that if a specific

provision of law does not grant the Judiciary the power to act, the Courts may  not

act.

The case law is clear on this point. 83. While Article 16 of the Election Law

empowers this Court to order a new Primary where there is fraud or irregularity,

there is no express grant of power to the Court to alter the date of the Primary

Election. Section 16-102(3) states:

> "The court may direct reassembling of any convention **or the
> holding of a new primary election, or caucus where it finds there
> has been such fraud or irregularity as to render impossible a
> determination as to who rightfully was nominated or elected**."
> Election Law, Sec. 16-102(3), emphasis added.

The Courts may not act under the Election Law unless specifically granted the

power to do so, see, <u>Matter of Corrigan v. Board of Elections of Suffolk County</u>,

38 A.D.2d 825, 827, affd. 30 N.Y.2d 603; see <u>Matter of Delgado v. Sunderland</u>, 97

N.Y.2d 420, 423; <u>Mondello v. Nassau County Board of Elections</u>, 6 A.D.3d 18 (2nd Dept., 2004).

Here, the Court may only act to award a new primary election where there is fraud or irregularity that effects the results so that a rightful winner cannot be determined.

It is respectfully submitted that there are two bars here to the relief requested. First, there must have been an "old" primary in order to have a Court award a "new" primary. Secondly, there must be a finding that the primary was tainted by fraud or irregularity. As there has been no primary election conducted; it is impossible to demonstrate fraud or irregularity,

The arguments presented by the Appellant are mere sophistry, extracting sentences from several decisions, out of context, to fabricate an argument that is simply without merit.

Indeed, the Appellant now urges this Court to amend the order of the Federal District Court in United States v. State of New York, 1:10-CV-1214. The Supreme Court was unwilling to venture into this trap. This Court should also find that once the Federal Court took jurisdiction over the dates for the Election Calender, the state Courts were divested of jurisdiction. The Supreme Court has held:

> "**The chief rule which preserves our two systems of courts from actual conflict of jurisdiction is that the court which first takes the subject-matter of the litigation into its control**, whether this be person or property, **must be permitted to exhaust its remedy,**

**to attain which it assumed control, before the other court shall attempt to take it for its purpose**... These courts do not belong to the same system, so far as their jurisdiction is concurrent; and although they coexist in the same space, they are independent, and have no common superior. They exercise jurisdiction, it is true, within the same territory, but not in the same plane; and **when one takes into its jurisdiction a specific thing, that res is as much withdrawn from the judicial power of the other, as if it had been carried physically into a different territorial sovereignty**" (Ponzi v. Fessenden, 258 U.S. 254, 260–261 [1922] [internal quotation marks and citations omitted]), emphasis added.

This rule has been applied by our State's Appellate Courts as well. Where an existing Federal Court order is in place, it is proper for the State Supreme Court to refuse to act, see Catskill Mountains Chapter of Trout Unlimited v. Sheehan, 71 A.D.3d 235 (3rd Dept., 2010). There, as here, there was an existing Federal Court order in place, and the Supreme Court was held to have acted properly when it refused to take jurisdiction of the matter, because it lacked the authority to alter or modify the District Court's order.

While the subject matter of the orders in this case and Catskill Mountains, supra., are different the rule applies to the case at bar. This Court, just as the Supreme Court ruled, has no jurisdiction to adjust the dates for a federal primary election as set by Judge Sharp in U.S. v. New York State, supra.

The Supreme Court should have granted the Cross-Appellants' application to dismiss the Pidot petition to the extent that it requested relief that would change the date of the Primary Election as set by Judge Sharpe's

16

Accordingly, the Appellant's application for a rescheduled Primary Election must be rejected and his appeal dismissed.

## POINT III

## THIS COURT SHOULD NOT VIOLATE THE CONSTITUTION'S PROVISIONS ON SEPERATION OF POWERS BY ENGAGING IN A LEGISLATIVE ACT

The Court of Appeals has framed the question of justiciability of certain issues which are defined as "political questions". The Court held:

> "The doctrine of justiciability, developed to identify appropriate occasions for the exercise of judicial authority, represents perhaps the most significant and least comprehended limitation upon the judicial power. (See Jackson, The Supreme Court in the American System of Government, p. 11.) Justiciability is the generic term of art which encompasses discrete, subsidiary concepts including, inter alia, political questions, ripeness and advisory opinions. At the heart of the justification for the doctrine of justiciability lies the jurisprudential canon that the power of the judicial branch may only be exercised in a manner consistent with the "judicial function" (Matter of State Ind. Comm., 224 N.Y. 13, 16, 119 N.E. 1027 [Cardozo, J.]), upon the proper presentation of matters of a "Judiciary Nature" (2 Farrand, Records of Federal Convention of 1787 [1911], p. 430). Recognizing that we have no more right to usurp the authority conferred upon a coordinate branch of government than to decline the exercise of jurisdiction which is granted, we turn to the critical inquiry presented by this appeal— whether petitioners' claims are justiciable.

