**EXHIBIT 8**



FEDERAL VOTING ASSISTANCE PROGRAM
Department of Defense
Rosslyn Plaza North
1777 North Kent Street
14th Floor, Suite 14003
Arlington, VA 22209-2162

FOR: CHIEF STATE ELECTION OFFICIALS

FROM: Bob Carey, Director, Federal Voting Assistance Program (FVAP)

SUBJECT: Guidance on *Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA)* Ballot Delivery Waivers

    This memorandum provides guidance regarding waivers from the provisions of *UOCAVA* that require ballots to be sent to military and overseas voters 45 days before a federal election. FVAP provides this guidance to explain what the Presidential designee will consider when examining State waiver applications, and to articulate considerations for State applicants to address in waiver applications. This memorandum supersedes the interim guidance issued by the FVAP on May 24, 2010. I have attached three appendices to this memorandum:

- Appendix A – State Guidance, with specific direction on the waiver application process:

  - Overview and elements of State requirements for the waiver request process;
  - Information specific to a waiver request as a result of an election contest;
  - Elements of a comprehensive plan;
  - Department of Defense's (DoD) waiver request review process;
  - Process for States to file waiver requests;
  - State reporting and evaluation requirements; and,
  - FVAP assistance to the States.

- Appendix B – Waiver Cover Memo, provides a format to follow when requesting a waiver and identifying key questions.

- Appendix C – Frequently Asked Questions

    States considering requesting a waiver or a legislative change to comply with *UOCAVA* should contact FVAP well in advance of submitting their application to discuss potential alternatives. This will allow FVAP to assist a waiver-requesting State with their application or a legislative change to identify any problems and find alternatives to a waiver application.

    For additional information, please contact your State Program Analyst listed on page 12 in Appendix A.

Attachments:
As stated

<u>Appendix A</u>

<u>State Waiver Guidance</u>

I. **Background**

Beginning with the 2010 Federal general election, the *Uniformed and Overseas Citizens Absentee Voting Act* (*UOCAVA*), as amended by the 2009 Military and Overseas Voter Empowerment Act (MOVE Act), requires States to transmit absentee ballots to uniformed services voters and overseas voters not later than 45 days prior to an election for Federal office (the "45-day prior requirement").[1] *UOCAVA* authorizes Chief State Election Officials to request waivers from the Presidential designee[2] if due to an undue hardship they are unable to comply with this requirement. *UOCAVA* authorizes the Presidential designee to grant a waiver only to those States whose reason to request a waiver fits one of three issues:

A. The State's primary election date prohibits the State from complying with 42 U.S.C 1973ff-1(a)(8)(A);

B. The State has suffered a delay in generating ballots due to a legal contest; or

C. The State Constitution prohibits the State from complying with such Section.[3]

The Presidential designee shall approve such a request if the Presidential designee determines that:

A. One or more of the three above referenced issues creates an *undue* hardship for the State; and

B. The State's comprehensive plan[4] presented in support of its request provides absent uniformed services voters and overseas voters (*UOCAVA* voters) sufficient time to receive and submit absentee ballots they have requested in time to be counted in the Federal general election.

Since the last time waiver applications were considered by the Department of Defense (DoD), additional requirements of the MOVE Act have come into effect. Most importantly for this memorandum, States and localities are required to transmit absentee ballots 45 days prior to *any* election for Federal office, which includes all general, special, primary (including Presidential preference primaries) and run-off elections.[5]

---

1 42 U.S.C 1973ff-1(a)(8)(A).
2 The Secretary of Defense was designated the Presidential designee by Executive Order 12642 (June 8, 1988), 53 FR § 21975. The Secretary of Defense has delegated this authority to the Under Secretary of Defense (Personnel & Readiness) through DOD Directive 1004.04. For purposes of this Memorandum, the term "Presidential designee" includes those officials exercising authority delegated by the Presidential designee.
3 42 U.S.C. § 1973ff-1(g)(2)(B).
4 42 U.S.C. § 1973ff-1(g)(1)(D).
5 42 U.S.C 1973ff-1 note, Section 579(c), National Defense Authorization Act of 2009, PL 111-84 123 STAT. 2324, (10/28/2009).

