UNITED STATES DISTRICT COURT
NORTHEN DISTRICT OF NEW YORK
-----------------------------------------------------------------
PHILIP PIDOT, NANCY HAWKINS and
STEVEN AXELMAN, Individually and as
representatives of eligible Republican Party voters in
Suffolk, Nassau and Queens County within             **16-cv-859 (FJS/CFH)**
within New York State's Third
Congressional District,

                                         Plaintiffs,

-against-

NEW YORK STATE BOARD OF ELECTIONS;
SUFFOLK COUNTY BOARD OF ELECTIONS;
NASSAU COUNTY BOARD OF ELECTIONS;
BOARD OF ELECTIONS IN THE CITY OF NEW
YORK; PETER KOSINSKI and DOUGLAS KELLNER,
in their official capacities as Co-Chairs of the New
York State Board of Elections; ANDREW
J. SPANO and GREGORY P. PETERSON, in
their official capacities as Commissioner of the New
York State Board of Elections; TODD D.
VALENTINE and ROBERT A. BREHM, in their
Official capacities as Executive Directors of the
New York State Board of Elections; and JACK MARTINS.

                                         Defendants.

## MEMORANDUM OF LAW IN OPPOSITION

Dated: Albany, New York
August 5, 2016                      By: */s/*

                                         WILLIAM J. MCCANN, JR (505462)
                                         40 Pearl Street, Suite 5
                                         Albany, NY 12207
                                         (518) 473-5088
                                         William.McCann@elections.ny.gov
                                         *Attorney for State Defendants*

UNITED STATES DISTRICT COURT
NORTHEN DISTRICT OF NEW YORK
-----------------------------------------------------------------
PHILIP PIDOT, NANCY HAWKINS and
STEVEN AXELMAN, Individually and as
representatives of eligible Republican Party voters in
Suffolk, Nassau and Queens County within            **16-cv-859 (FJS/CFH)**
within New York State's Third
Congressional District,

          Plaintiffs,

-against-

NEW YORK STATE BOARD OF ELECTIONS;
SUFFOLK COUNTY BOARD OF ELECTIONS;
NASSAU COUNTY BOARD OF ELECTIONS;
BOARD OF ELECTIONS IN THE CITY OF NEW
YORK; PETER KOSINSKI and DOUGLAS KELLNER,
in their official capacities as Co-Chairs of the New
York State Board of Elections; ANDREW
J. SPANO and GREGORY P. PETERSON, in
their official capacities as Commissioner of the New
York State Board of Elections; TODD D.
VALENTINE and ROBERT A. BREHM, in their
Official capacities as Executive Directors of the
New York State Board of Elections; and JACK MARTINS.

          Defendants.

---

## MEMORANDUM OF LAW IN OPPOSITION

  Defendants  DOUGLAS KELLNER, PETER KOSINSKI, ANDREW J. SPANO and GREGORY P. PETERSON, in their official capacities as Commissioner of the New York State Board of Elections; and ROBERT A. BREHM and TODD D. VALENTINE, in their official capacities as Executive Directors of the New York State Board of Election, submit this memorandum of law in opposition to the plaintiff's application before this court.

2

### Point One

### Plaintiffs' Lack Standing and Court Lack's Subject Matter Jurisdiction Pursuant to *Rooker-Feldman* Doctrine and claim preclusion

It is well "established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgements…" *Hoblock v. Albany County Board of Elections,* 422 F. 3d 77, 84 (2005); *see also Rooker v. Fidelity Trust Co.* 263 U.S. 413 (1923), and *Dist. of Columbia Ct. of Appeals v. Feldman,* 460 U.S. 462 (1983); *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F. 3d 423, 426 (2d Cir. 2014)  In applying the U.S. Supreme Court's review of the *Rooker-Feldman* Doctrine, the Second Circuit noted that there are "four requirements:

(1) the federal-court plaintiff lost in state court;

(2) the plaintiff "complain[s]of injuries caused by a state court judgment";

(3) the plaintiff "invite[s] . . . review and rejection of that judgment"; and

(4) the state judgment was "rendered before the district court proceedings commenced." *Hoblock v. Albany Cty. Bd. of Elections.*, 422 F.3d 77, 85 (2d Cir. 2005) (internal alterations and quotation marks omitted), *citing Exxon Mobil Corp. v. Saudi Basic Indus*., 544 U.S. 280 (2005). All four requirements are met here.

