# EXHIBIT G



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU:   TRIAL TERM:   PART 7
------------------------------------------X
In the Matter of the Application of          INDEX NO.
DOMINIC MACEDO, ROBERT DONNO, MARK           003124/2016
SAUVIGNE, and MARLENE LOBATO,
Objectors,

                    Petitioners,

          -V-

PHILIP M. PIDOT, Candidate, and
GREGORY PETERSON, PETER KOSINSKI,
DOUGLAS KELLNER and ANDREW SPANO,
Commissioners Constituting the
New York State Board of Elections,

                    Respondents.
------------------------------------------X
------------------------------------------X
In the Matter of the Application of          INDEX NO.
                                             3448/16
PHILIP M. PIDOT,
Candidate,

                    Petitioner,

          -V-

DOMINIC J. MACEDO, ROBERT DONNO,
MARK S. SAUVIGNE and MARLENE LOBATO,
Objectors, and THE NEW YORK STATE
BOARD OF ELECTIONS,

                    Respondents.
------------------------------------------X
                    Nassau Supreme Court
                    100 Supreme Court Drive
                    Mineola, New York 11501
                    June 21, 2016


B E F O R E:        THE HONORABLE ARTHUR M. DIAMOND,
                    Justice of the Supreme Court.


(APPEARANCES ARE LISTED ON THE FOLLOWING PAGE.)

                                             AVS

A P P E A R A N C E S:

                    SINNREICH, KOSAKOFF & MESSINA, LLP
                    Attorneys for DOMINIC MACEDO,
                    ROBERT DONNO, MARK SAUVIGNE and
                    MARLENE LOBATO
                    267 Carleton Avenue
                    Suite 301
                    Central Islip, New York 11722
BY:                 JOHN CIAMPOLI, ESQ.


                    JOHN E. SWEENEY, ESQ.
                    Attorney for PHILIP M. PIDOT
                    79 Columbia Street
                    Albany, New York 12210


ALSO PRESENT:
Brendan Quinn
E. O'Brien Murray     (Present during afternoon session)
Marco Silva, Esq.     (Present during afternoon session)


                         ANDREA V. SLOBODOW, CSR

                         OFFICIAL COURT REPORTER




                    *       *        *




                                                    AVS

Proceedings

1  captioned cases, and let the record reflect that I am

2  serving a copy on my adversary.

3       When Justice Adams made his determination,

4  it was on an oral application.  It was from the bench

5  and he ruled that the proceeding had not been properly

6  commenced.  There were, at the time, other

7  applications to dismiss that I made, one being what is

8  essentially a vanilla-flavored traverse.

9       However, there were other motions to dismiss

10 which the Court should consider before proceeding on

11 the merits of this case, one of which being the

12 petitioners in the Pidot versus Macedo case failed to

13 exhaust their administrative remedies at the Board of

14 Elections.

15      What you'll find interesting -- and you have

16 a little bit of a bulge in the papers there -- is that

17 we have given the website address to the Court in our

18 papers and we have provided a flash drive with the

19 proceedings of the State Board of Elections, at which

20 the Commissioners took a report from a hearing

21 officer, that she conducted a full hearing.  It went

22 late into the night.

23      (There was an off-the-record discussion held

24   between the Court and the Court Officer).

25      MR. CIAMPOLI:  The hearing went late into

AVS

Proceedings

1  the night, and at the conclusion of the hearing,

2  Mr. Pidot's representatives, Mr. Spargo and Mr. Quinn,

3  who were at the hearing, were offered the opportunity

4  to put in rebuttal evidence or evidence to

5  rehabilitate any signatures which the Board, at least

6  the hearing officer, had preliminarily determined to

7  be invalid.  They elected to wait.  The hearing

8  officer kept the hearing record open for them to make

9  such a submission for one full day.  They failed to do

10  so.  Therefore, they did not exhaust their

11  administrative remedies in terms of an attempt to

12  validate the petition.  They should be precluded from

13  doing that for the first time here in a court of law.

14          THE COURT:  And that's what your motion is

15  about?

16          MR. CIAMPOLI:  That's part of what the

17  motion is about.

18          The motion continues:  To assert which is

19  the development of current events, and what I believe

20  is really the best reason for this Court to dismiss

21  this proceeding:  Impossibility.  We are asking this

22  Court for a hearing on that part of the motion.  We

23  are prepared to produce witnesses from the New York

24  City Board of Elections, the Nassau County Board of

25  Elections, and the Suffolk County Board of Elections

AVS

Proceedings

1    Appellate Division has issued an order to this Court

2    to act forthwith on our petition, our papers, in order

3    to validate, and I think that's a key point.  It's a

4    validation proceeding and nothing else in this

5    process.  As it relates to Mr. Ciampoli's position on

6    our failure to exhaust our administrative proceedings,

7    let me explain to the Court exactly what happened and

8    why we are here today.

9           State Board hearing was held on Monday, May

10   the 2nd, and the objectors raised objections to

11   signatures at the hearing and the hearing officers

12   reserved many decisions on those objections.  The

13   objectors never stopped making objections; they

14   continued past the day of the physical hearing, to

15   continue to make objections.  So we never had a clear

16   view of what the final number was that we were going

17   to have to defend against.  In fact, the Commissioner

18   had to issue an amended decision because the objectors

19   kept offering changes and corrections.

