**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------

                                 :

PHILIP PIDOT, NANCY HAWKINS and STEVEN  :
AXELMAN, individually and as representatives of  :
eligible Republican Party voters in Suffolk, Nassau and  :
Queens Counties within New York State's Third  :
Congressional District,  :

                          :

               Plaintiffs,  :

                          :

     -against-  :     **No. 16-cv-859 (FJS/CFH)**

                          :

NEW YORK STATE BOARD OF ELECTIONS;  :
SUFFOLK COUNTY BOARD OF ELECTIONS;  :
NASSAU COUNTY BOARD OF ELECTIONS; BOARD  :
OF ELECTIONS IN THE CITY OF NEW YORK;  :
PETER KOSINSKI and DOUGLAS KELLNER, in their  :
official capacities as Commissioners and Co-Chairs of the  :
New York State Board of Elections; ANDREW J. SPANO  :
and GREGORY P. PETERSON, in their official capacities  :
as Commissioners of the New York State Board of  :
Elections; TODD D. VALENTINE and ROBERT A.  :
BREHM, in their official capacities as Executive Directors  :
of the New York State Board of Elections; and JACK  :
MARTINS.  :

                          :

              Defendants.  :

--------------------------------------------------------------------

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JACK
MARTINS' CROSS-MOTION PURSUANT TO FEDERAL RULE OF
CIVIL PROCEDURE 12(b)(1) AND/OR 12(b)(6) AND IN OPPOSITION TO
<u>PLAINTIFFS' MOTION FOR INJUNCTIVE AND EQUITABLE RELIEF</u>**

Paul DerOhannesian II (Bar Roll 104792)
Danielle R. Smith (Bar Roll 517775)
DerOhannesian & DerOhannesian
677 Broadway, Suite 707
Albany, New York 12207

*Attorneys for Defendant Jack Martins*

# TABLE OF CONTENTS

STATEMENT OF FACTS .............................................................................................. 1

ARGUMENT ................................................................................................................ 5

   I.   Defendant Martins' Cross-Motion For Judgment On The Pleadings Should Be Granted . 5

      A.  Plaintiffs' Claims are Barred Because the Court Lacks Subject Matter Jurisdiction Under the *Rooker-Feldman* Doctrine ............................................................. 6

          1.   Plaintiffs Lost in State Court ............................................................... 8

          2.   Plaintiffs Complain of Injuries Caused by the State Court Judgment ..................... 9

          3.   Plaintiffs Invite District Court Review and Rejection of the State Court Judgment 10

          4.   The State Court Judgment was Rendered Before the District Court Proceedings Commenced ............................................................................... 12

      B.  Plaintiffs' Claims are Barred by Collateral Estoppel and Res Judicata ........................ 12

      C.  Plaintiffs' Equal Protection Claim Must be Dismissed ................................... 16

   II.   Plaintiffs' Motion For A Injunctive and Equitable Relief Should Be Denied ................. 17

      A.  Plaintiffs Failed to Establish Irreparable Harm ............................................. 19

      B.  Plaintiffs Failed to Establish a "Clear" or "Substantial" Likelihood of Success on the Merits ........................................................................................ 21

      C.  The Public Interest Will Not Be Served ....................................................... 23

CONCLUSION ............................................................................................................ 25

# TABLE OF AUTHORITIES

## Cases

APWU v. Potter, 343 F.3d 619 (2d Cir. 2003) ............................................................. 6

Bey v. Comm'rs of Elections, 2009 U.S. Dist. LEXIS 81172 (S.D.N.Y. Sept. 4, 2009).............. 8

Burdick v. Takushi, 504 U.S. 428 (1992) ......................................................... 12, 21

Burgos v. Hopkins, 14 F.3d 787 (2d Cir. 1994) ...................................................... 12

Colon v. Coughlin, 58 F.3d 865 (1995) .............................................................. 13

Costello v. United States, 365 U.S. 265 (1961)...................................................... 19

District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983) ........................... 7, 10

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006)............................................. 23

Ferris v. Cuevas, 118 F.3d 122 (2d Cir. 1997) ................................................... 13, 15

Fischer v. Suffolk County Bd. of Elections, 2009 U.S. Dist. LEXIS 72560 (E.D.N.Y. Aug. 14, 2009).............................................................................................. 12

Forest City Daly Hous., Inc. v. Town of N. Hempstead, 175 F.3d 144 (2d Cir. 1999)............... 18

Gelb v. Board of Elections, 224 F.3d 149 (2d Cir. 2000)............................................ 16

Gjersten v. Board of Election Comm'rs, 791 F.2d 472 (7th Cir. 1986) ........................... 23, 25

Gold v. Feinberg, 101 F.3d 796 (2d Cir. 1996) ..................................................... 16

Hoblock v. Albany County Bd. of Elections, 422 F.3d 77 (2d Cir. 2005) ...................... passim

In re Merrill Lynch & Co. Research Reports Sec. Litig., 273 F. Supp. 2d 351 (S.D.N.Y. 2003).. 6

Johnson v. Smithsonian Inst., 189 F.3d 180, 185 (2d Cir. 1999) .................................... 7

Kan. v. Colo., 514 U.S. 673 (1995) ................................................................ 19

Kapsis v. Independence Party State Comm. of N.Y., 2010 U.S. Dist. LEXIS 121603 (E.D.N.Y. Nov. 1, 2010) ................................................................................... 14

L-TEC Elecs. Corp. v. Cougar Elec. Org., Inc., 198 F.3d 85 (2d Cir. 1999) ...................... 13

Lunney v. United States, 319 F.3d 550 (2d Cir. 2003)............................................... 6

Matter of Hunter v. Orange County Bd. of Elections, 11 N.Y.3d 813 (2008)......................... 12

Matter of Pidot v. Macedo, 2016 N.Y. App. Div. LEXIS 4726 (2d Dep't June 17, 2016) ........... 2

Matter of Pidot v. Macedo, 2016 N.Y. App. Div. LEXIS 5477 (2d Dep't July 21, 2016)............. 4

McKithen v. Brown, 626 F.3d 143 (2d Cir. 2010) ................................................. 7, 8

Moccio v. New York State Office of Court Admin., 95 F.3d 195 (2d Cir. 1996)................... 7, 13

Muhammad v. Jenkins, 2013 U.S. Dist. LEXIS 132913 (S.D.N.Y. Sept. 13, 2013) .................... 19

Powell v. Power, 436 F.2d 84 (2d Cir. 1970) ...................................................... 16

Rodriguez by Rodriguez v. DeBuono, 175 F.3d 227 (2d Cir. 1999)................................... 18

Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) .............................................. 7, 11

Sloan v. Michel, 2016 U.S. Dist. LEXIS 45276 (S.D.N.Y. Apr. 4, 2016) ............................ 14

Snowden v. Hughes, 321 U.S. 1 (1944).......................................................... 16, 17

