UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PHILIP PIDOT, NANCY HAWKINS and STEVEN
AXELMAN, individually and as representatives of
eligible Republican Party voters in Suffolk, Nassau and : Civil Action No. 16-CV-859-FJS-CFH
Queens Counties within New York's Third Congressional
District,

                          Plaintiffs,

   -against-

NEW YORK STATE BOARD OF ELECTIONS;
SUFFOLK COUNTY BOARD OF ELECTIONS;
NASSAU COUNTY BOARD OF ELECTIONS; BOARD
OF ELECTIONS IN THE CITY OF NEW YORK;
PETER KOSINSKI and DOUGLAS KELLNER, in their
official capacities as Commissioners and Co-Chairs of the
New York State Board of Elections; ANDREW J.
SPANO and GREGORY P. PETERSON, in their official
capacities as Commissioners of the New York State
Board of Elections; TODD D. VALENTINE and
ROBERT A. BREHM, in their official capacities as Co-
Executive Directors of the New York State Board of
Elections; and JACK MARTINS,

                          Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**PLAINTIFFS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR REQUEST FOR A NEW ELECTION
<u>AND IN OPPOSITION TO THE CROSS-MOTION TO DISMISS</u>**

                                                        STROOCK & STROOCK & LAVAN LLP
                                                                    180 Maiden Lane
                                                                  New York, New York
                                                                     (212) 806-5400

*On the Brief*:
Jerry H. Goldfeder
David V. Simunovich

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARUGUMENT ........................................................................................................................ 2

POINT I   THIS COURT SHOULD REMEDY PLAINTIFFS'
          DISENFRANCHISEMENT BY ORDERING A NEW
          REPUBLICAN PARTY PRIMARY ELECTION ................................................ 2

POINT II  THE BOARD VIOLATED UOCAVA BY FAILING TO
          SEEK A "LEGAL CONTEST" WAIVER ........................................................... 4

POINT III PLAINTIFFS SEEK A FINAL JUDGMENT THAT,
          INTER ALIA, ORDERS DEFENDANTS TO CONDUCT
          A NEW ELECTION ............................................................................................ 6

POINT IV  ROOKER-FELDMAN DOES NOT APPLY BECAUSE
          THIS COURT IS NOT BEING ASKED TO REVIEW A
          STATE COURT DECISION AND BECAUSE NEITHER
          HAWKINS NOR AXELMAN WERE PARTIES IN THE
          STATE COURT PROCEEDING ......................................................................... 7

POINT V   NEITHER ISSUE PRECLUSION NOR CLAIM
          PRECLUSION APPLY BECAUSE THE
          CONSTITUTIONAL AND STATUTORY CLAIMS AT
          ISSUE HERE WERE NOT BEFORE THE STATE
          COURT, AND COULD NOT HAVE BEEN RAISED
          THERE ............................................................................................................. 11

POINT VI  DEFENDANTS' VARIOUS OTHER DEFENSES
          SHOULD ALSO BE REJECTED ..................................................................... 12

          A.  Pidot Was Not Required to Exhaust Administrative Remedies
              or Seek Leave to Appeal ......................................................................... 12

          B.  The Board's Eleventh Amendment Argument is Unavailing .................. 13

          C.  Defendants' Various Other Defenses are Equally
              Unpersuasive .......................................................................................... 14

CONCLUSION ...................................................................................................................... 15

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

Brown v. Citibank, N.A.,
    304 A.D.2d 513 (2d Dep't 2003) ...................................................................................... 11

Brown v. Damiani,
    154 F. Supp. 2d 317 (D. Conn. 2001) ............................................................................... 8

Busbee v. Smith,
    549 F. Supp. 494 (D.D.C. 1982), aff'd, 459 U.S. 1166 (1983) ......................................... 2

Capital Tel. Co. v. Pattersonville Tel. Co.,
    56 N.Y.2d 11 (1982) ........................................................................................................ 11

Coalition for Education in District One v. Bd. of Elections of the City of New
    York,
    370 F. Supp. 42 (S.D.N.Y. 1974) ...................................................................................... 3

