UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

PHILIP PIDOT, NANCY HAWKINS and STEVEN AXELMAN, individually and as representatives of eligible Republican Party voters in Suffolk, Nassau and Queens Counties within New York's Third Congressional District,

                                               Plaintiffs,

    - against -

NEW YORK STATE BOARD OF ELECTIONS; SUFFOLK COUNTY BOARD OF ELECTIONS; NASSAU COUNTY BOARD OF ELECTIONS; BOARD OF ELECTIONS IN THE CITY OF NEW YORK, PETER KOSINSKI and DOUGLAS KELLNER, in their official capacities as Commissioners and Co-Chairs of the New York State Board of Elections; ANDREW J. SPANO and GREGORY P. PETERSON, in their official capacities as Commissioners of the New York State Board of Elections; TODD D. VALENTINE and ROBERT A. BREHM, in their official capacities as Co-Executive Directors of the New York State Board of Elections, and JACK MARTINS,

                                               Defendants.

------------------------------------------------------------------------ x

**STATEMENT OF THE BOARD OF ELECTIONS IN THE CITY OF NEW YORK IN RESPONSE TO THE ORDER TO SHOW CAUSE DATED JULY 25, 2016**

16 CV 859 (FJS/CFH)

       The Board of Elections in the City of New York (the "Board"), by and through its attorney, ZACHARY W. CARTER, Corporation Counsel of the City of New York, states as follows in response to the Order to Show Cause dated July 25, 2016:

       1.    In this special proceeding, the Board takes no position on the merits of the appeal, but merely submits this memorandum in order to advise the Court as to what is required to conduct a primary election for the Republican Party designation for Member of Congress from New York's 3rd Congressional District (the "3rd District").

       2.    A portion of the 3rd District is within Queens County.  That portion of the 3rd District requires the use of 19 poll sites serving 12,478 voters enrolled in the Republican

-2-

Party, of which 30 are military and federal overseas voters.  To conduct the election at those 19 poll sites, the Board would need approximately 530 poll workers and to deploy the following equipment:

    a.    38 ballot scanners

    b.    19 ballot marking devices

    c.    61 privacy booths

    d.    82 supply carts (may be fewer if Election Districts are combined)

    e.    119 tables

    f.    400 chairs.

3.    In addition to the above equipment, the Board would also be required to deploy the following equipment to render certain poll sites accessible to persons with disabilities:

    a.    Six cones

    b.    At least 5 mats (to cover wires)

    c.    One 28 foot ramp

    d.    Two 10 foot ramps

    e.    One 84 foot ramp.

4.    To prepare the voting equipment (the ballot scanners and marking devices and related computer systems, it would take the following amounts of time:

    a.    One day to program the election management system

    b.    When that programming is completed, the Board then uploads to the State Board's vendor an electronic version of the ballot to be e-mailed to military and federal voters who have requested that their ballot be

delivered in this manner. The Board also takes the extra step of sending another ballot through the mail.

 c. Half of one day to program the Ballot on Demand system

 d. Half of one day to prepare the military/federal and absentee ballots for printing by the Ballot on Demand system.

5. Once the above programming is completed, the draft ballot is prepared and e-mailed to Board staff to proof. Once it has been proofed, it is sent to the Board's outside ballot printing vendor (the "printer"). It can take up to four days for the printer to print and deliver the ballots to the Queens Voting Machine Facility from the time it receives the ballot in electronic format.

6. In addition, because Queens County is covered by language assistance provisions of the Voting Rights Act, the candidate's names that appear on these ballots must be translated into three languages (Chinese, Korean, and Bengali). Such translations require the input from the Board's bipartisan team of two translators for each language. Additionally, once the candidate's name has been translated, he or she is afforded the opportunity to review such translation. This process normally takes several days to a week.

7. The election-day ballots and audio programming (for the ballot marking devices) must be made available for inspection by the candidates. For the election-day ballots, that can occur on the day the ballots are delivered to the Queens Voting Machine Facility. For the review of the audio ballot, it can be scheduled for the day after the ballot is produced by the election management system.

8. It then takes approximately four days to test all of the election-day voting equipment and another two days to ship it together with the other equipment to the designated poll sites.

9. Post-election activities and statutorily mandated tasks necessary for Certification of the Election is mandated by State Law to be completed no later than fifteen days after the date of the Primary. The Board notes that the State and Local Primary Election is scheduled for September 13, 2016, and preparations for the November 8, 2016, General Election commence almost immediately thereafter.

10. Also of note, Federal law requires that military and federal ballots be transmitted to voters not less than 45 days prior to the date of the election. 52 U.S.C. § 20302(a)(8)(A). This requirement may be waived, however, if the chief State election official determines that the State is unable to meet the requirement due to an "undue hardship" and requests that the Presidential designee grant a waiver to the State of the application of such subsection. 52 U.S.C. § 20302(g)(1).

> Such request shall include (a) a recognition that the purpose of such subsection is to allow absent uniformed services voters and overseas voters enough time to vote in an election for Federal office; (b) an explanation of the hardship that indicates why the State is unable to transmit absent uniformed services voters and overseas voters an absentee ballot in accordance with such subsection; (c) the number of days prior to the election for Federal office that the State requires absentee ballots be transmitted to absent uniformed services voters and overseas voters; and (d) a comprehensive plan to ensure that absent uniformed services voters and overseas voters are able to receive absentee ballots which they have requested and submit marked absentee ballots to the appropriate State election official in time to have that ballot counted in the election for Federal office.

52 U.S.C. § 20302(g)(1)(a), (b), (c) and (d).

11. The "comprehensive plan" must include (i) the steps the State will undertake to ensure that absent uniformed services voters and overseas voters have time to

receive, mark, and submit their ballots in time to have those ballots counted in the election, (ii) why the plan provides absent uniformed services voters and overseas voters sufficient time to vote as a substitute for the requirements under such subsection; and, (iii) the underlying factual information which explains how the plan provides such sufficient time to vote as a substitute for such requirements. 52 U.S.C. § 20302(d)(i), (ii) and (iii).  After consulting with the Attorney General, the Presidential Designee shall approve a waiver request if it is determined that the comprehensive plan provides absent uniformed services voters and overseas voters sufficient time to receive absentee ballots they have requested and submit marked absentee ballots to the appropriate State election official in time to have that ballot counted in the election for Federal office and an undue hardship, such as a "delay in generating ballots due to a legal contest" exists. 52 U.S.C. § 20302(g)(2)(B)(ii).

Dated:	New York, New York
	August 16, 2016

                                                        **ZACHARY W. CARTER**
                                                        Corporation Counsel of the
                                                           City of New York
                                                        Attorney for Defendants
                                                        100 Church Street, Room 6-139
                                                        New York, New York  10007
                                                        (212) 356-2072
                                                        email: HMeltzer@law.nyc.gov

                                       By:     s/Hilary Meltzer
                                                      Hilary Meltzer
                                                      Assistant Corporation Counsel
                                                      Attorney Bar Number: 506619

Stephen Kitzinger, of counsel
e-mail: SKitzing@law.nyc.gov