> As a reflection of the pattern of government adopted by the State of New York, which includes by implication the separation of the executive, legislative and judicial powers (Matter of LaGuardia v. Smith, 288 N.Y. 1, 5–6, 41 N.E.2d 153; Matter of Guden, 171 N.Y.

529, 531, 64 N.E. 451), it is a fundamental principle of the organic law that each department of government should be free from interference, in the lawful discharge of duties expressly conferred, by either of the other branches (People ex rel. Burby v. Howland, 155 N.Y. 270, 282). With respect to the distribution of powers within our system of government, it has been said that no concept has been "more universally received and cherished as a vital principle of freedom". (Dash v. Van Kleeck, 7 Johns 477, 509 [Kent, Ch. J.].) Within our tripartite governmental framework, the Governor, as chief executive officer, has the responsibility to manage the operations of the divisions of the executive branch, including the Department of Correctional Services. (Saxton v. Carey, 44 N.Y.2d 545, 549, 406 N.Y.S.2d 732) The lawful acts of executive branch officials, performed in satisfaction of responsibilities conferred by law, involve questions of judgment, allocation of resources and ordering of priorities, which are generally not subject to judicial review. (Matter of Lorie C., 49 N.Y.2d 161, 171, 424 N.Y.S.2d 395; Matter of Abrams v. New York City Tr. Auth., 39 N.Y.2d 990, 992, 387 N.Y.S.2d 235; Jones v. Beame, 45 N.Y.2d 402, 408, 408 N.Y.S.2d 449; James v. Board of Educ., 42 N.Y.2d 357, 368, 397 N.Y.S.2d 934; Matter of Smiley, 36 N.Y.2d 433, 441, 369 N.Y.S.2d 87.) This judicial deference to a coordinate, coequal branch of government includes one issue of justiciability generally denominated as the "political question" doctrine. (Jones v. Beame, 45 N.Y.2d 402, 408, 408 N.Y.S.2d 449, supra; Benson Realty Corp. v. Beame, 50 N.Y.2d 994, 996, 431 N.Y.S.2d 475, app. dsmd. 449 U.S. 1119, 101 S.Ct. 933, 67 L.Ed.2d 106; Klostermann v. Cuomo, 61 N.Y.2d 525, 535, 475 N.Y.S.2d 247, supra.)", D.C.82, AFSCME v. Cuomo, 64 N.Y.2d 233 [1984] emphasis added.

In D.C.82 v Cuomo, supra, the Court of Appeals concluded:

"While it is within the power of the judiciary to declare the vested rights of a specifically protected class of individuals, in a fashion recognized by statute (Klostermann v. Cuomo, 61 N.Y.2d 525, 475 N.Y.S.2d 247), the manner by which the State addresses complex societal and governmental issues is a subject left to the discretion of the political branches of government (Klostermann v. Cuomo, 61

N.Y.2d 525, 475 N.Y.S.2d 247; Matter of Abrams v. New York City
Tr. Auth., 39 N.Y.2d 990, 992, 387 N.Y.S.2d 235). Where, as here,
policy matters have demonstrably and textually been committed to a
coordinate, political branch of government, any consideration of
such matters by a branch or body other than that in which the power
expressly is reposed would, absent extraordinary or emergency
circumstances (James v. Board of Educ., 42 N.Y.2d 357, 367, 397
N.Y.S.2d 934), constitute an ultra vires act."

Given this framework, the analysis in this case is rendered simple. The Election

Law vests the Courts with limited authority in relation to Elections. It is for the

Legislature and the Governor to produce new law to deal with this situation.

The Court in Hensley v. Matthews, supra, was critical of the statutory

scheme in the face of the added demands of the system for time to prepare for an

election. That Court was not able to fashion a remedy under the framework of the

statute and case law. That Court did not venture into the business of legislating a

result. This Court should take the same path when the statute, case law, Federal

Court Order and the facts (particularly Pidot's responsibility for the delay) are

considered.