1

The Federal Voting Assistance Program (FVAP), under delegated authority from the Presidential designee,[6] and after consultation with the representative of the Attorney General, provides the following guidance on this undue hardship waiver process.[7] A State considering a waiver application or a legislative change to comply with this or other requirements of *UOCAVA* is encouraged to contact FVAP well in advance to discuss potential alternatives. While not required, such a communication may inform a State as to ways to refine a waiver application or refine a legislative change to forestall problems, alternatives to waiver applications, and whether there is a need to seek a waiver.

The interim guidance issued by FVAP on May 24, 2010 is superseded by this guidance. This guidance reissues the cover page format (Appendix B) and Frequently Asked Questions (Appendix C).

## II. State Requirements

A. <u>Applicability</u>: *UOCAVA* requires States to transmit ballots for which a valid request is received at least 45 days prior to an election for Federal office not later than 45 days before the election. Since most elections in the United States are on Tuesdays, 45 days prior to Tuesday falls on a Saturday, a day on which many State offices may be closed. If a State is unable to transmit its *UOCAVA* voters' absentee ballots on the 45th day prior to the election for that or any other reason, the election jurisdiction must transmit the ballots not later than the business day preceding the 45th day, for requests received by that business day, such as the Friday that is 46 days prior to Election Day.

Some States have scheduling problems that prevent the printing of official ballots by the 45th day prior to an election, but not all States in such a situation will necessarily require an undue hardship waiver. For example, in the November 2, 2010 election, some States were able to send photo-copied, camera-ready or PDF versions of the certified final ballot before the 45th day prior to the election. Timely transmittal of such a photocopied ballot, although not yet *printed*, if accepted by the State as an official ballot, satisfies the 45-day prior requirement of *UOCAVA*, and eliminates the need for a waiver. If such copies of the official ballot are used, a State should ensure appropriate instructions are included with the ballot to advise voters that it is an official ballot that will be accepted if otherwise timely and validly cast.[8] During discussions with FVAP, some States also determined they could shorten their primary certification and ballot generation process to meet the 45-day prior requirement. These examples are provided as suggestions for possible resolutions to some scheduling problems with regard to printing official ballots. A State unsure as to whether these or any other approaches might alleviate the need for a waiver request should contact FVAP to discuss further.

---

6 Section 5.1 "The Undersecretary of Defense for Personnel and Readiness shall:
  5.1.2. Designate a civilian employee as the Director, Federal Voting Assistance Program. The Director shall be responsible for all aspects of the FVAP, and shall have the necessary authority to administer that responsibility."
7 The Department of Defense received 12 State waiver applications for the November 2, 2010 election. All waiver requests, Presidential designee responses, and associated documents are available on the FVAP at http://www.fvap.gov/reference/laws/waivers.html. After FVAP has received the final waiver-required reports from States that were granted waivers, it may provide additional guidance based upon the empirical analysis of effectiveness of the comprehensive plans submitted.
8 UOCAVA's MOVE Act amendments provides that ballots returned by UOCAVA voters must be accepted without regard to any existing State requirements specifying paper or envelope size or weight. See 42 U.S.C. 1973ff-2(f).

2

A waiver request cannot be made under 42 U.S.C. § 1973ff-1(g) (2) (B) (i) when the election for which the waiver is sought is a primary election, as it is clearly inapplicable. Therefore, only waiver requests made under 42 U.S.C. § 1973ff-1(g) (2) (B)(ii) or (iii) will be considered for Primary elections – including Presidential preference primary elections. A waiver request under 42 U.S.C. § 1973ff-1(g) (2) (B) (i) would be appropriate, however, for a primary run-off election. This means that absentee ballots for primary elections for Federal offices must be transmitted at least 45 days before the Presidential primary or other primary election unless there is a legal challenge or constitutional provision under which a waiver request would be appropriate.

B. <u>Authority to Request a Waiver</u>: The Chief State Election Official is authorized to request a waiver from the Presidential designee.[9] Waiver applications need not apply to the entire State. For example, if a Chief State Election Official believes an election jurisdiction within the State will be unable to transmit ballots at least 45 days before the election, but that such failures will not extend statewide, the Chief State Election Official is the official authorized to request the waiver.

C. <u>Timing</u>: A waiver application based on the conditions provided in subsections (g)(2)(B)(i) or (iii) must be *received* by FVAP no later than 90 days before the subject election for Federal office (*including* Presidential Preference Primaries, Special Elections, and Run-off Elections). FVAP staff will acknowledge date of receipt of all submissions.