Despite positioning himself as the victor in the State Court action, as to whether a new Primary Election should be ordered, Plaintiff Pidot sought this relief in the State court proceeding and it was denied.  As such, he lost in State Court.  While attempting to couch his harm as being caused by an alleged inaction on the part of the State Defendants to place him on a

3

Primary ballot or order a new Primary Election, both remedies denied by the State Court, his complaint is a complaint of injury caused by the State Court Judgement.

The plaintiff's asserted injury is a failure of the state courts to provide a new primary election. Finally, the state judgment was clearly rendered before the instant Federal action was commenced. As is clearly articulated in the Decision of Hon. Arthur M. Diamond, dated June 24, 2016, the matter of setting a new Primary Election was raised by Counsel for Plaintiff Pidot, and was clearly before that Court. Judge Diamond notes in his Decision that Plaintiff's Counsel

> argued that either *this Court* or a Federal Court, who had scheduled this primary, could fashion alternate remedies in view of the fact that the general election was over four months away. In particular, he [Plaintiff Pidot's counsel] argued that in view of the fact that a federal judge had set this primary date in order for it to comply with the MOVE Act of 2009, he or another judge could postpone this election to a date that would leave ample time to comply with the MOVE Act requirements.

*Pidot v Macedo*, Index No. 3448-2016, (Nassau County Supreme Court, Judge Diamond's Order, dated June 24, 2016 [Plaintiff's Exhibit "3" attached to Complaint] (Emphasis added). The issue of setting a new Primary Election was before the Court as a remedy, and the Court in denying Plaintiff's application to be placed on the June 28, 2016 ballot, did not grant such remedy. On appeal in the state courts, Pidot appealed from the failure of the trial court to schedule a primary election date. The Appellate Division held "[t]he [trial] court also properly, in effect, dismissed Pidot's oral application to reschedule the primary election, as that relief was not requested in his petition, and, in fact, was not sought until the last day of the hearing…" *Pidot v Macedo*, 2016 Slip Op 05622 (Appellate Division, Second Dept.).

While attempting to clothe his injury in terms of Constitutional harm, Plaintiff now asks this Court to sit, essentially, as an appellate court to review and reverse the state court's decision. This is exactly what the *Rooker-Feldman* doctrine seeks to prevent.

### Point Two

### NYSBOE Has No Authority Under Election Law to Order a New Primary Election and Was Not Required To Apply For A Hardship Waiver Pursuant To 52 USC 20302

Plaintiff's claims are based on 42 U.S.C. § 1983. To state a claim under § 1983, Plaintiff must show that Defendants acted "under color of state law" and "deprived [Plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). The Complaint alleges no state statutory infirmity but rather claims actions of the State defendants violated the Equal Protection Clause of the Fourteenth Amendment and the First Amendment as incorporated by the Fourteenth Amendment.

Specifically the Complaint alleges the State Defendants caused plaintiffs injury by refusing to hold a primary election and failing to seek a hardship waiver for a primary election pursuant to 52 USC § 20302.

    A.    <u>NYSBOE has no authority to order a new primary election</u>.

At the outset, State Defendants, contrary to Plaintiff Pidot's assertion, did not refuse to grant the relief of altering the ballot for the June 28th Federal Primary Election. As was conceded

by the Plaintiff Pidot in the state proceedings, and as is reflected in the decision of Judge Diamond, dated June 24, 2016, such an action was an impossibility.

Moreover the State Defendants do not have authority to order a new primary election in the instant proceeding.  The Election Law provides extremely limited authority regarding modification of election dates.  Specifically, Election Law § 3-108 "Disaster; additional day for voting" allows NYSBOE to schedule an additional day of voting for a *General Election*, only where less than 25% of the registered voters in the impacted municipality actually voted  "as the direct consequence of a fire, earthquake, tornado, explosion, power failure, act of sabotage, or other disaster…" Election Law §3-108 (1).  There is no analogous provision for primary elections.

However, Election Law §16–102 only empowers New York's Supreme Court to order a primary election when "there has been such fraud or irregularity as to render impossible a determination as to who rightfully was nominated or elected." Election Law 16-102(3).

B.     NYSBOE Was Not Required To Apply  For A Hardship Waiver

Ballots in elections for federal offices must be transmitted to military and overseas voters at least 45 days before the election.  *See* 52 USC § 20302.  The Director of the Federal Voting Assistance Program ("FVAP") may grant a hardship waiver upon consultation with the Attorney General permitting transmittal closer to the election when, among other reasons, "[t]he State has suffered a delay in generating ballots due to a legal contest."   Petitioners allege NYSBOE violated their rights by not seeking a hardship waiver.