20          The reality is, your Honor, I had no duty

21   to -- or burden to get in the middle of the

22   administrative proceeding because my opponent

23   continued to move the goal line away from us and cause

24   confusion and uncertainty as it related to what the

25   position that we would take was.

AVS



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU:   TRIAL TERM:   PART 7
-----------------------------------------X
In the Matter of the Application of          INDEX NO.
DOMINIC MACEDO, ROBERT DONNO, MARK           003124/2016
SAUVIGNE, and MARLENE LOBATO,
Objectors,

                    Petitioners,

        -V-

PHILIP M. PIDOT, Candidate, and
GREGORY PETERSON, PETER KOSINSKI,
DOUGLAS KELLNER and ANDREW SPANO,
Commissioners Constituting the
New York State Board of Elections,

                    Respondents.
-----------------------------------------X
-----------------------------------------X
In the Matter of the Application of          INDEX NO.
                                             3448/16
PHILIP M. PIDOT,
Candidate,

                    Petitioner,

        -V-

DOMINIC J. MACEDO, ROBERT DONNO,
MARK S. SAUVIGNE and MARLENE LOBATO,
Objectors, and THE NEW YORK STATE
BOARD OF ELECTIONS,

                    Respondents.
-----------------------------------------X
                    Nassau Supreme Court
                    100 Supreme Court Drive
                    Mineola, New York 11501
                    June 22, 2016

CONTINUED ELECTION MATTER

B E F O R E:        THE HONORABLE ARTHUR M. DIAMOND,
                    Justice of the Supreme Court.


(APPEARANCES ARE LISTED ON THE FOLLOWING PAGE.)

                                             AVS

A P P E A R A N C E S:
                    SINNREICH, KOSAKOFF & MESSINA, LLP
                    Attorneys for DOMINIC MACEDO,
                    ROBERT DONNO, MARK SAUVIGNE and
                    MARLENE LOBATO
                    267 Carleton Avenue
                    Suite 301
                    Central Islip, New York 11722
BY:                 JOHN CIAMPOLI, ESQ.


                    JOHN E. SWEENEY, ESQ.
                    Attorney for PHILIP M. PIDOT
                    79 Columbia Street
                    Albany, New York 12210


ALSO PRESENT:
E. O'Brien Murray
Marco Silva, Esq.


                         ANDREA V. SLOBODOW, CSR


                         OFFICIAL COURT REPORTER




                    *       *       *




                                                    AVS

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU:   TRIAL TERM:   PART 7
-----------------------------------------X
In the Matter of the Application of                INDEX NO.
DOMINIC MACEDO, ROBERT DONNO, MARK                 003124/2016
SAUVIGNE, and MARLENE LOBATO,
Objectors,

                       Petitioners,

       -V-

PHILIP M. PIDOT, Candidate, and
GREGORY PETERSON, PETER KOSINSKI,
DOUGLAS KELLNER and ANDREW SPANO,
Commissioners Constituting the
New York State Board of Elections,
                  Respondents,

For an Order Pursuant to Sections 16-100,
16-102 and 16-116 of the Election Law,
Declaring Invalid the Respondent's
Designating Petitions for the Republican
Party in 3rd Congressional District for the
June 2016 Primary Election, and Restraining
said Board from placing the name of
Philip M. Pidot on ballot as a candidate
in said Primary Election.
-----------------------------------------X
-----------------------------------------X
In the Matter of the Application of                INDEX NO.
PHILIP M. PIDOT, Candidate,                         003448/2016
               Petitioner,

       -V-

DOMINIC J. MACEDO, ROBERT DONNO, MARK S.
SAUVIGNE and MARLENE LOBATO, Objectors,
and THE NEW YORK STATE BOARD OF ELECTIONS,

                Respondents,

For an Order Pursuant to Election Law
Section 16-102 to validate the Republican
Party designating petition which named
the Petitioner Philip M. Pidot as a
candidate of such party for Office of
Representative in Congress, 3rd
Congressional District of New York in the
Primary Election of such party to be held
on June 28, 2016.
-----------------------------------------X



AVS

Nassau Supreme Court
100 Supreme Court Drive
Mineola, New York 11501
June 23, 2016

CONTINUED ELECTION MATTER

B E F O R E:          THE HONORABLE ARTHUR M. DIAMOND,
                     Justice of the Supreme Court.


A P P E A R A N C E S:
                     SINNREICH, KOSAKOFF & MESSINA, LLP
                     Attorneys for DOMINIC MACEDO,
                     ROBERT DONNO, MARK SAUVIGNE and
                     MARLENE LOBATO
                     267 Carleton Avenue
                     Suite 301
                     Central Islip, New York 11722
BY:                  JOHN CIAMPOLI, ESQ.


                     JOHN E. SWEENEY, ESQ.
                     Attorney for PHILIP M. PIDOT
                     79 Columbia Street
                     Albany, New York 12210


ALSO PRESENT:
E. O'Brien Murray

                          ANDREA V. SLOBODOW, RPR, CSR
                          DONNA CLARK, RPR, CSR,
                          OFFICIAL COURT REPORTERS

                                                        AVS

1      you allow the primary date to pass, the issue becomes

2      mootness.

3              THE COURT:  Then it seems to me the

4      impossibility argument potentially would be stronger.

5              MR. CIAMPOLI:  It becomes a forest instead of

6      a tree.