Soules v. Kauaians for Nukoll, 849 F.2d 1176 (9th Cir. 1988) .................................... 20

Time Warner Cable v. Bloomberg L.P., 118 F.3d 917 (2d Cir. 1997) ................................ 18

Walker v. Feller, 2005 U.S. Dist. LEXIS 1705 (E.D.N.Y. Aug. 16, 2005)........................... 10

Watts v. Swiss Bank Corp., 27 N.Y.2d 270 (1970) ................................................. 13

**Statutes**

52 United States Code § 20302.............................................................................................. 22
New York Election Law § 6-160 .......................................................................................... 2

**Rules**

Federal Rule Civivil Procedure 12....................................................................................... 5
New York Codes, Rules and Regulations § 1200.0............................................................. 9

**Constitutional Provisions**

United States Constitution Article I, § 4 ......................................................................... 12, 21
United States Constitution Article IV, § 1 ......................................................................... 12

### STATEMENT OF FACTS

On April 14, 2016, Plaintiff Philip Pidot, a candidate for the Republican nomination for New York's Third Congressional District, filed his designating petition which included 2,191 voter signatures.[1]  Dkt. No. 1, ¶¶ 1, 23.  Shortly thereafter, on April 25 and 26, several voters ("the Objectors") filed objections to Plaintiff Pidot's designating petition.  Id. at ¶24; Exhibit F,[2] ¶25.  Plaintiff Pidot was notified of the objections.  Exhibit F, ¶25.  Although Plaintiff Pidot's representatives appeared at the hearing for the New York State Board of Elections ("the Board") on May 2, he did not challenge any of the objections to the voter signatures despite being given an additional opportunity to do so by the hearing officer.  Exhibit B, pp. 22-23; Exhibit G, pp. 4-5, 12.  Specifically, Mr. John Ciampoli, counsel for the Objectors, informed the Board during their May 4 Commissioners' Meeting "the hearing officer was kind enough to allow the respondent to recess the hearing to allow the respondent to present a defense.  We never heard from the respondent thereafter."  Id. at 23.  Ms. Anna Svizzero, the hearing officer, also confirmed that Plaintiff Pidot "didn't provide anything at the end of the hearing.  Nor did they when we re met [sic] on Tuesday."  Id.[3]

On May 4, 2016, the Board issued a determination that Plaintiff Pidot lacked the minimum number of valid signatures.  Dkt. No. 1, ¶25; see also Exhibit B, pp. 23, 32 (the Board recommended invalidating the petition and the motion to adopt the report was granted).  With Defendant Martins as the only Republican candidate, there was no need for a Republican

---

[1] A timeline of the relevant events is included for the Court's convenience in the Declaration of Paul DerOhannesian II, Esq., dated August 5, 2016.

[2] All lettered exhibits are attached to the Declaration of Paul DerOhannesian II.

[3] A video recording of the May 4, 2016 Commissioners' Meeting is referenced on the official website maintained by the New York State Board of Elections, http://www.elections.ny.gov/2016Meetings.html, and may be viewed on YouTube,'s website: https://www.youtube.com/watch?v=eUuvg1hV81o&feature=youtu.be.

primary for the Third Congressional District.  <u>See</u> Exhibit F;[4] <u>see also</u> N.Y. Election Law § 6-160(2) ("All persons designated for uncontested offices or positions at a primary election shall be deemed nominated or elected thereto, as the case may be, without balloting.").

On May 6, 2016, Plaintiff Pidot commenced a validating proceeding in New York State's Supreme Court challenging the Board's decision to remove him from the ballot.  Dkt. No. 1, ¶26. On May 11, 2016, the Supreme Court Justice Thomas Adams found that Plaintiff Pidot failed to properly commence the action and dismissed the matter.  <u>Id.</u> at ¶28; <u>see also</u> <u>Matter of Pidot v. Macedo</u>, 2016 N.Y. App. Div. LEXIS 4726, *1-2 (2d Dep't June 17, 2016).   The following week, Plaintiff Pidot chose to file a motion to vacate instead of immediately appealing to the Second Department.  <u>Id.</u> at ¶30.  Justice Adams denied the motion to vacate on June 7, 2016.  <u>Id.</u> Plaintiff Pidot's time-delaying decision to wait one full week to file his motion to vacate was further compounded when he chose to wait until June 9, 2016, to file his notice of appeal. Exhibit F, ¶30.  In other words, Plaintiff Pidot delayed nearly a month from the point when the Supreme Court dismissed the matter until filing his notice of appeal.   Ultimately, the Second Department reversed the lower court's decision and the matter was remanded for further proceedings.  <u>Matter of Pidot</u>, 2016 N.Y. App. Div. LEXIS 4726, *1-2.

Supreme Court Justice Arthur Diamond held a hearing from June 21 to 23, concerning whether Plaintiff Pidot had obtained a sufficient number of signatures.  Dkt. No. 1-2.  The Court also considered the Objectors' motion to dismiss which was based "on several grounds, including that of 'impossibility'; that is, even if it was found that Pidot had sufficient signatures, at this time it would be impossible for the City of New York, County of Nassau and County of

---

[4] The Certification for the June 28, 2016 Federal Primary Election, drafted by the Board on June 2, 2016, did not include a Republican primary for the Third Congressional District. Exhibit F, p. 1.

Suffolk Board of Elections respectively to actually place him on the ballot in time for the June 28, 2016 primary currently scheduled." Id. at 2. The New York "State Board of Elections agreed that it would be impossible to modify the ballots with less than a week before the scheduled primary." Id. at 3. The Boards of Election for Suffolk and Nassau Counties also submitted affidavits documenting the extensive time and cost involved in redrafting the ballot to include Plaintiff's Pidot's candidacy. Dkt. Nos. 22-1, 22-2. For example, according to Mr. Louis G. Zavinetti, the Republican Commissioner for the Nassau County Board, "it is necessary to implement procedures to prepare for the election at least four weeks preceding an election." Dkt. No. 22-1, ¶4. He further stated that Plaintiff Pidot's requested relief "will require that all ballots be reprinted, all memory cards be reprogrammed and all machines be retested for every election in every election district. Failure to do so will jeopardize the entire election." Id. at 13. The Suffolk County Democratic and Republic Commissioners (Ms. Anita Katz and Mr. Nick LaLota, respectively) similarly stated "[g]enerally, between 11 days and four weeks are necessary to implement procedures to prepare for an election," procedures they described "extensive and time consuming." Dkt. No. 22-2, ¶¶4-5. Mr. Zavinetti, Ms. Katz and Mr. LaLota all opposed Plaintiff Pidot's requested relief. Dkt. No. 22-1, ¶3; Dkt. No. 22-2, ¶¶2-3.