District of Columbia Court of Appeals v. Feldman,
    460 U.S. 462 (1983) ................................................................................................. 10, 11

Exxon Mobil Corp. v. Saudi Basic Industries Corp.,
    544 U.S. 280 (2005) ....................................................................................................... 10

Green v. Mattingly,
    585 F.3d 97 (2d Cir. 2009) ............................................................................................... 8

Griffin v. Burns,
    431 F. Supp. 1361 (D.R.I. 1977) ...................................................................................... 2

Halyalkar v. Bd. of Regents of State of N.Y.,
    72 N.Y.2d 261 (1988) ....................................................................................................... 9

Matter of Hoerger v. Spota,
    109 A.D.3d 564 (2d Dep't 2013) ...................................................................................... 9

Johnson v. De Grandy,
    512 U.S. 997 (1994) ...................................................................................................... 8, 9

Kaufman v. Eli Lilly & Co.,
    65 N.Y.2d 449 (1985) ..................................................................................................... 11

Lance v. Dennis,
    546 U.S. 459 (2006) ....................................................................................................... 10

Leitner v. Westchester Cmty. Coll.,
    779 F.3d 130 (2d Cir. 2015)..................................................................................13

Roach v. Morse,
    440 F.3d 53 (2d Cir. 2006)....................................................................................12

Rooker v. Fidelity Trust Co.,
    263 U.S. 413 (1923)..............................................................................................10

Rossito-Canty v. Cuomo,
    86 F. Supp. 3d 175 (E.D.N.Y. 2015) ...................................................................2, 7

Shanley v. Callanan Indus., Inc.,
    54 N.Y.2d 52 (1981)..............................................................................................11

Skinner v. Switzer,
    562 U.S. 521 (2011)................................................................................................8

United States v. Cunningham,
    No. 08-cv-709, 2009 WL 3350028 (E.D.. Va. Oct. 15, 2009)................................6

United States v. New York,
    No. 10-cv-1214, 2012 U.S. Dist. LEXIS 16126 (N.D.N.Y. Feb. 9, 2012)..............6

Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland,
    535 U.S. 635 (2002)..............................................................................................13

Wesberry v. Sanders,
    376 U.S. 1 (1964)....................................................................................................1

Zinermon v. Burch,
    494 U.S. 113 (1990)..............................................................................................12

**Statutes**

52 U.S.C. § 20302...........................................................................................................4, 13

28 U.S.C. § 1738..................................................................................................................10

N.Y. Election Law §§ 16-102, 16-104.......................................................................5, 9, 10

**PRELIMINARY STATEMENT**

"No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined." Wesberry v. Sanders, 376 U.S. 1, 17 (1964).  Ordering a new election honors that "precious" right and would remedy the constitutional deprivation suffered by 152,879 Republican voters.

None of the Defendants dispute that Plaintiff Philip Pidot was (and remains) qualified to appear on the Republican Party primary election ballot but was, nevertheless, excluded.  As a result, the vote was cancelled and Defendant Jack Martins received the nomination by operation of law—without one vote being cast.  None of the Defendants dispute that the local and state election boards did nothing to prepare for an election between Pidot and Martins, thereby causing the "impossibility" that kept Pidot off the ballot.  None dispute that the right to vote in a federal primary election is protected by the First Amendment and that all Republican Party voters of New York's Third Congressional District were deprived of that right.

The Board of Elections in the City of New York did not respond to the instant Order to Show Cause.  Neither the Nassau County Board of Elections nor the Suffolk County Board of Elections took a position on the merits, but the commissioners of those boards submitted affidavits setting forth their personal views.

Martins and the Defendant New York State Board of Elections (the "Board") raise a number of procedural arguments as to why this Court should not reach the merits, pointing principally to the Rooker-Feldman doctrine, and claim and issue preclusion.  These have no merit, and should be rejected.  The Court, instead, should embrace the First Amendment rights of

the Republican voters of the Third Congressional District and permit them to cast ballots for the nominee of their choice.