All this said, the petitioner has submitted a non-justiciable claime to the

Court by asking it to reschedule a Primary Election.

## POINT IV

### THE APPELLANT HAS MADE
### NO APPLICATION FOR AN ADDITIONAL
### DAY OF VOTING PURSUANT TO
### ARTICLE THREE OF THE ELECTION LAW

To the extent that the Appellant made application for an additional day of voting to the Supreme Court, and raises that issue in his brief (see p. 20, par 1), such application was properly rebuffed by the trial court and should also be rejected by this Appellate Division.

In 2001, after the attack on the World Trade Center, the Governor declared a state of emergency. The New York State Board of Elections then acted to reschedule the Primary Election pursuant to its powers under Section 3-108 Election Law, and special chapters of New York law passed after the attack. In the end, the order of Justice Fischer, was of no moment.

Pidot attempted to make this argument to the Supreme Court, see Transcript, p. 392, et seq. A review of the statute makes the folly of this argument obivious. The law states:

"Disaster; additional day for voting

1. A county board of elections, or the state board of elections with respect to an election conducted in a district in the jurisdiction of more than one county board of elections, may determine that, as the direct consequence of a fire, earthquake, tornado, explosion, power failure, act of sabotage, enemy attack or other disaster, less

> than twenty-five per centum of the registered voters of any city, town or village, or if the city of New York, or any county therein, actually voted in any general election. Such a determination by a county board of elections shall be subject to approval by the state board of elections. If the state board of elections makes such a determination, it shall notify the board of elections having jurisdiction in that county that an additional day of election shall be held, which notice shall show: the nature of the disaster; the county, city, town or village affected thereby; the number of persons duly registered to vote therein at such general election; and the number of persons who voted therein at such general election.", Election Law, Sec. 3-108(1).

The law applies to general elections, The Appellant has made no application to get the Board of Elections to order an additional day of voting. Most importantly, there has been no enemy attack, fire, earthquake, or other disaster.

All that has occurred in the case before the Court is that the Appellant has run out the clock on himself. He is clearly guilty of laches, and must not be allowed to benefit from his own delay.

Accordingly, the decision and order below should be affirmed to the extent that it denied Appellant's application pursuant to Article Three of the Election Law for an additional day of voting.

## POINT V

## THE FEDERAL MOVE ACT
## EFFECTIVELY PREVENTS A
## RESCHEDULED PRIMARY ELECTION

Working from the timeline presented in the statement of facts we find that Pidot's delay has again pushed us past the point of no return.

According to the New York State Board of Elections, the Federal MOVE Act, supra, requires that the Ballot for Federal Offices be finalized and certified by September 15, 2016.

We must do a mathematical calculation working backward from this date. Generally it is accepted that the forty five days required for Military ballots to be sent out under the law is supplemented by five days to provide for the design and printing of the ballots. Next we must add seven full days to the process to allow for ballots to be received after the election. If the counting and certification can be completed in one day, then the total number of days needed before conducting Mr. Pidot's Primary would total fifty eight.

By our calculations, the fifty eight day before a September 6th Primary would be July 10th. That date is already past, making compliance with Federal Law impossible.

We must remember that local Boards of Elections would be in the middle of conducting the September 13, 2016 Primary Election. We do not know at this point

if the Boards would have sufficient voting machines available for Pidot's Primary. Nor do we know the cost to the taxpayers of running two elections within one week, or all of the logistical problems that this might create. In addition, we must remember that the canvass of the ballots would have to occur on the day after the Boards of Elections conduct their state and local primary elections (September 14th).

Indeed, it is fair to say that granting the relief Pidot requests would not only result in a violation of law, but could create snafus in the regularly scheduled Primary Elections.

Running an election is not as simple as Pidot claims. There is much more to the process than "… turn[ing] on the machines and put[ing] on election inspectors", Newsday, supra, as the Appellant has claimed.

Accordingly, to the extent that the Supreme Court denied that application for a rescheduled Primary Election, it should be affirmed and the petition of Appellant should be dismissed.

# POINT VI

## FAILURE TO JOIN NECESSARY PARTIES

When one considers the course of this case, Pidot has morphed a simple validating proceeding into a totally different action. He is now requesting a judgment and order against the New York State Board of Elections that would require a rescheduled election to accommodate his desires.