For waiver applications based upon subsection (g) (2) (B) (ii) (ballot legal contest), the application must be submitted "as soon as practicable."[10] In general, FVAP suggests States consider "as soon as practicable" to be within five business days after it becomes apparent the underlying legal contest will have an impact on the ability of a State to generate ballots in a timely fashion. Should a legal contest be filed, States are encouraged to work with their legal counsel to realistically assess the merits of the contest and whether it is reasonably foreseeable that the legal contest will prevent the timely production of ballots for *UOCAVA* voters before seeking a waiver. However, given that time is of the essence in evaluating these situations and devising adequate comprehensive plans, States are encouraged to informally contact FVAP at the earliest reasonable time by telephone and email to alert FVAP that a waiver request due to a legal contest may be forthcoming, and to discuss available options.

For all waiver applications, if a waiver request is denied before the statutory application deadline, a State may resubmit a revised waiver request so long as it is submitted by the statutory application deadline and addresses the reason(s) for the denial of the initial waiver request.

If the Presidential designee, or FVAP staff, request supplemental information, whether before or after the statutory waiver application deadline, any response should be made as soon as possible, as failure to do so could result in denial of a waiver request.

---

9  42 U.S.C. § 1973ff-1(g)(1).
10  42 U.S.C. § 1973ff-1(g)(3)(B).

3

Unsolicited supplementary information submitted by a State after the application deadline will be considered where practicable.

D. <u>Minimum Submission Requirements</u>: In considering whether to grant a waiver request, as required by statute the Presidential designee must determine, that:

1. One or more of the three waiver qualifying conditions exists;

2. The condition claimed creates an undue hardship for the State; and,

3. The State's comprehensive plan presented in support of its application provides UOCAVA voters sufficient time to receive, mark and return absentee ballots they have requested in time to have those ballots counted in the election for Federal office.[11]

Therefore, a State's waiver application must explain in detail how each of these three requirements exists or is met.

Further, as required by *UOCAVA*,[12] a State's application must include specific recognition that the purpose of the Act's 45-day prior requirement is to allow *UOCAVA* voters enough time to vote and have their votes counted in an election for Federal office.

When submitting a waiver request due to a legal contest pursuant to subsection (g) (2) (B) (ii), a State must clearly identify which specific jurisdiction(s) are affected. For example, a legal contest that delays production of ballots in one Congressional District of a State would only apply as to requests for ballots from *UOCAVA* voters registered in the affected parts of the counties and municipalities in that district. The waiver, if granted, would apply only where the ballot is delayed due to the legal contest. Consequently, it is possible that a State may have to file more than one waiver request if unrelated legal contests arise affecting different jurisdictions or offices up for election.

Although not mandated, using the attached cover sheet template (Appendix B) will facilitate prompt analysis of a State's waiver request by the Presidential designee.

E. <u>Undue Hardship</u>: A State must explain in its application, why one of three enumerated issues under 42 U.S.C. § 1973ff-1(g) (2) (B) creates an *undue* hardship that prohibits it from complying with the 45-day prior requirement. The simple existence of one of the enumerated issues does not automatically imply that the State suffers an undue hardship.[13] For instance, States will have had at least two years since the enactment of the MOVE Act to make legislative and or administrative changes to prevent the need for a subsection (g)(2)(B)(i) primary date waiver, so a State should explain how there is still an *undue* hardship. In addition, logistical difficulties, inconveniences, or added costs arising from compliance with 42 USC 1973ff-1(a)(8)(A) may not, on their own, create an undue hardship. To qualify as an undue hardship, the hardship imposed in complying with the 45-day prior requirement must be so severe that the integrity of the election for

---

11 42 U.S.C. § 1973ff-1(g)(1) & (2).
12 42 U.S.C. § 1973ff-1(g)(1)(A).
13 42 USC 1973ff-1(g)(1)(B).

4

Federal office and rights of all of a State's voters to participate in that election is threatened. Further, a finding by the Presidential designee as to whether an enumerated issue creates an undue hardship depends on:

1. The type of election for which the waiver is requested;
2. How much time has passed since the condition was first created;
3. Other emergent circumstances, such as a ballot legality challenge; and,
4. The time still available to the State or local election official to remedy the issue without a waiver.

Therefore, in the waiver application the State must specifically include in its *undue* hardship explanation such matters as:

1. The efforts made to try to achieve compliance with the 45-day prior requirement for subsections (g)(2)(B)(i) or (iii); and,
2. The impact by complying with the 45-day prior requirement would have on of the election for Federal office and/or the rights of State voters to participate in that election.