6

As established in the Declaration of William J. McCann, Jr., there was no point when a waiver application was required.  In the same decision that validated Mr. Pidot's designating petition, the court held it would be impossible to conduct the primary on June 28, 2016 and did not place his name on the ballot.  Thus there was no requirement to seek a waiver.

Assuming *arguendo* NYSBOE had sought a waiver on the theory Pidot might be placed on the June 28, 2016 Primary ballot and assuming FVAP would have entertained such a theoretical request, no waiver would have made it possible to conduct the primary election four days from when the court made its determination on June 24, 2016.

With respect to a potential new primary being ordered by the state trial court, NYSBOE took no position.  But NYSBOE did advise the trial court that if a new election date was ordered, the date of the new election should be 50 days out from the order to provide sufficient time to transmit federal military and overseas ballots.  There was no basis for NYSBOE to seek a hardship waiver for a potential new primary election on a date uncertain.  Moreover had the trial court ordered a new primary date, there was sufficient time to comply with the 45 day transmittal requirement of 52 USC § 20302.

There is *no* injury traceable to NYSBOE not having sought a hardship waiver pursuant to 52 USC 20302.

## Point Three

### NYSBOE Did Not Violate the First Amendment Rights of Plaintiffs by Failing to Prepare For a Primary

Plaintiffs allege their first amendment rights were burdened by NYSBOE's "failing to take any steps to prepare for a primary election between Martins and Pidot" and thus "violated Plaintiff's constitutional rights."  Complaint p 62.

7

Mr. Pidot's state court proceeding was reinstated by the Appellate Division on June 17, 2016, just eleven days before the scheduled June 28 primary. Plaintiffs suggest election preparations should have begun at that time. Plaintiff's Memorandum of Law at 13.

In *Hensley v Matthews*, Suffolk County Supreme Court held a ballot change was not possible eleven days before an election. The court explained:

> new electronic voting systems use election software programs which interrelate all aspects of the process so that any change in the ballot adding or, as here proposed, moving a candidate in any race, in any election district, will require that the entire process start anew, including ordering new ballots for the County, erasing and re-programming all of the voting machines' memory cards, re-testing all of the machines, and re-mailing military and absentee ballots. Respondents rely upon several Court decisions, including one only weeks old, holding that petitions for relief under the Election Law properly should be dismissed where, as here, if the Court were to entertain the merits of the petition, it would be impossible "to render meaningful relief in compliance with the Election Law

*Hensley v. Matthews*, 2014 NY Slip Op 32742 - NY: Suffolk County Supreme Court 2014.

NYSBOE took no position in the state litigation as to the validity of the Pidot's designating petition and did nothing to occasion any delay in the adjudication of the matter which lead Supreme Court to "properly conclude[ed], based, inter alia, on the concession of Pidot's counsel, that it would be impossible to grant Pidot the relief he specifically requested in his petition, namely, to include his name on the June 28, 2016, primary ballot (see Matter of Hunter v Orange County Bd. of Elections, 11 NY3d 813, 815)." *Pidot v Macedo*, 2016 NY Slip Op 562 (Appellate Division 2nd Dept).

8

Plaintiff offers no suggestion as to how preparation begun on speculation eleven days before the election would have made possible the conduct of the primary on effectively four days actual notice from the June 24, 2016 written order of Judge Diamond.  It was impossible.

### Point Four

**Pursuant to the 11th Amendment to the Constitution of the United States, the Court lacks Subject Matter Jurisdiction over the claims against the State Defendants**

The Eleventh Amendment provides that "(t)he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI.

The Eleventh Amendment bars all of Plaintiffs' claims against the State Board. Under the Eleventh Amendment, "'state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity,' or unless Congress has 'abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment.'" *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)). "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state." *Woods*, 466 F.3d at 236 (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)).

Here, the State Board is a state agency for purposes of the Eleventh Amendment. *See McMillan v. N.Y.S. Bd. of Elections*, 449 F. App'x 79, 79 (2d Cir. 2011) (affirming dismissal of

9

State Board based on Eleventh Amendment). The Complaint's claims against the State Board must be dismissed because "[i]t is well-established that New York has not consented to § 1983 suits in federal court, and that § 1983 was not intended to override a state's sovereign immunity." *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010) (citations omitted).

## **CONCLUSION**

Based on the foregoing, the Court should deny Plaintiff's application in its entirety.