7              THE COURT:  How so?  How is --

8              MR. CIAMPOLI:  Excuse me?

9              THE COURT:  Yes.

10             MR. CIAMPOLI:  In giving him this adjournment

11     that would invite a host of problems, legal issues and

12     questions that frankly this Court doesn't have the power

13     to address.  This primary date is fixed by a combination

14     of statute and more specifically by an order of District

15     Court Judge Sharp in the Northern District of New York.

16             The Federal Elections Commission rules

17     establish a cut-off date to raise money for a primary.

18     That is fixed to Tuesday's date.  That is hard and fast

19     and can't be changed.  This Court doesn't have the power

20     to change federal law.  The petitioner in the Pidot case

21     had an order from this Court of dismissal on May 11th,

22     chose not to appeal it, chose to go and wait -- I don't

23     recall if it was 7 or 9 days -- and not until May 31st

24     was the matter submitted before this Court on an action

25     -- on a motion to vacate the oral order of the Court.

1     They then waited until -- the Court decided the case on

2     the 7th.  They waited until the 9th to file their notice

3     of appeal.  The appeal wasn't heard until last week.  It

4     was remanded for trial.

5               The delays in this process has been the result

6     of tactical and timed decisions that were made by the

7     petitioner.  They have brought us to the eve of --

8     virtually the eve of the primary.  Now they're asking

9     for time beyond the primary to brief the questions here.

10              THE COURT:  I guess the question is:  How are

11    you prejudice then?

12              MR. CIAMPOLI:  Only if the Court makes a

13    determination that the issue becomes moot as of Tuesday.

14              That's true.  My consultant points out to me

15    that we can't spend money on the primary after the

16    primary.

17              THE COURT:  The primary -- if he asks for a

18    week adjournment, the primary would be passed.

19              MR. CIAMPOLI:  Right.  We can't pay for a

20    responsive brief.

21              THE COURT:  You can't speak, sir.

22              MR. CIAMPOLI:  We can't pay for anything

23    related to the primary.  We can't incur primary expenses

24    after the primary.  That's the simplest way to put it,

25    and that's federal law.  And you can't give me an

1        exception from the federal law.

2                THE COURT:  So your application is a motion to

3        dismiss -- this is what your papers say -- motion to

4        dismiss due to impossibility to grant the petitioner

5        relief requested.

6                MR. CIAMPOLI:  Correct.

7                THE COURT:  The relief requested being what?

8                MR. CIAMPOLI:  To validate his petition and to

9        order his name placed on the primary ballot for the

10       June 28th federal primary.

11               THE COURT:  I don't think the application is

12       to have me order him placed on the ballot.  I think the

13       petition is to validate petitions.  That's what my

14       ruling will be first.  So okay.  So we'll hold off on

15       this for a minute.  I'll have opposition to your

16       application.  I will have opposition to your motion to

17       dismiss.

18               Now the State Board also advised me they want

19       to be heard on this.  I have to figure out some way to

20       accomplish that.  In the interim the State Board faxed

21       in, I guess, what they would have told us on the

22       telephone.  This is what I have from them.  Page 216,

23       line 7, this is Cameron Breen.

24               MR. SWEENEY:  Which one is that?  I'm sorry.

25               THE COURT:  216, line 7, the voter purged,

1    moved out of the county October 16, '14.  So that

2    objection is granted.

3              213 line 7, Annette Gibson is a valid voter.

4    That objection is denied.

5              222, line 6, Kathleen Krombichler,

6    K-R-O-M-B-I-C-H-L-E-R, is an enrolled Republican.  That

7    objection is denied.

8              226, line 1, that voter is not found.  The

9    objection is granted.

10             225, line 3, Alan Lowell is a valid Republican

11   voter.  That objection is denied.

12             232, line 9, Melissa Cagna, it looks like.

13   232, line 9 is a valid Republican voter.  That objection

14   is denied.

15             248, line 10 and 250, line 7 were both not

16   found.  So those objections are granted.

17             Since we submitted those I think we have 2

18   more to call in, but what I'd like to do over the next

19   five-minute recess is to now do the math, see where we

20   are and then we'll take up the motion.

21             MR. CIAMPOLI:  Did we get rulings on 248,

22   line 10?

23             THE COURT:  Yes.  Not found.

24             MR. CIAMPOLI:  Not found.

25             THE COURT:  That objection was granted.  Those

1    were the last two.  248, line 10 and 250, line 7 were

2    both not found.  The objections were granted.

3              Can somebody tell Ron what the results were on

4    the Gallo --

5              MR. SWEENEY:  Plus 9 on Sheet Number 63 and

6    plus 1 on Sheet Number 68.

7              THE COURT:  We'll take five minutes to get

8    organized and then we'll come back.

9              (Whereupon, a brief recess was taken.)

10             THE COURT:  We put a call in to the Board of

11   Elections to get the final four petition questions

12   resolved.  The four voters, four signatures -- I'm sorry

13   -- that have to be resolved because they faxed in that

14   last list, we have a suspicion that they've gone for the

15   day.  I got their voice mail.

16             MR. CIAMPOLI:  Yes.

17             THE COURT:  I called them at 4:37 and got

18   their voice mail.  So now -- but on the final numbers,

19   we have Pidot at 1261 which is 11 over what is needed.