During the hearing, "counsel for Pidot, did not contest the Objector's position that with the primary election scheduled for June 28, 2016, five (5) days away, it would be physically impossible to have Mr. Pidot's name placed on either the paper mailing ballots (absentee and military) as well as on the physical machines of the three counties." Dkt. No. 1-2, p. 2. In light of this "impossibility," Plaintiff Pidot "for the first time, made an oral application to reschedule the primary election." Dkt. No. 22-9, p. 2.

During the hearing, Justice Diamond noted the "extraordinary amount of time" between when Justice Adams' dismissed the matter and when Plaintiff Pidot filed an appeal.  Exhibit G, p. 388.  On June 24, 2016, Justice Diamond ruled that although Plaintiff Pidot had obtained the minimum number of signatures, he denied Plaintiff Pidot's request to place his name on the ballot as "impossible."  Dkt. No. 1-2, p. 3.  "The court also, in effect, dismissed Pidot's oral application to reschedule the primary election."  Dkt. No. 22-9, p. 2; see also Matter of Pidot v. Macedo, 2016 N.Y. App. Div. LEXIS 5477 (2d Dep't July 21, 2016).  In a decision dated July 21, 2016, the Second Department affirmed Justice Diamond's decision.  Dkt. No. 22-9.  Plaintiff Pidot did not seek leave to appeal to the New York Court of Appeals.

On June 27, 2016, Plaintiff Pidot and Plaintiff Nancy Hawkins filed a *pro se* complaint in the United States District Court for the Eastern District of New York.  Dkt. No. 1, ¶40; Dkt. No. 22-4.  Shortly thereafter, attorneys Jerry H. Goldfeder, Esq., and David V. Simunovich, Esq., of Stroock & Stroock & Lavan, appeared on Plaintiffs' behalf.  Mr. Goldfeder and the Strook Law Firm also represented Plaintiff Pidot in his appeal of the Justice Diamond's decision.  Dkt. No. 22-7.  On July 5, 2016, Plaintiffs filed a motion to voluntarily dismiss the action which was granted the following day.  Dkt. No. 22-4, p. 5.

On July 13, 2016, Plaintiff Pidot, as well as Plaintiffs Hawkins and Steven Axelman,[5] commenced the instant action pursuant to 42 U.S.C. § 1983.  Dkt. No. 1.  As with the State Court action, Plaintiffs are seeking, among other things, an Order from this Court "direct[ing] a Republican primary election for New York's Third Congressional District with a ballot that names" Plaintiff Pidot as a candidate.  Dkt. No. 1, ¶3(a).  Plaintiffs are also seeking such relief as

---

[5] Nancy Hawkins and Steven Axelman are suing on their own behalf and also as representatives of eligible Republican Party voters in Suffolk, Nassau and Queens Counties within New York's Third Congressional Districts.  Dkt. No. 1.

is necessary to facilitate holding the primary, including declaring unconstitutional the 45-day requirement found in the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA") and Military and Overseas Voter Empowerment Act ("MOVE Act"), or, alternatively, directing the Board to seek a waiver of the 45-day requirement.[6] Id. at ¶¶52-53.  Plaintiffs also allege that the Board's actions violated their rights under the First and Fourteenth Amendments (right to associate and equal protection, respectively).  Id. at ¶¶ 60-69.

Plaintiffs then filed an Order to Show Cause on July 21, 2016.  Dkt. No. 19.  Although Plaintiffs' motion does not explicitly state as much, they appear to be seeking injunctive and equitable relief.  Plaintiffs' motion to proceed by Order to Show Cause was granted and Defendants were directed to respond by August 5, 2016.  Dkt. No. 31.  Defendant Martins was also directed to file his answer by August 9, 2016.  See Text Order, dated July 25, 2016.

In lieu of an answer, Defendant Martins now moves for judgment on the pleadings and respectfully submits that the Complaint must be dismissed in its entirety with prejudice. Defendant Martin also submits this Memorandum of Law in opposition to Plaintiffs' motion for injunctive and equitable relief.[7]  Dkt. No. 19.

## ARGUMENT

### I.   Defendant Martins' Cross-Motion For Judgment On The Pleadings Should Be Granted

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, a party may file a motion for judgment on the pleadings in lieu of an answer where, as pertinent here, the Court lacks subject matter jurisdiction over the action or the pleadings fail to state a claim upon which relief can be

---

[6] Plaintiffs are also seeking a declaratory judgment that the Board improperly failed to seek a waiver of the 45-day requirement.  Dkt. No. 1, ¶59.

[7] Insofar as Plaintiffs' motion is also seeking declaratory relief (Dkt. No. 20, p. 14), Defendant Martins opposes that request for the reasons stated below.

granted.  Fed. R. Civ. P. 12(a)(4), (b)(1), (b)(6).  For the following reasons, Defendant Martins respectfully submits that this Court lacks subject matter jurisdiction in that Plaintiffs' claims are barred under the so-called *Rooker-Feldman* doctrine.   Alternatively, Defendant Martins respectfully submits that Plaintiffs' Complaint fails to state a claim upon which relief can be granted in that Plaintiffs' claims are barred by res judicata and collateral estoppel.

### A.   Plaintiffs' Claims are Barred Because the Court Lacks Subject Matter Jurisdiction Under the *Rooker-Feldman* Doctrine

"Plaintiffs bear the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.'"  APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003) (quoting Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003)).   Furthermore, "[a]lthough courts are generally limited to examining the sufficiency of the pleadings on a motion to dismiss, 'on a challenge [to] the district court's subject matter jurisdiction, the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings.'"   Flores v. S. Peru Copper Corp., 414 F.3d 233, 255 (2d Cir. 2003) (quoting Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998)); see also In re Merrill Lynch & Co. Research Reports Sec. Litig., 273 F. Supp. 2d 351, 356-357 (S.D.N.Y. 2003) ("In deciding a Rule 12(b)(6) motion, the Court may consider the following materials: (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, . . . , and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.").   Defendant Martins respectfully submits that, for the following reasons, his motion to dismiss must be granted

because this Court lacks subject matter jurisdiction in that Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine.

The principles of law underlying the *Rooker-Feldman* doctrine were first established in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and later reaffirmed in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  This doctrine "holds that, among federal courts, only the Supreme Court has subject matter jurisdiction to review state court judgments.  The *Rooker-Feldman* doctrine also bars federal courts from considering claims that are 'inextricably intertwined' with a prior state court determination."  <u>Johnson v. Smithsonian Inst.</u>, 189 F.3d 180, 185 (2d Cir. 1999) (quoting <u>Feldman</u>, 460 U.S. at 482 n.16) (other citations omitted).  According to the Second Circuit, "the Supreme Court's use of 'inextricably intertwined' means, at a minimum, that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding (as either the plaintiff or defendant in that proceeding), subsequent litigation of the claim will be barred under the *Rooker-Feldman* doctrine if it would be barred under the principles of preclusion."  <u>Moccio v. New York State Office of Court Admin.</u>, 95 F.3d 195, 199-200 (2d Cir. 1996) (citations omitted).