**ARGUMENT**

**POINT I**
**THIS COURT SHOULD REMEDY PLAINTIFFS' DISENFRANCHISEMENT BY ORDERING A NEW REPUBLICAN PARTY PRIMARY ELECTION**

Pidot timely submitted the requisite number of signatures to appear on the ballot for the June 28, 2016 Congressional primary. A range of factors—from court-imposed deadlines, state Election Law procedures, bureaucratic inaction, and litigation maneuvers by Martins or his proxies—kept him off the ballot. This confluence of resulted in an extraordinary situation—an eligible candidate not having his name on the ballot—but the legal question before the Court is as simple as it is profound: What is the appropriate remedy for constitutional violation alleged in the Complaint?

There is no directly controlling precedent for this extraordinary case. But there is abundant authority for this Court's power to order a new election to remedy the violation of Plaintiffs' First Amendment right to freedom of association. See, e.g., Rossito-Canty v. Cuomo, 86 F. Supp. 3d 175 (E.D.N.Y. 2015) (setting a deadline for the governor to exercise his discretion to set a special election for Congress where delay in doing so left an entire district without Congressional representation; explaining that where the democratic process breaks down, "only the courts can make … [it] work as it should"); Busbee v. Smith, 549 F. Supp. 494, (D.D.C. 1982), aff'd, 459 U.S. 1166 (1983) (holding that a redistricting plan violated the United States Constitution and the Voting Rights Act, directing the legislature to develop a new plan, and issuing a detailed schedule for party primaries and other aspects of the election process); Griffin v. Burns, 431 F. Supp. 1361, 1365-69 (D.R.I. 1977) (ordering defendants to "take all

necessary steps to hold a new primary" to remedy the "fundamentally unfair" outcome caused by a retroactive disenfranchisement of a portion of the electorate); Coalition for Education in District One v. Bd. of Elections of the City of New York, 370 F. Supp. 42, 57-58 (S.D.N.Y. 1974) (voiding election results and ordering a new vote to remedy intentional racial and ethnic discrimination that affected the election).

In responding to the Order to Show Cause, the Democratic members of the county election boards are generally supportive of holding a new election. Indeed, Commissioner David J. Gugerty of the Nassau County Board of Elections suggests that the primary could be held on September 13, 2016, the already-scheduled state primary voting date; he also touts the Nassau County Board of Election's "experience in conducting elections with preparation time truncated because of litigation." Declaration of Commissioner David J. Gugerty (dated Aug. 4, 2016) ("Gugerty Decl.") ¶¶ 3 & 7; see also Affidavit of Commissioner Anita Katz (dated Aug. 5, 2016) ¶ 5 (advising the Court of Suffolk County's ability to conduct a new primary expeditiously, and that doing so would present a "reasonable compromise to preserve the franchise rights of both civilian voters and military voters alike"); Reply Declaration of Jerry H. Goldfeder in Support of Plaintiffs' Order to Show Cause and in Opposition to the Cross-Motion to Dismiss ("Goldfeder Reply Decl.") ¶¶ 5-7.

The Nassau and Suffolk County Republican Commissioners, by contrast, oppose a new election. Commissioner LaLota argues that allowing voters to exercise the right to vote "necessarily will deprive the brave members of the United States Armed Forces of the ability to participate." Declaration of Commissioner Nick LaLota (dated Aug. 5, 2016) ¶ 2. His view expresses the misguided notion that because the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA") provides that timely-requested absentee ballots must be mailed 45

days before a federal election, a new election cannot be held.  This ignores the statutory mechanisms Congress built into UOCAVA allowing for elections on fewer than 45-days' notice. 52 U.S.C. § 20302(g).

This should not be a partisan issue. It is, quite obviously, better to protect and promote the right to vote not by *cancelling* an election, but by *giving voters the chance to vote*.  Simply put, holding an election with fewer than 45-days' notice—as is authorized by UOCAVA—is a far better outcome than no election at all.