We all need to recognize the fact that the New York State Board of Elections owns no voting machines in Queens, Nassau or Suffolk Counties. The New York State Board of Elections employs no inspectors in those counties. The State Board will not be responsible for printing or mailing ballots, or actually running any election this Court might order. Moreover, the New York State Board of Elections will not be paying the bill for this election.

We believe, and asserted below, that the Court needed to hear from the local boards of elections. Once the Pidot request became larger and more demanding on local resources, the Court below should have required joinder (if it could be timely made) or dismissed the action outright.

CPLR 1001(a) requires joinder of necessary parties whose rights might be affected by the outcome of the case. The failure to join the New York City, Nassau County and Suffolk County Boards of Elections should have been fatal to Pidot's

request for extraordinary relief which would require local Boards to perform

unprecedented acts. The failure to name necessary parties in an Election Law

proceeding is fatal, see <u>Quis v. Putnam Co. Board of Elections,</u> 22 A.D.3d 585,

citing to CPLR 1001(a).

It is also true that as the Appellant has asked this Court to alter the Federal

Court's Order, the United States and the State of New York are also necessary

parties whose rights are affected by this Court's determination.

Accordingly, the Appellant's petition should be dismissed for failure to

name necessary parties.


## POINT VII

### THE SUPREME COURT ERRONIOUSLY
### DETERMINED THE
### DESIGNATING PETITION TO BE VALID


The Supreme Court erroneously reached the merits of the designating

petition and determined that it had eleven signatures more than required by Article

Six of the Election Law. If we examine the Court's actions in reaching its

determination, we find further error.

> Pidot's Attorney, john Sweeney, had rested his case. The Transcript reflects:
>
> "THE COURT: Okay. Now Mr. Sweeney, you're finished; correct?
>
> MR.SWEENEY: I am your honor."

Cross Appellants then began to enter their case. Twice the Supreme Court, over objection, allowed in evidence after Pidot had rested and completed his case. THIS IS CLEARLY ERROR, TO ALLOW THE Appellant to put in evidence after resting has been found to be basis for reversal by this Department, see Gugliano v. Levi, 24 A.D.2d 591 (2nd Dept., 1965); King v. Burkowski, 155 A.D.2d 285 (1st Dept., 1989). The decision to re-open a case is to be used sparingly at best. Here the determination was highly prejudicial to the cross appellants and resulted in a complete change in the course of the litigation. Indeed, this appeal exists only because Pidot asserts that he had a valid designating petition, which wea manufactured after Pidot had rested his case and the Objectors had adduced evidence reducing his number of signatures below the statutory number.

Initially, a certified voting record for subscribing witness Cummings was admitted into evidence (previously the Court had sustained objections to an uncertified copy being admitted), Transcript, pp. 264, l. 17. Based upon this evidence, submitted after the Petitioner had rested his case, twelve signatures were validated. This error tipped the case to Appellant improperly.

Later, after Cross Appellants had rested their case, Pidot was allowed to call two additional witnesses. Based upon these two witnesses alone, the Court restored twenty-four signatures to the petition. Well more than the eleven signature margin by which it was validated. Again, error was responsible for the Court's determination that the petition had sufficient valid signatures.

Accordingly, if this Court reaches the merits of the designating petition, the order of the Supreme Court should be reversed and the petition declared invalid.

**POINT VIII**

**THE SIGNATURES OF A WITNESS REGISTERED
ILLEGALLY IN TWO STATES
SHOULD HAVE BEEN INVALIDATED**

One of Pidot's subscribing witnesses, Lawrence Bennett, was proven to have two active voter registrations. One in Florida (where he voted in the 2016 presidential Primary Election) and one file in New York just days before he became a paid petition gatherer for Pidot. Also, the Court was provided with Pidot's FEC financial disclosure statements for his campaign which reported no payments to Bennett for signature gathering.

When questioned as to why he omitted from his New York registration form any information as to where he was previously registered, he simply said he must have missed it, Transcript, pp. 237 et. seq., see p. 248 et. seq.

He could not explain his failure to update licenses he had in Florida. He never produced the divorce decree he claimed to have had.

In spite of the fact that the Election Law prohibits a person from maintaining multiple voter registrations, Section 17 – 104 Election Law (one of the few felonies provided for in the Election Law); the Court credited his testimony and validated some fifty-eight signatures.

Without this erroneous determination, the Pidot petition would have been invalid.

Accordingly, if this Court reaches the merits of the designating petition, the decision and order of the Supreme Court should be reversed.