F. <u>Comprehensive Plans</u>:[14] State comprehensive plans must address the following issues:

1. The total number of days a *UOCAVA* voter whose ballot is transmitted by mail or electronic means could have to receive, mark and return the ballot in time to have that ballot counted in the election (including the number of days before and after Election Day), including that:

    a. A State must provide both the number of days prior to an election for Federal office and the calendar date it will require absentee ballots to be transmitted both electronically and by postal mail to *UOCAVA* voters; and,

    b. A State must also provide the number of days and the calendar date, prior or subsequent to Election Day, as appropriate, for which the State will allow marked absentee ballots by *UOCAVA* voters to be received and counted by local election jurisdictions.

    c. A State must explain how the plan provides *UOCAVA* voters sufficient time to vote as a substitute for the requirements of 42 U.S.C. 1973ff-1(a) (8) (A), along with the underlying factual information to support that explanation.

2. Details of any alternative transmission method(s) to make ballots available for all *UOCAVA* voters, in addition to postal mail, including facsimile, email, online posting of blank ballots, expedited postal delivery, or other means, including:

---

[14] *See also* Section IV, below.

    a. How *UOCAVA* voters can choose to receive their ballot. *UOCAVA* requires all States, regardless of a waiver, to provide at least one method of electronic transmission of ballots in conjunction with the 45-day prior transmission of ballots; (As a general rule, a State waiver application's comprehensive plan should provide more than one method of electronic or other expedited transmission in order to mitigate the harm from the shorter pre-Election Day ballot transmission requirement requested by the waiver.) and

    b. A full explanation as to how voters may access any online ballot or ballot delivery system(s). Attachments of directions given to voters, voter education materials for voters to gain access to online ballot or ballot delivery system(s) that supplement the explanation may be helpful. Keep in mind that electronic delivery options allow voters to receive ballots sooner, including the day they become available, and thus provide voters greater time to receive their official ballot, review it, study the choices and make them, mark the ballot, and return it in time to be counted.

3. Any additional efforts made by the State, whether put in place in advance of or subsequent to any changes in the law, that improve the likelihood a *UOCAVA* voter would be able to receive, mark and return the ballot and have it counted, such as, for example, efforts to contact *UOCAVA* voters by other means to alert them of the option for electronic transmission and solicit electronic transmission contact information.

4. How successful *UOCAVA* voters were in receiving, marking, and returning their ballots in time to be counted under any previously approved waiver request comprehensive plans, and how effective any provisions presented in the comprehensive plan were if also used in previous elections.

5. How the State will ensure compliance with the State's comprehensive plan by local elections officials. Further, the comprehensive plan must detail how the State will monitor and enforce local compliance, and how it will inform FVAP and the DOJ voting section of any problems in implementing the comprehensive plan as proposed. This includes, but is not limited to, any failures of local election officials to transmit absentee ballots in accordance with the time frame specified by the State's comprehensive plan.

G. <u>Form of Ballot</u>: The absentee ballot provided *UOCAVA* voters under the comprehensive plan must be the same as or equivalent to the ballot provided to all voters at a polling precinct on Election Day. This means the absentee ballots provided to *UOCAVA* voters must contain complete ballot information, including the names and party affiliation, if any, of all candidates in all elections for Federal office that appear on the ballot, along with instructions sufficient to ensure that a *UOCAVA* voter can successfully mark and submit the ballot and have that ballot counted in the election Under conditions necessitating a waiver application for a Federal primary or general election, the Presidential designee will consider a comprehensive plan that relies upon sending a

6

    Federal Write-In Absentee Ballot[15] (or the State equivalent) and an accompanying list of the candidates, so long as the instructions are sufficient to ensure that a *UOCAVA* voter can successfully mark and submit the ballot and have that ballot counted in the election. However, for the Federal general election, sending a blank write-in ballot accompanied merely by a list of the primary election candidates is an inadequate substitute for transmitting an official or a copy of a Federal election ballot.

H. <u>Method of Submission</u>: States may submit waiver applications by postal mail, but all applications should also be submitted by email to waiver@fvap.gov. Email transmission provides an immediate, confirmed time of application receipt. Digital signature is sufficient for this application.