20   We will wait until we hear from, I guess, the Board

21   tomorrow and the reason I say that is because, with

22   regard to the motion, there's a couple of things I just

23   want to put on the record.

24             So, first of all, with regards to your

25   application to adjourn, what I'm starting to do -- what

- Proceedings-                                          384

1        I decided to do is give you until tomorrow and we'll

2        convene at like 11 o'clock.  But I also want to point

3        out to you, Mr. Sweeney, that the relief requested in

4        your petition, in your original papers, the Order to

5        Show Cause, was that the respondent be directed and

6        compelled -- respondent being you -- you put New York

7        County Board of Elections, I think you mean New York

8        State Board of Elections be directed and compelled to

9        certify and place the name of the petitioner candidate

10       on the June 28, 2016 primary election ballot of the

11       Republican party for the office of Congress.  So I was

12       wrong before when I said that your application was to

13       validate the petitions; right?  That's why I don't think

14       it's possible I can give you an adjournment to next

15       week.  You asked that he be placed on the ballot.  I

16       think that would have to be done as soon as possible.

17              Then the second thing you asked for was

18       prohibiting the respondent Board from certifying or

19       causing the printing of the June 28th primary election

20       ballot unless the name of the petitioner is placed on

21       such ballot.  It's another thing I didn't realize was in

22       here, but it is.

23              So, so -- well, as of now, the position is

24       subject to and I don't think it's going to matter what

25       the Board tells us about the 4 signatures.  I think you

- Proceedings-                                  385

1        submitted enough signatures on any of our counts that

2        you submitted enough ballots to validate signatures to

3        be placed on the ballot.  With regard to the relief

4        requested on B and C, as I told you this morning, the

5        State Board's position is that it would be impossible to

6        give you the granted relief.  We will come in tomorrow

7        morning and I'll let you argue on the record without

8        papers what your position is, and then I will have the

9        Board on the phone as well because they specifically

10       said that they want to be heard on this, and they are a

11       party and then I'll issue a ruling.

12             Yes, sir.

13             MR. CIAMPOLI:  I'd like to create a full

14       record and put the Nassau, Suffolk and City Boards of

15       Elections' testimony into evidence that they cannot

16       physically at this point do the election and that it's

17       impossible for them to do the election and comply with

18       the law.

19             THE COURT:  The representatives of the State

20       Board of Elections tomorrow will state that on behalf of

21       the local boards, I think that's satisfactory.

22             MR. CIAMPOLI:  I will tell you, I think you

23       need a little bit more than that because there are

24       several problems that are unique to each of the county

25       Boards of Elections.  Suffolk and Nassau have already

1       deployed their machines.

2               THE COURT:  My point is that I think -- look,

3       you can bring them and we'll conference with the Board

4       and we'll go on the record around 11 o'clock, as I said.

5       I'm just saying that it may be, when we are done with

6       that, I may feel that I can grant the application on the

7       papers.  That's all I'm saying.

8               MR. CIAMPOLI:  Well, let me ask you this.

9       What I might be able to do is have them give the Court

10      affidavits.  The problem is Mr. Sweeney will object

11      because he can't cross-examine the affidavit.

12              THE COURT:  There's no requirement that I have

13      testimony on a motion.

14              MR. CIAMPOLI:  True.

15              THE COURT:  If I can resolve the motion on

16      papers, I resolve it on the papers.

17              MR. CIAMPOLI:  True.  But the only reason I

18      could think of why the folks in Brooklyn did not grant

19      my motion for impossibility last Friday was because I

20      didn't have a record and in the waning minutes before

21      primary day, I don't want to have the same problem

22      again.

23              THE COURT:  Okay.

24              MR. SWEENEY:  If I may, your Honor, my

25      interpretation of what the Appellate Division did, the

1    argument was made, and they passively discouraged it

2    by ignoring it, I think, alternative to the black and

3    white primary or Mr. Pidot does not exist.  That's why

4    we had asked for the extent of time.  I think you had

5    authorities under 1610(2) in case of irregularities to

6    stay the primary days.  It's four and a half months away

7    for the general.  Mr. Ciampoli pointed out --

8            THE COURT:  In the instance of irregularities?

9            MR. SWEENEY:  Correct.  Much more regular than

10   anything than this I would submit to you, your Honor.

11           MR. CIAMPOLI:  Your Honor --

12           MR. SWEENEY:  Can I finish?

13           THE COURT:  Let him finish.

14           MR. SWEENEY:  I think the Board has certain

15   powers under -- what section is it -- Article 3 -- to

16   emergency situations, but beyond that, Judge Sharp has

17   already set a precedent for changing the federal law

18   from the bench.  So whether it's fundraising or picking

19   an alternative date, there is plenty of time for all of

20   that and for us to seek relief in other ways.  This

21   notion that Mr. Ciampoli puts out there that it's black

22   and white, assuming they were going to get that from

23   Judge Adams by conveniently not telling him about --

24           MR. CIAMPOLI:  I'm going to take exception

25   to --

1           MR. SWEENEY:  That he use --

2           THE COURT:  Don't do that in this courtroom,

3     please.

4           MR. SWEENEY:  Which caused this delay in the

5     first instance, your Honor.

6           THE COURT:  I don't know what caused the

7     delay.  The time that you spent, both of you, whoever

8     brought the appeal was an extraordinary amount of time

9     that went by before the appeal was perfected.