The "*Rooker-Feldman* [doctrine] directs federal courts to abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced."  <u>McKithen v. Brown</u>, 626 F.3d 143, 154 (2d Cir. 2010).  Of these requirements, "[t]he first and fourth . . . may be loosely termed procedural; the second and third may be termed substantive."  <u>Hoblock v. Albany County Bd. of Elections</u>, 422 F.3d 77, 85 (2d Cir. 2005).  For

the following reasons, Defendant Martins respectfully submits that these requirements dictate the finding that Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine.

### 1.    Plaintiffs Lost in State Court

The first question is whether Plaintiffs lost in state court.  McKithen, 626 F.3d at 154. Integral to this analysis is whether "the parties in the state and federal suits [are] the same." Hoblock, 422 F.3d at 89.  For the following reasons, Defendant Martins respectfully submits that there is an identity of Plaintiffs and that they lost in state court.

As the Second Circuit noted, "common identity between the state and federal plaintiffs, will [] often be straightforward, as when the federal plaintiff was a named party in the state lawsuit." Hoblock, 422 F.3d at 89.  This "straightforward" scenario occurred here: Philip Pidot (a plaintiff in the instant federal action) was the sole petitioner in the state action. Dkt. No. 22-5, p. 1.  Accordingly, Plaintiff Pidot is barred from bringing the instant federal action.  See Bey v. Comm'rs of Elections, 2009 U.S. Dist. LEXIS 81172, *4 (S.D.N.Y. Sept. 4, 2009) "the candidates themselves would not be able to bring an action for an injunction in federal court . . . because the *Rooker-Feldman* doctrine would bar their suit" (citation omitted)).

Furthermore, the interests' of the two remaining Plaintiffs were adequately represented in state court such that they should be precluded for bringing this action.  According to the Second Circuit, where "the plaintiff voters are in reality the candidates' pawns, then by definition the plaintiff voters' interests are identical to the candidates' . . . and were adequately represented in the candidates' state-court lawsuit." Hoblock, 422 F.3d at 91.  As discussed below, there can be no other conclusion.

At the outset, the Complaint establishes that all Plaintiffs, including Plaintiffs Hawkins and Axelman, are seeking as relief a Republican primary in which Plaintiff Pidot is a candidate.

See generally, Dkt. No. 1.  This was the same relief Plaintiff Pidot sought and was denied in state court, fact to which Plaintiffs concede.  Dkt. No. 21, ¶27.

Furthermore, in finding that the plaintiffs were not identical, the Second Circuit in *Hoblock* noted "that the voters [were] represented by counsel independent from the candidates' counsel."  Hoblock, 422 F.3d at 92.  However, that is not the case here.  Although Plaintiff Pidot was represented by Mr. Sweeney, Esq., at the Supreme Court level, he was represented by Mr. Goldfeder, Esq., of the Stroock & Stroock & Lavan law firm, at the appellate court level.  Dkt. No. 22-7.  Mr. Goldfeder and his law firm now represent all Plaintiffs in the federal action.  Mr. Goldfeder also represented Plaintiffs Pidot and Hawkins in the short-lived Eastern District action.  Dkt. No. 22-4.  Indeed, Plaintiffs Pidot and Hawkins are long-time political allies having run together for City Council (Exhibit C) and fundraised together for Mr. Anthony Gallo, Jr. when he ran for mayor in 2015 (Exhibit D).

It is also worth noting that Mr. Goldfeder could only take on Plaintiffs Axelman and Hawkins as clients in this action if their interests were aligned with Plaintiff Pidot's interests from the state court action.  Indeed, Plaintiffs are effectively precluded from arguing differing interests because to accept a client with "differing interests" constitutes an ethical violation.  Rule 1.7 of the Rules of Professional Conduct (22 NYCRR § 1200.0).

Finally, the Complaint does not allege any facts establishing that Plaintiffs Hawkins and Axelman had interests contrary to those of Plaintiff Pidot or that their interests were not adequately represented by Plaintiff Pidot at the state court proceeding.

### 2.      Plaintiffs Complain of Injuries Caused by the State Court Judgment

The second requirement is that Plaintiffs must complain of injuries caused by the state court judgment.  As discussed above, the state court denied Plaintiff Pidot's requests for

"order[s] directing the . . . Board . . . to certify and place his name on the June 28, 2016, primary election ballot" and, if necessary, "to reschedule the primary election."  Dkt. No. 22-9, p. 2.  Had the state court granted Plaintiff's Pidot's requests, the instant action – in its entirety – would be moot.  In other words, had the state court directed the Board to place Plaintiff Pidot's name on the June ballot, or, alternatively, ordered a new primary with Plaintiff Pidot as a candidate, Plaintiffs would not have filed the instant federal action.  Indeed, had Plaintiff Pidot's appeal of the state court judgment been successful, it is likely that he would have voluntarily dismissed this federal action.  However, because his state court requests were denied (and later affirmed by the Second Department), Plaintiffs now seek the same relief from this Court that Plaintiff Pidot sought in state court: an Order "direct[ing] a Republican primary election for New York's Third Congressional District with a ballot that names" Plaintiff Pidot as a candidate.  Dkt. No. 1, ¶3(a). It is therefore clear that Plaintiffs complain of injuries caused by the state court judgment.

Nor can Plaintiffs avoid the *Rooker-Feldman* doctrine by alleging constitutional violations within the state court proceeding.  Walker v. Feller, 2005 U.S. Dist. LEXIS 17055, *13 (E.D.N.Y. Aug. 16, 2005) ("District courts do not have jurisdiction over challenges to state court decisions arising out of judicial proceedings 'even if those challenges allege that the state court's action was unconstitutional.'" (quoting Feldman, 460 U.S. at 486)).

### 3. Plaintiffs Invite District Court Review and Rejection of the State Court Judgment

It is also clear that Plaintiffs are inviting this Court to reject the state court judgment.  As discussed repeatedly, the state court denied Plaintiff Pidot's requests to be placed on the ballot for the scheduled primary or, alternatively, to place him on the ballot for a rescheduled primary. Plaintiffs acknowledge that they are seeking "the same" relief from this Court.  Dkt. No. 21, ¶27. Because Plaintiffs are again seeking a court ordered Republican primary in which Plaintiff Pidot

is a candidate, the only logical conclusion is that Plaintiffs are simultaneously requesting that this Court reject the state court judgment which denied the same relief.

Although Plaintiffs describe the state court outcome as "strikingly unjust," Dkt. No. 20, p. 11, their request for this Court to reject that "strikingly unjust" outcome is misplaced. Instead, the proper redress was for Plaintiff Pidot to seek leave to appeal to the New York Court of Appeals. This is because, as the Supreme Court in *Rooker* makes clear, an improper state court decision does "not make the judgment void, but merely [leaves] it open to reversal or modification in an appropriate and timely appellate proceeding." Rooker, 263 U.S. at 415. However, instead of seeking leave to appeal to the Court of Appeals, which would have been the proper course of action, Plaintiff Pidot chose to file this federal lawsuit.