### POINT II
### THE BOARD VIOLATED UOCAVA BY FAILING TO SEEK A "LEGAL CONTEST" WAIVER

The Board does not dispute that it failed to seek a "hardship exemption" from UOCAVA's 45-day notice requirement. State Defendants' Memorandum of Law in Opposition ("Board Opp'n Br.") at 6-7.  The Board instead defends this failure by claiming that "there was no point [in time] when a waiver application was required" because it was not until June 24, 2016 that Justice Diamond of the New York Supreme Court validated Pidot's candidacy and, nevertheless, held that adding Pidot's name to the ballot was "impossible."  Id.; see also Declaration of William J. McCann Jr. (dated Aug. 5, 2016) ¶ 10.  This posture betrays a profound misunderstanding of UOCAVA's affirmative obligations.

The Board is *required* to seek a "legal contest" exemption "as soon as practicable." 52 U.S.C. § 20302(g)(1) (providing that the board "shall request … a waiver" from the 45-day requirement under certain circumstances), § 20302(g)(2)(B)(ii) (setting forth the "legal contest" exemption).  The Federal Voter Assistance Program advises election authorities to start the waiver process as soon as it becomes "reasonably foreseeable" that a legal contest could impact

compliance with UOCAVA's 45-day notice period.  Declaration of David V. Simunovich in Support of Order to Show Cause (dated July 21, 2016) ("Simunovich Decl."), Exh. 8, at 3.

There were several points, all before June 24th, which should have prompted the Board to request a waiver or, at the very least, to start the waiver application process.  Pidot filed his designating petition on April 14, 2016 and the signatures he submitted were presumptively valid.  Complaint ("Compl.") ¶ 23.  Two weeks later, Martins' surrogates (the "Martins Objectors") challenged Pidot's signatures in an administrative proceeding before the Board.  Id. ¶ 24.  On May 4, 2016—just nine days from UOCAVA's 45-day cut-off for the June 28th election—the Board struck 957 signatures from Pidot's designating petition, leaving Pidot 16 signatures shy of the 1,250 required to appear on the ballot.  Id. ¶ 25.  Just two days later, on May 6th, Pidot exercised his right to challenge the Board's determination and commenced a special proceeding in state Supreme Court under N.Y. Election Law § 16-102.  Id. ¶¶ 26.  Ultimately, after overcoming baseless procedural arguments advanced by the Martins Objectors, the merits of Pidot's petition were eventually heard and his candidacy was validated on June 24, 2016.  Id. ¶¶ 27-39.

The notion that the Board was not obligated to seek a UOCAVA waiver until *after* Justice Diamond held that Pidot was a validated candidate is contradicted by the fact that, after Pidot commenced the instant action directly challenging the Board's prior failure to seek a hardship waiver, the Board did, in fact, contact the Department of Justice and the Federal Voting Assistance Program.  Goldfeder Reply Decl., Exh. 3 (attaching documents produced by Board in response to Martins' subpoena).  This is precisely what the Board should have done months ago.  The Board's failure to do so was offered by the Martins Objectors as one basis for their argument that a June 28th election with Pidot as a candidate was "impossible."

The Board's failure to seek a waiver violates UOCAVA.  See United States v. New York, No. 10-cv-1214, 2012 U.S. Dist. LEXIS 16126, at *1, *5 (N.D.N.Y. Feb. 9, 2012) (setting a UOCAVA-compliant election schedule because of state's "intransigent refusal to comply with a federal mandate protecting the federal voting rights of those serving in the military overseas and those otherwise living on foreign soil"); United States v. Cunningham, No. 08-cv-709, 2009 WL 3350028, at *9 (E.D.. Va. Oct. 15, 2009) (holding that the State of Virginia violated UOCAVA by failing to timely mail absentee ballots); see also Compl., Exh. 1 (Judge Sharpe's "Supplemental Remedial Order" setting a UOCAVA-compliant election schedule when the state legislature failed to do so); Goldfeder Reply Decl., Exh. 4 (attaching a settlement agreement between the Department of Justice and the State of Vermont, which extended the deadline for receipt of UOCAVA-covered absentee ballots, and imposed other obligations upon the State). The Court should reject the Board's pinched and unsupported interpretation of when it must seek a UOCAVA "legal contest" exemption.  Condoning inaction by the Board in this matter will jeopardize the rights of voters in when similar "legal contests" arise in the future.