## POINT IX

## THE DESIGNATING PETITION SHOULD HAVE
## BEEN INVALIDATED DUE TO
## PIDOT'S FAILURE TO APPEAR AND
## PRODUCE SUBSCRIBING WITNESSES

The order to show cause commencing the invalidating proceeding required Pidot to appear personally before the Court. It also required that he produce his subscribing witnesses (including Mrs. Pidot) for examination before the Court. Pidot was twice served with subpoenas duces tecum. He was seen leaving the Courthouse by counsel just prior to the Court going into session. He never appeared before Justice Diamond. He never produced financial record showing how and who he paid for signature gathering.

In spite of the fact that Pidot's FEC reports fraudulently secrete the identity of his petition gatherers and the methodology he employed for ballot access, Justice Diamond refused to enforce Justice Peck's Order to Show cause. He precluded the Objectors from making their fraud case.

Unfortunately, Justice Diamond did nothing to require his attendance or the attendance of subscribing witnesses need for Objectors' fraud case.

It is respectfully submitted that this was reversible error.

## POINT X

## FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

At the hearing before the New York State Board of Elections Pidot was represented by two political consultants working with and/or for his attorney (Mr. Sweeney never appeared at the hearing). Both of these gentlemen, Thomas J. Spargo, and Brendon Quinn, have extensive experience working with petitions, objections and the Election Law. The Pidot team had documents in their possession, including what they said were certified voter registration records and other information from the Pidot campaign and subscribing witnesses which if introduced at the hearing might have had a rehabilitative effect on the invalid Pidot petition.

Pidot submitted nothing, even though he was given an extra day to do so by the hearing officer. In addition, Pidot had every opportunity to submit affidavits on his behalf. He submitted none.

At the conclusion of Objectors' case the hearing officer offered Pidot's representatives an opportunity to put forward their case to rebut the objections and rehabilitate signatures on the petition. The Petition was clearly going to be found to be invalid at that juncture, although the hearing officer had "reserved decision" on several items. The Appellant, Pidot, put nothing forward.

The hearing officer kept the record open until the following day. Again, Pidot failed to put forward any case to rehabilitate signatures in his petition.  On May 4, 2016, the Commissioners of the Board of Elections took a report reflecting the fact that Pidot had failed to avail himself of any opportunity to assert administrative remedies at the Board Hearing. Video of that report / Board Meeting is available on the New York State Board of Elections website, http://www.elections.ny.gov/.
(A copy of the video on a flash drive was annexed to Objectors' motion as EXHIBIT A.)

It is well settled law that a petitioner must act to exercise any administrative remedies he has before resorting to the Courts. Here, unlike certain local boards of Elections, the New York State Board of Elections afforded a full opportunity to Pidot to participate in the hearing and assert

his disagreements with the Board's individual determinations which added up to Pidot having an insufficient number of signatures for designation.

It is well settled law that the failure to exhaust administrative remedies precludes the issues from being first raised in Court, <u>Connor v. Town of Niskayuna,</u> 82 A.D.3d 1329 (3rd Dept., 2011); <u>Laureiro v. NYC Dept. of Consumer Affairs,</u> 41 A.D.3d 717 (2nd Dept., 2007); <u>Nazir v. Charge & Ride,</u> 95 A.D.3d 1215 (2nd Dept., 2012); <u>Sabino v. DiNapoli</u>, 90 A.D.3d 1392 (3rd Dept., 2011); <u>Watergate II Apartments v. Buffalo Sewer Auth.,</u> 46 N.Y.2d 52 (1978).

The only exceptions to the requirement that Pidot exhaust his administrative remedies are where a constitutional claim is asserted, or futility of participation in the administrative process is apparent, see <u>Swergold v. Cuomo</u>, 70 A.D.3d 1290 (3rd Dept., 2010), and <u>Lehigh Portland Cement Co. v. NYS Dept. of Envirnmental Conservation</u>, 87 N.Y.2d 136 (1995). None of those circumstances exist in this case.

The Supreme Court did not exclude evidence not offered at the administrative hearing. Moreover, the Court below denied the motion to dismiss on the basis of failure to exhaust administrative remedies.

Accordingly, the denial of the motion must be reversed and the Appellate Division should dismiss the Pidot validating proceeding.