## III. DoD Requirements and Process

Under delegated authority from the Secretary of Defense as the Presidential designee for *UOCAVA*, the Under Secretary of Defense for Personnel and Readiness (USD (P&R)) reviews States' waiver applications, consults with the representative of the Attorney General, and decides whether State applications do or do not meet the requirements for a one-time undue hardship waiver under *UOCAVA*.[16]

Approval or denial of a waiver request will be made by letter to the State from the DOD official delegated such authority by the Presidential designee containing an explanation and rationale for the decision predicated on the assertions made by the State in its waiver request. The State's waiver request consists of the original and timely waiver request and any subsequent supplementary information provided, whether contained in the post-application discussions between the Chief State Election Official and FVAP or in writing. In addition to the waiver application, only those communications made with or provided to FVAP officials will be considered as part of the waiver request. FVAP will also deliver electronic copies of those decision letters as soon as possible and will call Chief State Election Officials to relay any decision.

The Presidential designee is required to respond to any timely submitted waiver request no later than 65 days prior to the Federal election for which the waiver is sought for a waiver submitted under subsection (g)(2)(B)(i) or (g)(2)(B)(iii), and within five business days of receipt of a waiver request submitted under subsection (g)(2)(B)(ii).

## IV. Evaluation of a Comprehensive Plan[17]

A State's comprehensive plan presented in support of its waiver request must demonstrate that *UOCAVA* voters will be provided sufficient time to receive, mark and return absentee ballots they have requested in time to be counted in the Federal election. A State's comprehensive plan will be evaluated against several criteria, and the analysis as to whether a State's comprehensive plan provides sufficient time will be examined by considering the totality of circumstances presented in the comprehensive plan.

---

15  42 U.S.C. 1973ff-2.
16  42 U.S.C. § 1973ff-1(g)(2).
17  *See also* Section II.F, above.

7

Among the issues considered by the Presidential designee will be: the total time a voter has to receive, mark and return the ballot and have it counted (both before and after Election Day), and the number and accessibility of alternative methods provided for ballot transmission and return (if applicable). A comprehensive plan that offers a greater number of alternative ballot delivery methods, both for those who are dependent on or choose to receive and return ballots by postal mail and those who wish to and are able to utilize electronic ballot delivery methods, is more likely to be approved, as this will improve the likelihood that greater numbers of *UOCAVA* voters will have sufficient time to receive, mark and return their ballots and have them counted.

Each State's comprehensive plan will be reviewed for any additional efforts presented by the State that improve the likelihood a *UOCAVA* voter will be able to receive, mark and return the ballot and have it counted, for example, express delivery services and direct outreach to *UOCAVA* voters. Keep in mind that absent a waiver, *UOCAVA* specifically requires States to transmit absentee ballots 45 days prior to Election Day, not merely to provide 45 days between the transmission date and the date before the absentee ballots are due back to the election jurisdiction. Further, *UOCAVA* requires election officials transmit ballots to *UOCAVA* voters by the voter's choice of either postal mail or electronic transmission.

Finally, for overseas uniformed services voters, *UOCAVA* requires the Department of Defense to provide free expedited delivery of voted ballots back to local election officials. For the Presidential designee to determine if a comprehensive plan provides voters sufficient time to receive absentee ballots they have requested and submit their marked absentee ballots back to the appropriate State election official in time to have that ballot counted, a baseline will consider the number of days *UOCAVA* voters could have to receive, mark and return ballots, as it compares to the number of days available if a State were in compliance with the 45 day prior requirement. To further elaborate, keep the following in mind:

- A. <u>Total Ballot Transit Days</u>: Given these factors, comprehensive plans should maximize the number of days ballots are transmitted *before* an election rather than simply extend ballot return deadlines after the election. Days prior to Election Day are qualitatively superior to days after Election Day. Almost every election jurisdiction requires *UOCAVA* voters to vote and begin return transmission of their voted ballot no later than Election Day, and many before then. Therefore, a comprehensive plan that proposes a ballot transmission deadline as far before the election as possible will, under these evaluation criteria, will be more favorably considered as providing sufficient time for the voter to receive, mark and return the ballot as a substitute for the 45-day prior requirement.