10          Let me tell you this, I'm not going to issue

11    any stay of any elections.  That I won't do.  In other

12    words, your remedy would be the same as anybody else who

13    gets an order here.  You would take that, you would take

14    my order to the Appellate Division or the federal court

15    and apply for a stay from them.  That certainly makes

16    sense to me, but I am not going to issue a stay after I

17    do my decision.

18          One second.

19          (Whereupon, a brief pause was taken in the

20    proceedings.)

21          THE COURT:  Mr. Quail is still there.  He sent

22    me his direct line, but if you -- so I guess then,

23    Mr. Sweeney, I will give you the option of coming back

24    tomorrow or we can do it now with the Board of Elections

25    on the phone.

1              MR. SWEENEY:  I would just as soon do it now,

2       your Honor.

3              (Whereupon, proceedings were adjourned to

4       chambers.  Present in Justice Diamond's chambers were

5       Mr. Ciampoli, Mr. Sweeney, Mr. Brian Hiller, Mr. Daniel

6       Greenblatt from the law department, Justice Diamond's

7       law secretary and Justice Diamond.)

8              THE COURT:  Okay, Mr. Quail.  I'm going to ask

9       you and Miss Galvin to give your appearance so that the

10      reporter can take it down.

11             MR. QUAIL:  My name is Brian Quail, counsel

12      for the New York State Board of Elections.

13             MS. GALVIN:  Kimberly Galvin, co-counsel for

14      the Board.

15             THE COURT:  So we're at the stage where the

16      number of signatures submitted are enough to qualify on

17      the ballot.  So we finished all the objections, you

18      know, half a hour ago or so.

19             So Philip Pidot's Order to Show Cause had 3

20      branches of relief.  The first one was to declare that

21      the designating petitions naming the petitioner are

22      sufficient, legal and proper.  So that application is

23      going to be granted.

24             B is that the respondent Board be directed and

25      completed -- I'm sorry -- be directed and compelled to

1      certify and place the name of the petitioner candidate

2      on the June 28th primary ballot.

3             C, prohibiting the respondent Board from

4      certifying or causing the printing of the ballot unless

5      the name of the petitioner, Philip Pidot, is placed on

6      the ballot for the Republican party primary.

7             Just prior to beginning the hearings on the

8      objections as directed by the Appellate Division,

9      Mr. Ciampoli presented a motion to dismiss which had

10     several branches to it, but the one that I'm really left

11     with at this point is found on page 13, motion to

12     dismiss due to impossibility to grant the petitioner

13     relief requested.  So at that point it would be branches

14     B and C of the Order to Show Cause.  Mr. Ciampoli

15     requested that he be allowed to produce representatives

16     from the Nassau County, Suffolk County and Queens --

17             MR. CIAMPOLI:  New York.

18             THE COURT:  -- and New York City Board of

19     Elections to basically establish through testimony and

20     protect his record in case it goes to the Appellate

21     Division that there would be live testimony under oath

22     basically telling me that the relief can no longer be

23     granted due to impossibility.

24             Mr. Sweeney has not put in opposition.  I told

25     him I would permit him to orally argue the opposition.

- Proceedings-                                          391

1        I told Mr. Ciampoli that it might be unnecessary for me

2    to have a live witness because, obviously, motions can

3    be decided on the papers, and you know -- so I'm leaving

4    him with the potential to call witnesses if, in my

5    discretion, it's necessary.

6             As I said, Mr. Sweeney did not put in

7    opposition, but -- so I'll allow him to orally argue the

8    motion.  And he also requested in the courtroom a few

9    minutes ago a one-week adjournment to brief the issue.

10   Mr. Ciampoli opposed the adjournment request primarily

11   -- when I asked him what the prejudice would be, then,

12   obviously, Mr. Sweeney would be bypassing participating

13   in the June 28th election, and he stated that he would

14   be unable to spend money on legal fees related to the

15   primary past the primary date, and I don't know whether

16   or not that's accurate or not because I'm not familiar

17   with that election law.

18             First of all, do you want to be heard on the

19   application for the adjournment?

20             MR. QUAIL:  With respect to the application

21   for the adjournment, your Honor, we defer to the Court's

22   decision on how it wants to manage its own calendar.

23             THE COURT:  So my decision was I was willing

24   to give him till tomorrow at 11 o'clock to get himself

25   organized or whatever he wants to do, and then, when we

dc

- Proceedings-                                          392

1       found out that you were still there, he said he would

2       prefer to just go ahead instead of coming back tomorrow.

3       That's where we are at.

4                So in order of the caption, Mr. Pidot is

5       noticed before the Board so I'll let Mr. Sweeney oppose

6       the application for the motion to dismiss first.

7                MR. SWEENEY:  Yes, your Honor.  Thank you.

8                THE COURT:  Can you hear him?

9                MR. QUAIL:  Yes.

10               MS. GALVIN:  Yes.

11               MR. SWEENEY:  Yes, your Honor.

12               THE COURT:  He has an upstate kind of voice.

13      I figured you would.

14               MR. SWEENEY:  What we have here is an

15      extraordinary circumstance in which the Court is being

16      asked to potentially violate, I believe, the voter

17      rights of citizens to pick a candidate for the United

18      States House of Representatives.  I think there's

19      precedent out there.  This is based solely on judicial

20      manipulations of obscure and historically prejudicial

21      ballot excess requirements of New York.