It appears Plaintiffs are attempting to bring their Complaint outside *Rooker-Feldman* by arguing that Justice Diamond denied Plaintiff Pidot's requests solely because granting the requests would have violated the 45-day requirement under the UOCAVA and MOVE Act. See generally, Dkt. No. 20. However, a review of Justice Diamond's decision reveals that while he considered the Move Act, he also considered affidavits from the New York City, Nassau County and Suffolk County Boards of Elections advising that "it would be impossible . . . to actually place [Plaintiff Pidot] on the ballot in time for the June 28, 2016 primary currently scheduled." Dkt. No. 1-2, p. 3; see also Dkt. Nos. 22-1, 22-2; Exhibit A. These affidavits, which were attached to Plaintiffs' moving papers, confirm that it would it would be very costly and take weeks to reissue a ballot naming Plaintiff Pidot as a candidate. Thus, Justice Diamond did not deny Plaintiff Pidot's requests solely under federal law. Instead, Justice Diamond issued a decision based on several factors, including precedent from the New York State Court of Appeals. Dkt. No. 1-2, p. 3 (citing Matter of Hunter v. Orange County Bd. of Elections, 11

11

N.Y.3d 813 (2008)).  Justice Diamond was fully within his authority to issue such a decision.

See Burdick v. Takushi, 504 U.S. 428, 433 (1992) ("The Constitution provides that States may

prescribe 'the Times, Places and Manner of holding Elections for Senators and Representatives,'

Art. I, § 4, cl. 1, and the Court therefore has recognized that States retain the power to regulate

their own elections." (citation omitted)).

### 4.     The State Court Judgment was Rendered Before the District Court Proceedings Commenced

The final requirement is also met.  The state court issued its "final order" denying

Plaintiff Pidot's requests to be placed on the ballot and/or for a new primary on June 24, 2016.

Dkt. No. 22-9, p. 2.  Plaintiffs filed their complaint in this action on July 13, 2016.  Dkt. No. 1.

Thus, the State Court proceeding concluded prior to the commencement of this instant action.[8]

Based on the foregoing, Defendant Martins respectfully submits that Plaintiffs' claims

must be barred because the four requirements to invoke the *Rooker-Feldman* have been met.

Nevertheless, in the event this Court disagrees, Defendant Martins submits, as discussed below,

that Plaintiffs claims are also barred by the doctrines of res judicata and collateral estoppel.

### B.     Plaintiffs' Claims are Barred by Collateral Estoppel and Res Judicata

"Under the Constitution's Full Faith and Credit Clause, federal courts must accord state

court judgments the same preclusive effect as other courts within that state."  Burgos v. Hopkins,

14 F.3d 787, 790 (2d Cir. 1994) (citing U.S. Const. Art. IV, § 1) (other citation omitted).  "The

---

[8] The timing of the Second Department's decision (which affirmed the state court judgment after this federal action was filed) is irrelevant as to whether the state court judgment was rendered prior to the commencement of the federal action.  See Fischer v. Suffolk County Bd. of Elections, 2009 U.S. Dist. LEXIS 72560, *10 (E.D.N.Y. Aug. 14, 2009) (barring the complaint under the *Rooker-Feldman* doctrine and noting that "the Appellate Court decision, while rendered after Plaintiff commenced this action, affirm[ed] the decision of the lower court" which was "rendered prior to [the federal] action").

law of preclusion can be divided into two branches: res judicata (claim preclusion) and collateral estoppel (issue preclusion)." Moccio, 95 F.3d at 200. "Under New York law, collateral estoppel will apply only if '(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding.'" Moccio, 95 F.3d at 200 (quoting Colon v. Coughlin, 58 F.3d 865, 869 (1995) (other citations omitted)). As for the doctrine of res judicata, if the federal plaintiffs "were parties, or were in privity with parties, to the state-court litigation" their "claims will be barred by claim preclusion if they could have been raised in state court and they arise from the same transaction or series of transactions as the state-court claims." Hoblock, 422 F.3d at 95 (internal citation and quotations omitted). "The New York Court of Appeals has stated that privity 'includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action.'" Ferris v. Cuevas, 118 F.3d 122, 126 (2d Cir. 1997) (quoting Watts v. Swiss Bank Corp., 27 N.Y.2d 270, 277 (1970)). "Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." L-TEC Elecs. Corp. v. Cougar Elec. Org., Inc., 198 F.3d 85, 88 (2d Cir. 1999). For the following reasons, Defendant Martins respectfully submits that the above requirements are met.

The gravamen of Plaintiff's Complaint is that Plaintiff Pidot was wrongly omitted from the Republican primary ballot and this Court should therefore order that a Republican primary be held in which Plaintiff Pidot is a candidate. See generally, Dkt. No. 1. Plaintiff Pidot sought the same relief in the state court action: to have his name placed on the ballot for the June 28 primary, and if that was impossible, to reschedule the primary. The state court denied Plaintiff

Pidot's requests and that denial was subsequently affirmed upon appeal.  See Dkt. No. 1, ¶39; Dkt. No. 1-3; Dkt. No. 22-9.  Plaintiff Pidot did not seek leave to appeal to New York's Court of Appeals.  Clearly these these issues – whether Plaintiff Pidot should be placed on the ballot for the regularly scheduled Republican primary and/or whether a new Republican primary should be ordered in which he is a candidate – were decided in the prior state court proceeding.

Furthermore, because Plaintiff Pidot was a petitioner in the state court action, he had a full and fair opportunity litigate this issue.  See Kapsis v. Independence Party State Comm. of N.Y., 2010 U.S. Dist. LEXIS 121603, *19 (E.D.N.Y. Nov. 1, 2010) (dismissing the action on collateral estoppel grounds and noting that the plaintiff "had a full and fair opportunity to litigate his claim . . . in state court").  Thus, these claims are barred under collateral estoppel.

Furthermore, any additional arguments that Plaintiff Pidot could have raised (including Frist and Fourteenth Amendment violations, that the Board failed to seek a waiver of the 45-day requirement, and that the 45-day requirement is unconstitutional) are barred under the doctrine of res judicata. See Sloan v. Michel, 2016 U.S. Dist. LEXIS 45276, *13-14 (S.D.N.Y. Apr. 4, 2016) ("Plaintiff unsuccessfully brought actions in New York state court challenging his exclusion from ballots in the 2013, 2014 and 2015 primary elections.  As a result, he cannot reassert these claims, or any other claims that he could have brought, arising out of his exclusion from the ballot."  (citations omitted)).