## POINT III
### PLAINTIFFS SEEK A FINAL JUDGMENT THAT, *INTER ALIA*, ORDERS DEFENDANTS TO CONDUCT A NEW ELECTION

Martins argues that "Plaintiffs are in effect requesting a preliminary injunction for equitable and injunctive relief which, if granted, has the impact of a permanent injunction." Martins Opp'n Br. at 18.  To be clear, there is nothing "preliminary" about the relief Plaintiffs seek. Plaintiffs ask this Court to order a new election as soon as possible; if that relief is granted, there is nothing left for the Court to do.

Even if this Court construes Plaintiffs' request as one for injunctive relief, the outcome is still the same.  Plaintiffs were deprived of their right to vote; that is an irreparable harm because

money damages cannot compensate for their disenfranchisement.  Rossito-Canty v. Cuomo, 86 F. Supp. 3d 175, 199-200 (E.D.N.Y. 2015).[1]  The merits are before the Court and Plaintiffs are entitled to judgment.  Id.

Indeed, it cannot be denied that the balance of hardships tips decidedly and unambiguously in Plaintiffs' favor: the constitutional deprivation here is acute, there is no conceivable state interest in *not* holding an election, and holding the election on September 13, 2016—as suggested by Commissioner Gugerty—adds next to no administrative burden on the county boards because elections for state and local offices are already scheduled for that date.  Gugerty Decl. ¶ 3.

Lastly, giving 152,879 Republican voters an opportunity to exercise their First Amendment right to freedom of association unambiguously promotes the public interest.  In a word, except for the fact that Martins and his proxies would rather win the nomination in the courtroom than face an opponent at the ballot box, there is absolutely no justification for not holding an election.

## POINT IV
## ROOKER-FELDMAN DOES NOT APPLY BECAUSE THIS COURT IS NOT BEING ASKED TO REVIEW A STATE COURT DECISION AND BECAUSE NEITHER HAWKINS NOR AXELMAN WERE PARTIES IN THE STATE COURT PROCEEDING

Both Martins and the Board argue that the Rooker-Feldman doctrine deprives this Court of jurisdiction to hear this action. Board Opp'n Br. at 3-5; Memorandum of Law in Support of Defendant Jack Martins' Cross-Motion Pursuant to Federal Rule of Civil Procedure 12(b)(1)

---

[1] Martins argues that the Complaint does not state with sufficient clarify that Hawkins and Axelman would have voted for Pidot had they been given the chance.  Martins Opp'n Br. at 19 n.10.  Plaintiffs disagree with that assertion, but have in any event submitted sworn statements from Hawkins and Axelman expressly stating that they would have voted for Pidot if they had the chance on June 28, 2016, and would vote for him if a new primary election is ordered.  Declaration of Nancy Hawkins (dated Aug. 9, 2016); Declaration of Steven Axelman (dated Aug. 9, 2016).

and/or 12(b)(6) and in Opposition to Plaintiffs' Motion for Injunctive and Equitable Relief ("Martin's Opp'n Br.") at 6-12. This doctrine does not apply here because Plaintiffs are not asking this Court to review or reject a state court judgment. Green v. Mattingly, 585 F.3d 97, 101 (2d Cir. 2009) (setting out the Second Circuit's four-part test governing application of the doctrine). In fact, the doctrine has no bearing whatsoever on federal court claims, like those presented here, that are independent of the underlying state court proceeding even when "the same or a related question was earlier aired between the parties in state court." Skinner v. Switzer, 562 U.S. 521, 532 (2011) (holding, where a plaintiff-prisoner unsuccessfully sued in state court to obtain DNA testing under state law, that Rooker-Feldman did not bar that plaintiff's subsequent federal court action challenging the constitutionality of the state statutes at issue in the prior state court proceeding).