## POINT XI

## THE VALIDATING PROCEEDING SHOULD
## HAVE BEEN DISMISSED FOR DEFECTIVE SERVICE

The Pidot validating proceeding was commenced by the filing of an Order to Show Cause and Verified Petition with the Nassau County Clerk by express mail sent on May 7, 2016. Service was made upon the Respondent Objectors by Express Mail on May 7, 2016, prior to the filing.

The statute of limitations in this action ran from the determination of the New York State Board of Elections on May 4, 2016. The relevant statute allows for three business days to commence the proceeding.

Respondent Robert Donno did not actually receive the initiatory papers until May 10, 2016 (see Respondents Exhibit A, filed with the Court on May 11, 2016, and served on Petitioner at that time). (it appeared that the Court misplaced the Donno Affidavit, so a replacement was filed with the Court) Because the Petitioner relied upon service by mail ALONE, he is bound to the case law which requires actual delivery of the instrument of notice before the statute of limitations has run out.

The case law is clear, "In order to complete service, actual delivery must occur", Wilson v. Bowman, 121A.D.3d 1402 (3rd Dept., 2014), see also, Wilson v.

Garfinkle, 5 A.D.3d 409 (2nd Dept., 2004); Nunziato v. Messano, 87 A,D,3d 647

(2nd Dept., 2011); see also Bruno v. Peyser, 40 N.Y.2d 827 (1976).

It is respectfully submitted that the Petitioner Appellant had, and has, no

competent proof of actual delivery to Respondent Donno, and has took no steps to

procure same.

If all Respondent Objectors have not been served, the matter must be

dismissed, see CPLR 1001, see also, Fusco v. Westchester County Board of

Elections, 286 A.D.2d 456 (2nd Dept., 2001); Wein v. Molinari, 51 N.Y.2d 717

(1980). Respondent Donno' s affidavit at least shifted the burden of proof to the

petitioner to demonstrate that there was an actual delivery to the Respondent.

Case law is replete with examples of mail that was sent by express mail

service but not delivered until after the statute of limitations had run, see Silkowski

v. Cacase, 308 A.D.2d 425 (2nd Dept., 2003), see also Stabile v. Defronzo, 231

A.D.2d 577 (2nd Dept., 1996).

While the verified petition stated that bare express mail is routinely used in

elections matters, this is simply not true. The current state of the law is reflected in

Angletti v. Niagara County Board of Elections, 25 N.Y.3d 794 (2015). In that case

the Court engaged in colloquy with counsel about the frailties of service by mail

alone. That Court held that service by affixation AND mail would be sufficient.

The affixation assured actual delivery of the papers to the premises that mailing

alone could not, see also <u>Marcoccia v. Garfinkle</u>, 307 A.D.2d 1010 (2nd Dept., 2003).

In addition, Cross Appellant Respondents also contested the adequacy of notice in their motion before the Supreme Court. The papers served must provide sufficient notice to the respondents, see <u>Moore v. Milhim</u>, 109 A.D.2d 810 (2nd Dept., 1985) [one day notice insufficient]; <u>Hipps v. Sunderland</u>, 218 A.D.2d 774 (2nd Dept., 1995) [five day notice sufficient]; see also <u>Buhlmann v. Lefever</u>, 83 A.D.2d 895, affd, 54 N.Y.2d 775 (1981).

Here the petitioner purposefully delayed and provided (requested from the Supreme Court) inadequate notice to the Respondents of the validating proceeding in his order to Show Cause. Even assuming, ***arguendo***, service was completed on May 9, 2016; the return date of the proceeding was considerably less than 48 hours after any delivery time on May 9th.

The notice provided was much less than that which was deemed acceptable in <u>Hipps</u>, supra and barely more than that which was determined to be insufficient in <u>Moore v. Milhim</u>, supra.

The dismissal motion was discussed before the Court on May 11th, however, the merits of the motion were never reached by Justice Adams. Justice Diamond denied this Motion. This Court should reverse and enter an order dismissing the pidot proceeding to validate his petitions.

The denial of the motion to dismiss based upon inadequate service / notice should be reversed by this Appellate Division, and the Validation proceeding of Appellant Pidot should be dismissed.

## CONCLUSIONS

For all of the reasons set forth hereinabove the Appeal of Philip Pidot should be denied and the order of the Supreme Court should be reversed / modified to provide for dismissal of the Pidot validation proceeding.

DATED; July 13, 2016

Respectfully submitted,

John Ciampoli, Esq.

Of counsel to Sinnreich, Kosakoff & Messina, LLP
267 Carleton Avenue Suite 301
Central Islip, NY 11722
631.650.1200