- B. <u>Electronic Ballot Transmission Methods</u>: While facsimile transmission alone is compliant with *UOCAVA* (42 U.S.C. 1973ff-1(a) (7) and (f)), the latest available data for overseas military personnel indicates only 45% have any access to facsimile machines. However, more than 85% have access to online websites, and a similar percentage have

8

access to email, either through a ".mil" domain or personal account.[18] Therefore, States seeking a waiver should maximize the number of electronic ballot delivery options available to the affected voters to increase the likelihood voters will have access to at least one method of electronic receipt. Such methods include email, online ballot download systems, and online voting systems.

Affirmative attempts to reach out to *UOCAVA* voters who noted an electronic ballot alternative as their preferred method of receipt and/or posting absentee ballots online for *UOCAVA* voters to download could significantly increase the likelihood *UOCAVA* voters will have sufficient time to receive, mark, and return their ballots in time to be counted.

C. Other Ballot Transmission Methods: During the 2010 election a number of jurisdictions used expedited postal services, both in transmitting the ballots to the *UOCAVA* voters, and in some cases providing free expedited return services. FVAP worked closely with the U.S. Postal Service to extend Express Mail delivery service to military postal addresses in Iraq and Afghanistan, which are usually ineligible for Express Mail service. In addition, nongovernmental organizations have partnered with private international express delivery services for ballots to receive expedited return delivery. Such ballot return methods may also increase the likelihood that voters will have sufficient time to receive, mark, and return their absentee ballots in time to be counted.

Ultimately, no amount of alternative ballot delivery methods and post-Election Day ballot return deadline extensions can overcome a ballot transmission deadline that is too close to the Election Day. Given that in almost every circumstance, *UOCAVA* voters must still mark and return their absentee ballot no later than Election Day, a ballot transmission deadline too close to Election Day may substantially reduce, or even eliminate, the possibility that voters can receive their ballots in time to mark and return them by a State's voting deadline. Further, during the 2010 election the Military Postal Service Agency (MPSA) data indicates that overseas uniformed services ballots delivered through their Express Mail service were returned to local election officials, on average, in 5.2 days. For this subset of *UOCAVA* voters, extended post-Election Day return deadlines greater than ten days are of diminished benefit to serve as a substitute for the 45-day prior requirement.

In summary, a State's comprehensive plan must provide sufficient time for *UOCAVA* voters to receive, mark, and return the ballot in time to be counted. The burden is upon the State to demonstrate that a waiver qualifying condition exists, that compliance with the requirements of *UOCAVA* in light of the condition presents an undue hardship to the State, and that the comprehensive plan provides the *UOCAVA* voters sufficient time to receive, mark, and return their ballots in time to be counted. To serve as a substitute for the 45-day prior requirement, the comprehensive plan must provide *UOCAVA* voters sufficient time to successfully vote as compared to the time available by strictly complying with *UOCAVA*'s minimum absentee ballot transmission requirements.

---

18  Department of Defense, Defense Manpower Data Center, Human Resources Strategic Assessment Program, Survey Note, May 7, 2007, available at http://www.fvap.gov/resources/media/ivas06dod.pdf.

9

## V. Reporting and Evaluation

To ensure States comply with any granted waiver agreement, and to evaluate the effectiveness of the comprehensive plan, States must agree to provide FVAP pre- and post-election reports and evaluations which must include the following:

A. Certification: By the date prescribed in the waiver approval letter (usually the calendar day after the deadline specified), the Chief State Election Official must certify that ballots were transmitted to *UOCAVA* voters on the date and manner described in the waiver application, as well as provide:

   1. The numbers of ballots sent to absent uniformed services voters with APO and FPO addresses;

   2. The number of ballots sent to uniformed services voters at a street address within the United States;

   3. The number of ballots sent to overseas civilian voters; and

   4. A breakdown of further details about each of the above categories between ballots faxed, received through any online ballot delivery system(s) and sent by postal mail.

B. A post-election report detailing:

   1. The number of ballots from each of the above groups returned in time to be counted;

   2. The number of ballots from each of these groups returned too late to be counted;

   3. A breakdown of further details about each of the above categories between ballots faxed, ballots returned by voters through any online ballot delivery system(s), and sent by postal mail;

   4. Any feedback, whether positive or negative, received from voters about any elements of the State's comprehensive plan;

   5. Analysis of how implementation of the comprehensive plan on which the waiver was based impacted the return of voted ballots in the affected jurisdictions; and

   6. Analysis that demonstrates the effectiveness of the comprehensive plan, including information showing quantitatively the results of the comprehensive plan, and how the plan provided *UOCAVA* voters sufficient opportunity to

receive, mark, and return their ballots in time to have them counted, sufficient to serve as a substitute for the 45-day prior requirement.