22               And I think we should look at the Forbes, the

23      New York Republican State Committee, a Court of Appeals

24      case, 2nd Circuit Court of Appeals case from 1996 to

25      kind of establish that as the foundation piece.  I think

- Proceedings-                           393

1        there are alternatives that exist under the current New

2        York State Election law.  One of them is Section

3        1610(2)(3) which I believe provides this Court the

4        authority or some court the authority to, because of the

5        irregularities that have occurred here, to reschedule

6        this election, this primary election, on a different

7        date.

8                Much of the case law that exists out there

9        relates either to general election cases or primary

10       election cases in the traditional course where you have

11       a primary in September with only a few weeks leading up

12       to a general election in November.  In this instance we

13       have four and a half months within which to get this

14       right.  Judge Sharp, when he ordered his decision to

15       hold the primary in June, frankly did so -- that's an

16       arbitrary date and number that he chose.  And it was

17       chosen.  I would suspect that, as it relates to campaign

18       fundraising and as it relates to rescheduling a primary,

19       either this court or we could go to federal court to

20       have those matters resolved and the interests and rights

21       of each of the individuals protected.

22               But to ask this Court to take what is

23       otherwise a legally valid candidate off the ballot and

24       cancel the voters' opportunities to vote and be

25       represented and have an opportunity to be represented is

1        extraordinary.

2                Finally, I think, while it's never been done,

3        I think under Section 3108 of the State Election Law the

4        state board itself in an emergency situation -- I don't

5        quite know if this qualifies, but I would suggest that,

6        because we have never been here before, we might be well

7        within our rights to qualify this as an emergency.  The

8        state board itself, I think, could take the same

9        position that in a subsequent date and time a primary

10       election could be held, say, for example, in September

11       when they always were held in the past, or in August or

12       whatever number -- or whatever the date the board could,

13       but to deny Mr. Pidot the opportunity to run in a

14       primary and to deny the voters the choice and the right

15       to have a choice and vote here, I think, is

16       extraordinary and I would caution against it and ask

17       that we not do that.

18                THE COURT:  Mr. Ciampoli, you want to be

19       heard?

20                MR. CIAMPOLI:  Yes.

21                Let's start with the argument that this Court

22       can somehow alter the date of the federal election that

23       was ordered.

24                THE COURT:  Can you hear him up there?

25                MR. QUAIL:  Yes.

1                MS. GALVIN:  Yes.

2                THE COURT:  Okay.  Good.

3                MR. CIAMPOLI:  That was ordered by a federal

4       judge.  This Court does not possess the power to alter

5       Judge Sharp's order, which I have previously handed up

6       to the court, which dictates the election calendar for

7       this election.

8                As to the argument that Article 3 would

9       empower the Court or the Board of Elections, itself, the

10      State Board of Elections to order an additional day of

11      voting, I have two replies to that.  Number 1, I will

12      start by just reading the title of the section that

13      Mr. Sweeney is relying on, Disaster, additional day for

14      voting.  It then goes on to describe the disasters as

15      fire, earthquake, tornado, explosion, power failure, act

16      of sabotage, enemy attach or other disaster.

17               If I concede, arguendo, that there's a

18      disaster, I would first assert this is of Mr. Pidot's

19      making.  It is his delay during the course of this

20      litigation that resulted in us being here today and not

21      having this case resolved much earlier as the election

22      calendar set by Judge Sharp anticipated.

23               Number 2, I don't think that this set of

24      circumstances fails within that power.

25               Under 1610(2) of the Election Law, this Court

1       is entitled to order a new primary election -- and let

2       me just locate -- sub 3 of 1610(2), the Court may direct

3       the reassembling of any convention or the holding of a

4       new primary election or caucus where it finds there has

5       been such fraud or irregularity as to render impossible

6       a determination as to who rightfully was nominated or

7       elected.

8               Number 1, that power is a limited power as was

9       held in Delgato versus Sutherland by the New York State

10      Court of Appeals and as was held by our 2nd Department

11      in Mondello versus Nassau County Board of Elections

12      relying on the matter of Corrigan which was a 1930s or

13      '40s Court of Appeals case.  The case law says that the

14      Election Law is a limited grant of authority to the

15      Court.  Clearly, under the language of 1610(2) the Court

16      has the authority to grant a new primary where one has

17      already been held, not to move the date of a primary,

18      not to order a different primary than has been

19      established by law, and there must be a finding that

20      there was an irregularity or fraud that prevents the

21      Court from determining who rightfully won.

22              There are a host of cases that have taken up

23      such questions.  Those cases involve mathematical and

24      statistical computations of how many irregularities you

25      must have to prove before you are entitled to a new

1        primary.  All of them hinge on one key fact that is

2        totally absent from this case, and that key fact is that

3        there was a primary that was held.

4                Here I believe the Court would be proper to --

5        it would be proper for the Court to hold Mr. Sweeney and

6        Mr. Pidot to the four corners of their petition and

7        their Order to Show Cause.  They wanted Mr. Pidot on the

8        ballot for the June 28th primary.  That, at this point

9        in time, we submit and we request that we be able to

10       make a full record on it, is impossible.  It was

11       impossible last week.  I tend to agree with Mr. Sweeney

12       on the one point that the Appellate Division ignored

13       what I believed was the elephant in the room and that it

14       was impossible then, it's impossible today.