Nor can Plaintiffs Hawkins and Axelman be permitted to raise additional claims as they were and are in "privity" with Plaintiff Pidot.  "To find privity under New York law between the voters and candidates . . . we must find two things: (1) identity of interest, and (2) sufficient control by the candidates over the voters that we should deem them to be in privity with each other."  Hoblock, 422 F.3d at 96.  The ultimate goal of Plaintiffs Hawkins and Axelman is to

place Plaintiff Pidot on the Republican primary ballot, an interest adequately represented by the candidate himself, Plaintiff Pidot, at the state level.

Furthermore, in finding that privity did not exist, the court in *Hoblock* noted that "the voters in this case have lawyers who are at least formally unconnected to the candidates or their lawyers."   Hoblock, 422 F.3d at 96 (citations omitted).   However, as previously discussed, the same attorneys that represent all Plaintiffs in this federal action also represented Plaintiff Pidot in his state appeal.   It is also worth noting that the same attorneys represented Plaintiffs Pidot and Hawkins in the short-lived Eastern District action.   Dkt. No. 22-4.   The Second Circuit in *Ferris* had "no hesitation in finding" privity under a similar set of circumstances wherein an attorney was party to the state action and later represented the plaintiffs in the federal action.   Ferris, 118 F.3d at 128 ("Juntikka was a party to the prior action in both his individual and representative capacities, and guided the entire initiative campaign from its inception.   He controlled the prior action as a party and counsel, and continues to control the present action as counsel to Appellants.   We therefore have no hesitation in finding that the aspect of 'control' referenced in *Watts* and *Tamily* . . . support a finding of privity between these sets of plaintiffs.").

In addition, it is clear that Plaintiffs Pidot and Hawkins have a long-standing political relationship.   They ran together for City Council (Exhibit C) and fundraised together for Mr. Anthony Gallo, Jr. when he ran for mayor in 2015 (Exhibit D).

Thus Plaintiffs remaining arguments, including that the Board violated his rights when it failed to seek a waiver and that the 45-day requirement is unconstitutional, are all issues that Plaintiff Pidot was free to raise in the state court action and should therefore be barred under res judicata.

Based on the foregoing, Defendant Martins respectfully submits that Plaintiffs' claims, in their entirety, are barred by the *Rooker-Feldman* doctrine, collateral estoppel and/or res judicata. Accordingly, the Complaint should be dismissed with prejudice.

### C.    Plaintiffs' Equal Protection Claim Must be Dismissed

Defendant Martins maintains that the Complaint must be dismissed.  Nevertheless, in the event this Court disagrees, Defendant Martin submits that Plaintiffs' Equal Protection cause of action must be dismissed because there was no intentional or purposeful discrimination.

Establishing a violation of 42 U.S.C. § 1983 based on the Equal Protection Clause in an election proceeding requires "a showing of 'intentional or purposeful discrimination.'" Gelb v. Board of Elections, 224 F.3d 149, 154 (2d Cir. 2000) (quoting Powell v. Power, 436 F.2d 84, 88 (2d Cir. 1970)); see also Gold v. Feinberg, 101 F.3d 796, 802 (2d Cir. 1996) (rejecting Due Process and Equal Protection challenges to irregularities in a primary election and noting "human error in the conduct of elections does not rise to the level of a Fourteenth Amendment constitutional violation").[9]  A denial of a right is not necessarily the denial of equal protection of the law and there is no presumption of discrimination and a showing of "intentional or purposeful" discrimination is required.  Snowden v. Hughes, 321 U.S. 1, 8 (1944).

To the extent the Board misapplied or misunderstood any valid rule or statute, such conduct rises to the level of an Equal Protection violation only if it is "intentional or purposeful discrimination." Snowden, 321 U.S. at 8.  The Board found Plaintiff Pidot to be unqualified by virtue of having insufficient signatures on his petitions, an administrative action he did not

---

[9] The Second Circuit in *Gold* specifically noted that New York State has a "fair and adequate remedy" for irregularities in the primary election process through New York Election Law § 16-102(3).  Gold, 101 F.3d at 802.  Plaintiff Pidot raised this argument before Judge Diamond and in his Appellate Division brief.  Dkt. No. 22-7, pp. 19-23; Exhibit G, pp. 386-87. The application of the statute as described in Plaintiff Pidot's brief is part of the fair and adequate remedy he had in the state courts to gain access to the primary ballot.

challenge at the hearing.    Justice Diamond found, after reviewing the administrative requirements described by the New York City, Suffolk County, and Nassau County Boards, that it was not possible to place Plaintiff Pidot on the Congressional primary ballot nor did he qualify for a new primary election.    This decision was affirmed by the Second Department.    As in *Snowden*, "[t]here is no allegation of any facts tending to show that in refusing to certify [Plaintiff Pidot] as a nominee, the Board was making any intentional or purposeful discrimination between persons or classes."  Id. at 4.

Significantly, Plaintiffs' Complaint fails to allege any purposeful discrimination by the Boards, a fundamental prerequisite to an Equal Protection claim.    Conclusory characterizations of the Boards' actions as "unequal" (Dkt. No. 1, ¶65) or disparate (Dkt. No. 1, ¶68) do not meet the threshold of an Equal Production violation.    Snowden, 321 U.S. at 4.    Just as in *Gold* in which the election difficulties were the result of a late judicial ruling, "there are no substantiated allegations of any wrongful intent on the part of state officials."  Gold, 101 F.3d at 801.    There is no evidence of an intentional state act by either the New York State or local Boards of Elections designed to disenfranchise any voters.    There is no evidence of a harm to Plaintiffs rising to the level of a constitutional violation of the Equal Protection Clause.    Accordingly, Plaintiffs' Equal Protection violation must be dismissed.

## II.    Plaintiffs' Motion For A Injunctive and Equitable Relief Should Be Denied

Shortly after commencing this action, Plaintiffs filed an Order to Show Cause requesting, among other things, that this Court order a Republican primary in which Plaintiff Pidot is a candidate.  Dkt. No. 19.  Plaintiffs are also seeking such other relief as is necessary to facilitate that primary, including finding the 45-day requirement unconstitutional.  Id.  Without explicitly

17

stating as much, Plaintiffs are in effect requesting a preliminary injunction for equitable and injunctive relief which, if granted, has the impact of a permanent injunction.

"When seeking a preliminary injunction that will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, the moving party must show: (1) it will suffer irreparable harm absent the injunction and (2) a likelihood of success on the merits. However, where [as here] the injunction sought will alter rather than maintain the status quo, the movant must show 'clear' or 'substantial' likelihood of success." Rodriguez by Rodriguez v. DeBuono, 175 F.3d 227, 233 (2d Cir. 1999) (internal citations and quotations omitted); see also Forest City Daly Hous., Inc. v. Town of N. Hempstead, 175 F.3d 144, 149-150 (2d Cir. 1999) ("An even more rigorous standard--requiring a 'clear' or 'substantial' showing of likelihood of success--applies where '(i) an injunction will alter, rather than maintain, the status quo, or (ii) an injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits.'" (citation omitted). Furthermore, "[w]henever a request for a preliminary injunction implicates public interests, a court should give some consideration to the balance of such interests in deciding whether a plaintiff's threatened irreparable injury and probability of success on the merits warrants injunctive relief." Time Warner Cable v. Bloomberg L.P., 118 F.3d 917, 929 (2d Cir. 1997) (citations omitted).