That the underlying state court proceeding involved a request for a new election does not bring this action within the ambit of Rooker-Feldman. See, e.g., Johnson v. De Grandy, 512 U.S. 997, 1005-06 (1994) (where voters unsuccessfully brought state constitutional challenges to a redistricting plan, Rooker-Feldman did not bar the federal government from challenging that same redistricting under the Voting Rights Act); Skinner, 562 U.S. at 532-33 (holding that Rooker-Feldman did not bar an action by a federal court plaintiff who lost in state court because the federal court action did not challenge the adverse state court decisions, but instead challenged the constitutionality of the statutes upon which the state court decision rested); Brown v. Damiani, 154 F. Supp. 2d 317, 326 (D. Conn. 2001) (rejecting Rooker-Feldman where plaintiff brought a § 1983 claim challenging the constitutionality of a state-court gag order because plaintiff was "seeking to litigate his federal claims for the first time"). What matters for purposes

of this doctrine is whether Pidot actually raised—or could have raised—First Amendment or UOCAVA claims in the underlying state court proceedings.

Pidot's state court proceeding was governed by Article 16 of the New York Election Law. In election law matters, the state Supreme Court possesses only such jurisdiction as is expressly provided by statute. Matter of Hoerger v. Spota, 109 A.D.3d 564, 565 (2d Dep't 2013) ("[A] court's jurisdiction to intervene in election matters is limited to the powers expressly conferred by statute."). Article 16 vests the state Supreme Court with jurisdiction to hear certain, narrow categories of claims, such as challenges to a designating petition or to the form of a ballot. See, e.g., N.Y. Election Law §§ 16-102, 16-104. Nothing in Article 16 empowers the Supreme Court to decide the constitutional or statutory claims at issue here.

Furthermore, in denying Pidot's appeal of Justice Diamond's decision, the Appellate Division determined that Pidot had not timely or properly requested a new election below. Simunovich Decl., Exh. 9 at 2. The Appellate Division held that Pidot's oral request for a new primary on the last day of the trial before Justice Diamond was improper because that request was not also made in Pidot's original validating petition. Id. Because the request for a new election was never properly before the state Supreme Court, this Court is not being asked to review the state court's denial of a new election. See Halyalkar v. Bd. of Regents of State of N.Y., 72 N.Y.2d 261, 268 (1988) ("For a question to have been actually litigated … it must have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding.").

In any event, Rooker-Feldman has no bearing on Hawkins' and Axelman's claims because they were not parties in the state court action. Johnson, 512 U.S. at 1005-06. Indeed, as voters, they had no standing in Pidot's validating proceeding in that a validating lawsuit under

Article 16 of the New York Election Law can *only* be brought by a candidate—and solely for the purpose of overruling a board of elections' alleged errors.  N.Y. Election Law § 16-102.

Defendants attempt to circumvent this fact by alleging that Hawkins and Axelman are in "privity" with Pidot and, therefore, are somehow precluded from asserting constitutional claims because of that relationship.  This argument has no merit.  The United States Supreme Court has already rejected this theory.  Lance v. Dennis, 546 U.S. 459, 466 (2006) ("[T]he Rooker-Feldman doctrine does not bar actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment.").

More fundamentally, it should be noted that the Supreme Court has cautioned district courts against applying Rooker-Feldman outside of the narrow confines of the two cases from which the doctrine gets its name.  Lance, 546 U.S. at 458 (holding that "[a] more expansive Rooker-Feldman rule would tend to supplant Congress' mandate, under the Full Faith and Credit Act, 28 U.S.C. § 1738, that federal courts give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged" (internal quotations omitted)); see also Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 283 (2005).  Applying the doctrine here would indeed expand the doctrine far beyond its original moorings.  Rooker v. Fidelity Trust Co., 263 U.S. 413, 414 (1923) (declining jurisdiction where same plaintiffs who lost in state court sued in federal court to have the state court judgment "declared null and void"); District of Columbia Court of

Appeals v. Feldman, 460 U.S. 462, 468, 472 (1983) (plaintiffs who lost in D.C. court sued the D.C. court for "arbitrarily and capriciously" denying plaintiffs' demand for relief).[2]

In sum, Rooker-Feldman does not deprive this Court of jurisdiction nor does it otherwise prevent this Court from reaching the merits.