## VI. Assistance

For additional assistance, please contact your State Program Analyst. A current list is on the next page.

Frequently asked questions and answers (Appendix C) are also attached, and will be updated as necessary on the FVAP website at the waiver page.

# Program Analyst State and Service Assignments

## State and Territory Assignments

| Sonia Campos<br>w: 703-588-0521<br>c: 571-447-7652<br>sonia.campos@fvap.gov | Brian Griffiths<br>w: 703-588-8133<br>c: 703-344-8663<br>brian.griffiths@fvap.gov | Robin Burgess<br>w: 703-588-8119<br>c: 703-653-4054<br>robin.burgess@fvap.gov | Scott Stinson<br>w: 703-588-0146<br>c: 703-966-5471<br>scott.stinson@fvap.gov |
|---|---|---|---|
| Southeast | Northeast | West | Midwest |
| Alabama | Connecticut | Alaska | Illinois |
| Arkansas | Delaware | American Samoa | Indiana |
| Florida | DC | Arizona | Iowa |
| Georgia | New Jersey | California | Kansas |
| Kentucky | Maine | Colorado | Michigan |
| Louisiana | Maryland | Guam | Minnesota |
| Mississippi | Massachusetts | Hawaii | Missouri |
| North Carolina | New York | Idaho | Nebraska |
| South Carolina | New Hampshire | Montana | North Dakota |
| Tennessee | Ohio | Nevada | Oklahoma |
| Virginia | Pennsylvania | New Mexico | South Dakota |
| Virgin Islands | Puerto Rico | Oregon | Texas |
|  | Rhode Island | Utah | Wisconsin |
|  | Vermont | Washington |  |
|  | West Virginia | Wyoming |  |

## Service Assignments

| Paul Mendez<br>w: 703-588-8122<br>paul.mendez@fvap.gov | Kathleen McDonnell<br>W: 703-588-8130<br>kathleen.mcdonnell@fvap.gov | John Godley<br>W: 703-588-8108<br>john.godley@fvap.gov |
|---|---|---|
| Air Force | Army | Marine Corps |
| Coast Guard | NGB | Merchant Marine |
| NOAA | Public Health Service | MPSA |
|  | State Department | Navy |

As of October 4, 2011

12

<u>**Appendix B**</u>

<u>**Suggested Template Cover Page for a State Undue Hardship Waiver Request**</u>

1. State Name (     )

2. Chief State Election Official (CSEO):
   First Name:                          Last Name:
   Title:
   Address:
   Address:
   City:                State:      Zip:       +4:
   Email:               Phone:      Fax:

   Signature (digital signature accepted):                                    Date:

3. Preferred State Election Contact:
   First Name:                          Last Name:
   Title:
   Address:
   Address:
   City:                State:      Zip:       +4:
   Email:               Phone:      Fax:

4. Acknowledgement of *UOCAVA* voters' right to vote
   _____ (State) recognizes that the purpose of 42 USC 1973ff-1(a) (8) (A) is to allow absent uniformed services voters and overseas voters sufficient time to vote in an election for Federal office.
   **Type initials:**                  **Date:**

5. Type of hardship claimed (check one):
   ☐ (g)(2)(B)(i)   Undue hardship due to a late primary.
   ☐ (g)(2)(B)(ii)  Undue hardship due to a legal challenge
   ☐ (g)(2)(B)(iii) Undue hardship caused by a State constitutional prohibition.

6. Please indicate the location in package that identifies your plan to resolve the problem:

7. Please indicate the location in the package that contains the section in the comprehensive plan identifying the State's explanation for the necessity of the waiver request.

8. On what date(s) will the State require ballots to be available and sent?

9. Please indicate the location in the package that contains the section in the comprehensive plan identifying how the State plans to provide sufficient time for *UOCAVA* voters, who have timely submitted an absentee ballot request, to receive, mark, and return their ballots in time to have those ballots counted.

1

10. If included, indicate the location in the package that contains the section in the comprehensive plan identifying how the State plans to resolve the underlying issue prior to the next election for Federal office, including steps already taken, to be taken, timelines, and supporting documentation.

11. If requesting a (g)(2)(B)(i) and/or (g)(2)(B)(iii) waiver, explain why there has not been a resolution of this issue(s) between enactment of the MOVE Act and the date of this waiver request.