15               We've pointed out previously to the Court that

16       under, I believe it's Section 4118 of the Election Law,

17       the Boards of Election, the New York City, Nassau

18       County, Suffolk County boards must all publish notice of

19       a primary.  I'm prepared to offer into evidence, your

20       Honor, the paper of record in the City of Glen Cove

21       because where a city falls within the political

22       subdivision, two notices are required, one in the paper

23       of general circulation in the county and one in the

24       paper of general circulation within the city or each

25       city within the subdivision.

1              The Glen Cove newspaper publishes on

2       Wednesdays.  So it's now physically impossible for the

3       board to satisfy the Election Law requirement that it

4       publish notice.  I have said this before and I mean it

5       from the bottom of my heart.  What Mr. Pidot wants this

6       court to do is order a primary to be held and he's

7       hoping that no one shows up because that's how he could

8       steel the results.  This is part of a plan that you have

9       here.  What we have here is he's asking the Court to do

10      things it can't do, move the date of the primary, order

11      a new primary where there has been no primary held,

12      order a change in a federal district court order which,

13      you don't have the authority to do, and quite frankly,

14      this Court unfortunately or fortunately, as the case may

15      be, is a part of what is known as the State of New York.

16      And the defendant in Judge Sharp's action in which he

17      ordered a special federal primary date so as to protect

18      the soldiers and sailors under The Move Act, the

19      defendant is the State of New York.  So this would be a

20      state action to violate Judge Sharp's order, and I can't

21      imagine this Court would do that.  The other defendants

22      are my friends at the State Board of Elections who are

23      on the phone; okay.  I think they're here and they're

24      going to tell you they can't do it, and they don't want

25      to be placed in violation of a federal court order.

1          Mr. Pidot, on the other hand, doesn't care about that.

2                  We've cited a number of cases.  The Court of

3     Appeals in Hunter versus Orange County Board of

4     Elections ruled that a case that was well outside the --

5     we have Friday, Saturday, Sunday, Monday, four days that

6     we have before the primary.  That it is impossible to

7     grant the relief requested.  I was involved in that

8     case.  I represented the Independence Party in that

9     matter and there was proof and the Appellate Division

10    was prepared to order a new primary election for the

11    Independence Party, and the Boards of Elections and the

12    candidate on the other side said, wait a minute.  It's

13    too late.  You can't do a new primary election and hold

14    a general election in such a short time.

15                 Here you can't do the notices to the voters,

16    you can't comply with the Federal Move Act and you can't

17    comply with the Federal Voting Rights Act.  That's where

18    our counties in this district have their own nuances.

19                 If you were going to hear from the New York

20    City Board of Elections -- I will do this by way of an

21    offer of proof -- you will hear they have to set their

22    ballot, build their ballot on the computer.  Their

23    ballot then must be, under Federal Voting Rights Act

24    terms, translated into Spanish, Korean, Chinese and

25    Bengali.  That is a multi-day process.  Because the

– Proceedings–                                    400

1    ballot has to be set.  The ballot has to be printed.  It
2    then has to go to two interpreters.  Each interpreter
3    interprets the ballot into the respective language.
4    They then check with each other to see that they got it
5    right.  The candidates are then afforded an opportunity
6    to inspect the ballots before they are put out to the
7    voters.  You can't do that in four days, your Honor.
8    You just can't.
9              THE COURT:  Okay.
10             MR. CIAMPOLI:  You're going to hear that each
11   of the Boards has either totally or by tomorrow they
12   will probably all have totally deployed their machines.
13   They would have to reprogram their machines.
14             MR. SWEENEY:  I'm sorry, your Honor.  No one
15   is arguing the impossibility argument.  We are simply
16   talking about what the relief is going to be at the end.
17   We have conceded that fact.  While it's an interesting
18   tutorial that Mr. Ciampoli is giving, as I pointed out
19   at the beginning, the Hunter case is a case that relates
20   to the normal course with a September primary and a
21   November election.  We're not talking about that here.
22   We are talking about four and a half months and whether
23   we need to go to federal court to get the orders that
24   are necessary to protect our interests and rights or
25   whatever.  It's four and a half months.  It's not an

1       impossibility to meet the requirements of the Voter

2       Rights Act.  It's not an impossibility to meet the

3       requirement of the Federal Move Act.  These all can be

4       done in a four-and-a-half-month period.  It's a matter

5       of working that process out.

6                  THE COURT:  Let me hear from Mr. Ciampoli.

7                  MR. CIAMPOLI:  Your Honor, I have one last

8       thing I want to add.  Our sister court in Suffolk County

9       in Helmsly (phonetic) versus Matthews –– I'm not going

10      to read the decision or part of it.  Justice Mary Smith

11      did a very good review of the law in doing what the

12      right thing is to do here, dismissing a case where there

13      was a candidate who was duly nominated, who was seeking

14      to alter the ballot, who may very well have been

15      entitled to alter the ballot, but the only remedy

16      available to the Court in Helmsly v. Matthews relies on

17      Hunter.  You have the sister cases.

18                 THE COURT:  The only remedy to the Court being

19      what?