Defendant Martins maintains that this action must be dismissed because Plaintiffs' claims are barred by the doctrines of *Rooker-Feldman*, res judicata, and/or collateral estoppel. Nevertheless, in the event this Court finds that dismissal is not warranted, Defendant Martins respectfully submits that, for the following reasons, Plaintiffs' motion for a injunctive and equitable relief must be denied.

### A.    Plaintiffs Failed to Establish Irreparable Harm

At the outset, Plaintiffs' motion is silent as to the irreparable harm requirement.[10] Nevertheless, assuming Plaintiffs are in fact arguing irreparable harm, that claim is belied by their lack of diligence.  For that reason alone, laches warrants denial of this motion.  "The defense of laches 'requires proof of (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'"  Kan. v. Colo., 514 U.S. 673, 687 (1995) (quoting Costello v. United States, 365 U.S. 265, 282 (1961)).

At the outset, Plaintiff Pidot offered no defense of his petitions at the Board's hearing in early May, despite being given an additional opportunity to do so by the hearing officer.  Exhibit B, pp. 22-23 (statement from the hearing officer that Plaintiff Pidot "didn't provide anything at the end of the hearing. Nor did they when were met on Tuesday.").  Notably, had Plaintiff Pidot defended his petitions during the hearing, the Board may not have removed him from the ballot at the Mary 4 Commissioners' Meeting.  Furthermore, when first alerted that the Board found his petitions lacked sufficient signatures, Plaintiff Pidot took no steps to expedite consideration of his state proceedings.

Plaintiff Pidot continued to delay the proceedings by failing to appeal the state court's May 11 decision to dismiss until June 9, 2016 – nearly one month later.[11]  Dkt. No. 1, ¶26;

---

[10] Plaintiffs' motion and supporting declarations fail to even allege that Plaintiffs Hawkins and Axelman would have, if given the opportunity, voted for Plaintiff Pidot in the Republican primary.  At best, the Complaint makes a vague reference that they would have "supported" Plaintiff Pidot.  Dkt. No. 1, ¶43.  However, because the Complaint is not verified it is not admissible and therefore should not be considered by this Court in evaluating Plaintiffs' motion.  See Muhammad v. Jenkins, 2013 U.S. Dist. LEXIS 132913, *33 (S.D.N.Y. Sept. 13, 2013) (noting that, as "sworn statements [the verified complaint and affirmation] are evidence, and meet the requirement that Plaintiff demonstrate with admissible evidence why he is likely to prevail").

[11] Justice Diamond referred to this delay as an "extraordinary amount of time." Exhibit G, p. 388.

Exhibit F, ¶30.  Upon remand, Plaintiff Pidot also waited, as noted by the Second Department, "until the last day of the hearing" to request that the primary be rescheduled.  Dkt. No. 22-9, p. 3.

Nor did Plaintiffs take timely action in the Federal Courts.  Rather Plaintiffs waited until they failed to get the relief they were seeking in state court – a new primary – before commencing a federal action.  They first filed in the Eastern District of New York on June 27, 2016, two days after the Supreme Court issued a final order denying Plaintiff Pidot's attempt to place his name on the primary ballot and his application to reschedule the primary election.  For eight days Plaintiffs Pidot and Hawkins did nothing to develop or expedite their federal claim until voluntarily moving to withdraw their action on July 5, 2016.  Dkt. No. 22-4.  Plaintiffs then waited another six days before filing this action on July 12, 2016.  Federal courts are loathe to grant relief to plaintiffs who wait until after a final order of a state court until seeking federal relief.  Soules v. Kauaians for Nukoll, 849 F.2d 1176, 1180 (9th Cir. 1988) ("the courts have been wary lest the granting of post-election relief encourage sandbagging . . . . 'failure to require pre-election adjudication would 'permit, if not encourage, parties who could raise a claim to lay by and gamble upon receiving a favorable decision of the electorate and then, upon losing, seek to undo the ballot results in a court action'" (citations omitted)).

As to the second laches requirement, Defendant Martins will be unduly prejudiced if this Court orders a special primary.  A special election will force Defendant Martins to expend funds and time campaigning in a primary, and raising funds for a primary, while his Democratic opponent is free to campaign for the general election.  These hardships are the product of Plaintiff Pidot's dilatoriness and tactical decisions as set forth above and should not be rewarded by a Federal Court's equitable powers.

Based on the foregoing, Defendant Martins respectfully submits that Plaintiffs have failed to establish that they will suffer irreparable harm if their motion is denied and that any claims for irreparable harm should be rejected under the defense of laches.

**B.      Plaintiffs Failed to Establish a "Clear" or "Substantial" Likelihood of Success on the Merits**

Even assuming *arguendo* that Defendant Martins failed to establish that this action should be dismissed under the doctrines of *Rooker-Feldman*, collateral estoppel and/or res judicata, he has, at the very least, raised serious questions as to whether this action may proceed. That alone is sufficient to find that Plaintiffs have not demonstrated a "clear" or "substantial" likelihood of success on the merits.    However, as discussed below, several of the claims Plaintiffs raise are not supported by the record, presenting further basis to deny Plaintiffs' motion for injunctive and equitable relief.

The gravamen of the Complaint is that the state court wrongfully omitted Plaintiff Pidot from the June 28 primary ballot and that this Court should order a new primary in which Plaintiff Pidot is named as a candidate.   However, according to the United States' Supreme Court, "[t]he Constitution provides that States may prescribe 'the Times, Places and Manner of holding Elections for Senators and Representatives,' Art. I, § 4, cl. 1, and the Court therefore has recognized that States retain the power to regulate their own elections." Burdick, 504 U.S. at 433 (citation omitted).   Justice Diamond was therefore entirely within his authority to determine that, in light of the affidavits from the New York City, Suffolk County and Nassau County Boards of Elections documenting the time and expense necessary to redraft the ballot, it was "impossible" to place Plaintiff Pidot on the ballot.   Dkt. No. 1-2, p. 2.   The New York "State Board of Elections similarly agreed that it would be impossible to modify the ballots with less than a week before the scheduled primary." Id. at 3; Exhibit G, pp. 401-402.