**POINT V**
**NEITHER ISSUE PRECLUSION NOR CLAIM PRECLUSION APPLY BECAUSE THE CONSTITUTIONAL AND STATUTORY CLAIMS AT ISSUE HERE WERE NOT BEFORE THE STATE COURT, AND COULD NOT HAVE BEEN RAISED THERE**

Defendants next argue that Plaintiffs' claims are barred by the doctrines of issue preclusion (or collateral estoppel) and claim preclusion (or *res judicata*). Board Opp'n Br. at 3-5 (asserting claim preclusion); Martins Opp'n Br. at 12-16 (asserting claim and issue preclusion).

Given the limited scope of Article 16 proceedings, the state Supreme Court did not adjudicate any of the claims for relief asserted in Plaintiffs' Complaint and, therefore, issue preclusion does not apply. Capital Tel. Co. v. Pattersonville Tel. Co., 56 N.Y.2d 11, 17 (1982); Brown v. Citibank, N.A., 304 A.D.2d 513, 514 (2d Dep't 2003).

Likewise, claim preclusion does not apply because the constitutional and statutory claims Plaintiffs assert here were not—and could not have been—raised in the state court proceedings. Kaufman v. Eli Lilly & Co., 65 N.Y.2d 449, 455 (1985); Shanley v. Callanan Indus., Inc., 54 N.Y.2d 52, 56 (1981).

---

[2] Notably, the United States Supreme Court in Feldman held that the District Court *did have* jurisdiction to hear plaintiffs' constitutional challenges to the underlying rule that the D.C. Court of Appeals relied upon to deny plaintiffs' request for admission to the bar. Feldman, 460 U.S. at 487.

## POINT VI
## DEFENDANTS' VARIOUS OTHER DEFENSES SHOULD ALSO BE REJECTED

Martins and the Board raise a number of additional, miscellaneous defenses, which also lack merit.

### A. Pidot Was Not Required to Exhaust Administrative Remedies or Seek Leave to Appeal

Martins tries to cast blame on Pidot for not seeking leave to appeal the Appellate Division's July 21, 2016 decision to the New York Court of Appeals; for not exhausting his state administrative remedies at the Board before commencing his validating proceeding in state Supreme Court; and for not litigating his case more expeditiously. Martins Opp'n Br. 1-3, 19-20. These arguments are irrelevant to Plaintiffs' First Amendment claims; they are also legally and factually misguided.

There is no requirement, under New York Election Law, federal case law, or otherwise, requiring Pidot to appear before the Board (rather than proceed directly to Supreme Court) to oppose the Martins Objectors' efforts to disqualify him from the ballot. Goldfeder Reply Decl. ¶ 3; see also Roach v. Morse, 440 F.3d 53, 56 (2d Cir. 2006) ("Plaintiffs suing under 42 U.S.C. § 1983 generally need not exhaust their administrative remedies."). The same is true for Pidot's decision not to seek leave to appeal to the Court of Appeals following the Appellate Division's July 21st decision. Zinermon v. Burch, 494 U.S. 113, 124 (1990) ("[O]verlapping state remedies are generally irrelevant to the question of the existence of a cause of action under § 1983.").

Pidot timely submitted his designating petition; within 48 hours of the Board's determination that he lacked sufficient signatures, he commenced a special proceeding in Supreme Court. Compl. ¶ 26. Just six weeks later, on June 24th—after procedural maneuvering by the Martins Objectors, an appeal of the Supreme Court's erroneous dismissal of his validating

proceeding for improper service, and a full merits hearing—Pidot was found to be a validated candidate.  Id. ¶¶ 28-39.[3]  And because neither the state nor county election boards undertook any preparation for an actual primary between Pidot and Martins, alternative litigation strategies would not have made Pidot's inclusion on the ballot any less "impossible."