## Appendix C

## Frequently Asked Questions (FAQs)
## About the MOVE Act's Hardship Waiver Provisions

1. **What requirements can be waived?**
   The MOVE Act requires States[19] to send absentee ballots to those voters covered by the *Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA)* 45 days before an election for Federal office. The MOVE Act's waiver process allows States to request of the *UOCAVA* Presidential designee[20] a waiver for a particular Federal election of the requirement to send out absentee ballots to *UOCAVA* voters who have an application for an absentee ballot already received by the appropriate elections office no later than 45 days prior to Election Day. This is the only State requirement under *UOCAVA* that can be waived.

2. **For what reasons can a State request a waiver?**
   Congress has specified three issues that *may* rise to the level of an undue hardship that could prevent a State from meeting its obligation to *UOCAVA* voters, and based on which a State may request a waiver. These reasons are (1) a primary election date that prohibits a State from complying, (2) a delay in generating ballots due to a legal contest, or (3) a State constitutional provision that prohibits compliance.[21]

3. **When can a State apply for a waiver?**
   For requests arising from a late primary date or a State constitutional issue, a State may apply for a waiver at any time, up to the statutory deadline of 90 days before an election for Federal office.

   States seeking to request a waiver due to a legal contest that delays the printing of absentee ballots must apply "as soon as practicable." It would probably be premature, however, to seek a waiver for a legal contest until closer to the election.

4. **How long will it take to know if a waiver request has been approved or denied?**
   The Presidential designee is required to respond to a waiver request based on a legal contest that has caused a delay in generating absentee ballots[22] within five business days of receipt of that request.[23] Such waiver requests are likely to be premature until a legal contest is likely to impact the generation of ballots closer to the statutory 90 days prior to a Federal election.

   For waiver requests received by the statutory 90 days prior to a Federal election, for a waiver application based on either a late primary date[24] or a State Constitutional

---

[19] UOCAVA defines a State as "a State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, Guam, the Virgin Islands and American Samoa." 42 USC 1973ff-6(6).
[20] The Secretary of Defense has delegated this authority to the Deputy Under Secretary of Defense for Personnel Readiness.
[21] 42 U.S.C 1973ff-1(g)(2)(B)
[22] 42 U.S.C 1973ff-1(g)(2)(B)(ii)
[23] 42 U.S.C 1973ff-1(g)(3)
[24] 42 U.S.C 1973ff-1(g)(2)(B)(i)

issue,[25] the Presidential designee has until 65 days prior to the Federal election to respond. For requests received prior to the statutory deadline, FVAP will seek to facilitate a response to a State's request in a timely manner. As FVAP develops experience with the process, it anticipates shorter response times to States' waiver requests.

5. **May a waiver be amended after submission?**
    Yes. Prior to the statutory deadline for submission, a State may amend a waiver request that has been previously submitted either on its own initiative or in response to a request for additional information from FVAP. Subsequent to the statutory deadline for a submission, a State may amend its waiver request in response to a request for additional information from FVAP. However, a State seeking to amend its waiver request on its own initiative after the statutory deadline should first consult with FVAP. Such an amendment may prevent FVAP from responding to the waiver request by 65 days before an election for Federal office.

6. **If a waiver request is denied, is it possible to reapply?**
    Yes. If the basis for the hardship request is due to a late primary date or a State Constitutional prohibition, a State may reapply subsequent to receiving a denial of its waiver request if the new request is still made before the statutory last date of 90 days prior to a Federal election. A State may also reapply subsequent to a waiver being denied if the basis for the hardship request is due to a delay in generating ballots due to a legal contest. In either case, the reapplication must otherwise meet the statutory requirements of a waiver request, and cure the deficiencies that caused the initial denial.

7. **How long will this waiver last?**
    As stated in the MOVE Act, a waiver is only valid for the specific election for Federal office for which the waiver was requested.[26] A State needs to apply for a new waiver for each subsequent election for Federal office for which it believes it has appropriate grounds under the statutory language. Please note that grounds for a waiver request for one election, and the State's comprehensive plan to cure the hardship that is part of that request, may not necessarily be grounds for a waiver in a subsequent election.

---

[25] 42 U.S.C 1973ff-1(g)(2)(B)(iii)
[26] 42 U.S.C 1973ff-1(g)(4)