20                 MR. CIAMPOLI:  Dismissal.

21                 THE COURT:  So I'll hear from Mr. Quail and

22      Miss Galvin if you want to be heard.

23                 MR. GALVIN:  Your Honor, this is Kimberly

24      Galvin.  We just heard Mr. Sweeney say the impossibility

25      argument is not being contested at this point.  We also

1       heard Mr. Ciampoli's argument.  We would agree at this

2       late date it would be impossible to, in fact, add him to

3       the primary that is to take place next Tuesday.  All of

4       the arguments about the machines and the testing and

5       languages do hold true.

6               THE COURT:  Can you represent to me that if

7       the heads of the City, Nassau and Suffolk Boards of

8       Elections were here that they would tell me that?

9               MS. GALVIN:  Yes, your Honor.  I can assert

10      for you that there's been conversations on a bipartisan

11      basis with all three boards in question, and all have

12      agreed that it is too late to change the ballot for next

13      Tuesday.

14              THE COURT:  Okay.  So okay.  Anything else

15      from you?

16              MS. GALVIN:  Just briefly, your Honor.  On the

17      other arguments and the request for relief that are

18      being made, the State Board doesn't necessarily believe

19      that 3108, the extraordinary relief under that section,

20      we don't feel that is necessarily appropriate here and

21      also with relief under 1610(2) certainly that is a legal

22      issue and we would simply caution the Court, to exercise

23      that, there are time frames that would be necessary

24      there such as the date would have to be 50 days out in

25      order to be compliant, but other than that, that's a

dc

1      decision that the Court -- obviously, it's a legal

2      decision that you would need to make.

3                  THE COURT:  Okay.

4                  MR. QUAIL:  The 50-day requirement, your

5      Honor, stems from the Federal Move Act that requires

6      that ballots be sent out at least 45 days before the

7      elections to which it relates.  That's the significance

8      of the 50 days.

9                  THE COURT:  Thank you, everybody.  What I'm

10     going to do is reserve a decision and have a decision in

11     the morning.  So you will have an order which will

12     vesicate the need to order the minutes.  You will have

13     an actual order to do whatever you want to do.  I will

14     e-mail it out so no appearances are necessary.

15                 MR. SWEENEY:  Thank you.

16                 MR. CIAMPOLI:  I ask the Court hold the record

17     open for affidavits from each of the local boards.

18                 THE COURT:  Do you have any objection to that?

19                 MR. SWEENEY:  No objection to that.

20                 THE COURT:  Mr. Quail, Miss Galvin, I want to

21     make sure I have your e-mail addresses.

22                 MR. QUAIL:  My e-mail address is

23     Brian.Quail@electionsNewYork.gov.

24                 MS. GALVIN:  It's Kimberly.Galvin with the

25     same domain.

```
 1                    THE COURT:  Okay.  Thank you very much for

 2          hanging around tonight.  I appreciate it, and I

 3          appreciate your help on this emergency; okay.

 4                    MR. QUAIL:  No problem, Judge.

 5                    MS. GALVIN:  Thank you.

 6                    THE COURT:  Thank you.  So you have a card or

 7          something with your e-mail on it?

 8                    MR. SWEENEY:  Yes.

 9                    Thank you, your Honor.

10                    MR. CIAMPOLI:  Thank you, your Honor.

11                         *  *  *  *  *  *  *  *  *

12                    It is certified that the above and foregoing
                      minutes of 6/21, 6/22 and 6/23 are a true and
13                    accurate record of the proceedings.

14

15

16          _____
                    ANDREA V. SLOBODOW, CSR, RPR
17                    OFFICIAL COURT REPORTER

18

19

20          _____
                    DONNA CLARK, CSR, RPR
21                    OFFICIAL COURT REPORTER

22

23

24

25
```

```
 1                            I N D E X
     WITNESS
 2
     6/21/16
 3   Kevin Michael Donnelly
     Luke Ting
 4   Carolyn Mastropieri

 5   6/22/16
     Lawrence P. Bassett
 6
     6/23/16
 7   Tony Gallo
     Peter Budraitis
 8
                            E X H I B I T S
 9   PETITIONER PIDOT                                    PAGE
     6/21/16
10
     1. Board of Elections Petitions (ev)               26
11   2. General objections to specific objections (ev)  27
     3. Board staff worksheets of objections (ev)       27
12   4. NCBOE certificate of registration, Stephanie K.
        Cummins, two pages, (ID)                        112
13
     6/22/16
14   5. NCBOE certificate registration with seal, Re:
        Stephanie K. Cummins (ev)                       195
15   6. Lawrence Bassett license (deemed) (ev)          243
     7. Copy of Lawrence Bassett license (ev)           246
16   6/23/16
     8. Petition sheet 63 Volume 1 (ev)                 361
17   9-12, Volume 2, Sheets 183, 186, 187, 189 (ID)     369

18   RESPONDENT MACEDO
     6/21/16
19   A. 3rd Congressional District map (ev)             133
     B. Palm Beach, Florida voting records of L.
20      Bassett, two pages                 ID - 178     187(ev)
     C. Suffolk County BOE and voting registration
21      Records, Re: L. Bassett            ID - 178     187(ev)
     D. Licensee detail document           ID - 249     255(ev)
22   E. Florida Department of State Division
        Of Corporations document           ID - 250     256(ev)
23   F. Florida Profit Corp. annual report ID - 250     256(ev)
     G. Copy of check 2189                 ID - 257
24   H. Copy of check 2191                 ID - 257

25
```