Furthermore, Plaintiffs' argument that the Board violated their rights concerning the 45-day requirement under federal law is not supported by the record.  Specifically, Plaintiffs submit that the Board "fail[ed] to abide by its affirmative obligation to seek a 'legal contest' exemption as a result of the litigation concerning [Plaintiff] Pidot's candidacy."  Dkt. No. 20, p. 13 (quoting 52 U.S.C. § 20302(g)(2)(B)(ii)).  According to Plaintiffs, "[t]he Board should have sought a waiver no later than June 17, 2016, when the Appellate Division reinstated [Plaintiff] Pidot's validating proceeding and remanded to the Supreme Court for a prompt hearing on the merits."  Id. (emphasis omitted) (citing Compl. ¶ 32; 52 U.S.C. § 20302(g)(3)(B)).

In raising this argument, Plaintiffs ignore the fact that Plaintiff Pidot was removed from the ballot on May 4, 2016, the day the Board of Elections determined that he failed to obtain the minimum number of signatures – a finding that Plaintiff Pidot did not challenge at the earlier hearing despite being afforded additional time to do so.  Exhibit B, p. 23.  With Defendant Martins as the only Republican candidate, there was no need for a Republican primary for the Third Congressional District.  See Exhibit F (as noted above, the Board Certification was drafted on June 2, 2016, and fails to include a Republican primary).  It is axiomatic that the Board was not "obligated" to seek a waiver of the 45-day requirement for a primary that was not scheduled.

Based on the foregoing, as well the prior arguments that this matter should be dismissed, Defendant Martins respectfully submits that Plaintiffs have not established a "clear" or "substantial" likelihood of success on the merits.[12]

---

[12] Defendant Martins makes specific reference to his prior argument concerning privity. While he maintains that the current record establishes that Plaintiff Pidot is in privity with Plaintiffs Hawkins and Axelman, he submits that additional discovery will only further substantiate that contention.

### C.      The Public Interest Will Not Be Served

As with all other requirements for injunctive and equitable relief, Plaintiffs bear the burden of showing that "the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).  Courts should also be wary of ordering a new primary.  See Gjersten v. Board of Election Comm'rs, 791 F.2d 472, 478 (7th Cir. 1986) ("The remedy of a special election has been described by courts as 'drastic if not staggering,' and as an 'extraordinary remedy which the courts should grant only under the most extraordinary of circumstances.'" (citations omitted).

As set forth in the submissions of the New York City, Suffolk County and Nassau County Boards of Elections in the state court proceedings, a new primary would entail substantial cost and time.  According to Mr. Zavinetti, the Republican Commissioner for the Nassau County Board, "it is necessary to implement procedures to prepare for the election at least four weeks preceding an election."  Dkt. No. 22-1, ¶4.  Election preparations go far beyond drafting a "paper ballot" and includes "creating the ballot in the election management system software" and "comprehensive testing" of the equipment.  Id. at ¶¶9, 11.  "The software programming for the election process is very complicated and extensive in order to ensure the integrity of the process.  Controls are built into the system to avoid incorrect tabulations as well as intentional tampering." Id. at ¶12.  Mr. Zavinetti further stated that "[t]he change sought by petitioner will require that all ballots be reprinted, all memory cards be reprogrammed and all machines be retested for every election in every election district.  Failure to do so will jeopardize the entire election."  Id. at 13.

The Suffolk County Democratic and Republic Commissioners noted similar difficulties.  Dkt. No. 22-2.  According to Ms. Katz and Mr. LaLota, "[g]enerally, between 11 days and four

weeks are necessary to implement procedures to prepare for an election." <u>Id.</u> at ¶4.  Ms. Katz and Mr. LaLota described the procedures as "extensive and time consuming." <u>Id.</u> at ¶5.

Finally, Mr. Carter, Corporation Counsel of the City of New York and attorney for the Board of Election, stated that to conduct a new election would require "approximately 530 poll workers" and hundreds of pieces of equipment.  Exhibit A, p. 2.  Mr. Carter also noted that New York City faces additional issues beyond those identified above, such as the time consuming nature involved with the electronic ballots and computer systems. <u>Id.</u> at 3.  For example, "because Queens County is covered by language assistance provisions of the Voting Rights Act, the candidate's names that appear on these ballots must be translated into three languages (Chinese, Korean, and Bengali). Such translations require the input from the Board's bipartisan team of two translators for each language." <u>Id.</u> at 4.  A review of Mr. Carter's submission reveals that a new primary would take weeks of preparation.

Nor does a new primary mean that the State and local Boards can place their other elections on hold.[13]  Indeed, the jurisdictions and Boards forced to hold a new primary must also simultaneously prepare for the September 13, 2016 primary for state and local offices as well as the requirements of the general election for Federal offices on November 8, 2016, including the requirements under UOCAVA and the MOVE Act.  Under the best of circumstances it would be practically impossible to schedule a primary that would allow the Boards to comply with Judge Sharpe's Order.  More problematic, what if the rescheduled primary resulted in an appeal of the results in state court?  While the exact date when the primary winner would be decided is unknown, what is known is that voters for whom Judge Sharpe's order intended to insure would receive their general elections ballots on time will be the losers.

---

[13] The public will also be harmed by the confusion generated by this congressional primary in the midst of the September primary for New York State and local offices.

The timeliness of the plaintiffs in seeking relief, and the disruptive effect a federal action overturning and rescheduling of an election has on the state and local governments is a crucial equitable factor for the court to weigh.  Gjersten, 791 F.2d at 479.  Thus, for all of the reasons discussed above, it is not in the public interest to grant Plaintiffs' relief.  A special primary election at this time could very well throw an orderly election cycle into disarray and inflict harm on the very individuals Plaintiffs purport to be protecting – the voters of the Third Congressional District.[14]

Accordingly, the relief Plaintiffs' seek, a new primary, is not in the public's best interests. Defendant Martins further respectfully submits that Plaintiffs have failed to establish any of the requirements for injunctive and equitable relief and their motion must therefore be denied.

## CONCLUSION

WHEREFORE, Defendant Martins respectfully submits that his cross-motion pursuant to Rules 12(b)(1) and/or 12(b)(6) of the Federal Rules of Civil Procedure be granted and Plaintiffs' Complaint (Dkt. No. 1) be  dismissed in its entirety with prejudice.  Defendant Martins further respectfully submits that Plaintiffs motion for injunctive and equitable relief should be denied.

Dated:  Albany, New York
        August 5, 2016

By:     /s/ Paul DerOhannesian II_____
        Paul DerOhannesian II (Bar Roll 104792)
        Danielle R. Smith (Bar Roll 517775)
        DerOhannesian & DerOhannesian
        677 Broadway, Suite 707
        Albany, New York 12207

        *Attorneys for Defendant Jack Martins*

---

[14] It is also worth noting that granting Plaintiffs' motion will likely require modification of Judge Sharp's scheduling order as well as a detailed and extensive timeline of the various deadlines involved in executing a primary election such as distribution, receipt and counting of absentee ballots and canvasing of machines and certification of results.