**B.      The Board's Eleventh Amendment Argument is Unavailing**

The Board's argument that it is immune from § 1983 claims under the Eleventh Amendment misses the point.  Board Opp'n Br. at 9-10.  For starters, the Board is not immune from liability under UOCAVA, and it does not argue otherwise.  Also, if this Court orders a new election, the *only* action that the Board must take is to seek a waiver under UOCAVA—and this is an obligation *already imposed* upon the Board by UOCAVA.  52 U.S.C. § 20302(g)(1) (providing that the board "*shall* request … a waiver" from the 45-day requirement under certain circumstances (emphasis added)), § 20302(g)(2)(B)(ii) (setting forth the "legal contest" exemption).  Moreover, all of the work required to carry out an election—printing and mailing ballots, programming voting machines, etc.—is carried out by the city or county election boards, who have no immunity under the Eleventh Amendment.  Leitner v. Westchester Cmty. Coll., 779 F.3d 130, 134 (2d Cir. 2015) ("Sovereign immunity does not, however, extend to local governments or municipalities.").

In any event, allowing the general election to proceed with Martins as the Republican candidate for Congress, without having given voters an opportunity to vote for a candidate of their choosing in a primary election, would create a *new* constitutional deprivation. The Eleventh Amendment does not bar such a claim for prospective injunctive relief.  Verizon Maryland, Inc.

---

[3] For every instance in which Martins asserts that Pidot should have moved through the state court proceedings more expeditiously, arguments can also be made that the Martins Objectors took every opportunity they had to delay a resolution on the merits.  Compl. ¶¶ 24, 28; Goldfeder Reply Decl. ¶¶ 3-4.

v. Pub. Serv. Comm'n of Maryland, 535 U.S. 635, 645 (2002) ("It is well established that the Eleventh Amendment does not bar lawsuits against state officials seeking prospective injunctive relief aimed at stopping ongoing violations of federal law.").

In sum, if the Court orders a new election, it need not impose any independent obligation upon the Board; accordingly, the Eleventh Amendment is irrelevant.

### C. Defendants' Various Other Defenses are Equally Unpersuasive

Other arguments advanced by the various Defendants can be even more summarily addressed. Martins' argument concerning the equal protection claim is irrelevant because Plaintiffs are not seeking relief under that claim (and did not argue in their moving brief for such relief). Martins Opp'n Br. at 16-17.

Martins suggestion that "Plaintiffs' motion will likely require modification of Judge Sharp's [sic] scheduling order" is similarly misplaced. Id. at 25 n.14. Crucially, nothing in Judge Sharpe's Order affects this Court's power (or any court's power, for that matter) to order a new election as a remedy for constitutional violations. Compl. Exh. 1. Judge Sharpe implicitly agreed with this by saying that the instant constitutional issues are not "related" to the case in which he issue his 2016 federal election calendar. Summary Order, Dkt. Entry No. 11 (July 18, 2016) ("In addition, the parties and legal issues in the cases in question are also dissimilar. Accordingly, the instant case is not related to United States of America v. New York, No. 1:10-cv-1214 ….").

Finally, the Board's argument that it has "no authority to order a new primary election" is inapt because Plaintiffs are not requesting that the Board "order a new primary election"; Plaintiffs are asking *this Court* to enter that order, not the Board. Board Opp'n Br. at 5-6.

-14-

**CONCLUSION**

For the reasons set forth above, as well as in Plaintiffs' moving brief, supporting papers, and the Complaint, Plaintiffs respectfully request that the Court order a Republican Party primary election for New York's Third Congressional District.

Dated: New York, New York
       August 10, 2016                **STROOCK & STROOCK & LAVAN LLP**

                                      By:   */s/ Jerry H. Goldfeder*
                                            Jerry H. Goldfeder (admitted *pro hac vice*)
                                            David V. Simunovich (admitted *pro hac vice*)
                                            180 Maiden Lane
                                            New York, New York 10038
                                            (212) 806-5857
                                            jgoldfeder@stroock.com

                                            *Counsel for Plaintiffs*