UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHILIP PIDOT, NANCY HAWKINS and STEVEN AXELMAN, individually and as representatives of eligible Republican Party voters in Suffolk, Nassau and Queens Counties within New York's Third Congressional District,<br><br>     Plaintiffs,<br><br>    v.<br><br>NEW YORK STATE BOARD OF ELECTIONS; SUFFOLK COUNTY BOARD OF ELECTIONS; NASSAU COUNTY BOARD OF ELECTIONS; BOARD OF ELECTIONS IN THE CITY OF NEW YORK; PETER KOSINSKI and DOUGLAS KELLNER, in their official capacities as Commissioners and Co-Chairs of the New York State Board of Elections; ANDREW J. SPANO and GREGORY P. PETERSON, in their official capacities as Commissioners of the New York State Board of Elections; TODD D. VALENTINE and ROBERT A. BREHM, in their official capacities as Co-Executive Directors of the New York State Board of Elections; and JACK MARTINS,<br><br>     Defendants. | Civil Action No.<br>1:16-CV-00859-FJS-CFH |

## STATEMENT OF INTEREST OF THE UNITED STATES

The United States of America ("United States") respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Attorney General to attend to the interests of the United States in any pending lawsuit. As pled, this matter may implicate the constitutionality of the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 52 U.S.C. §§ 20301 *et seq.*, as amended by the Military and Overseas Voter Empowerment Act,

Pub L. No. 111-84, Subtitle H, §§ 575-589, 123 Stat. 2190, 2318-2335 (2009) ("MOVE Act"). Congress has accorded the Attorney General broad enforcement authority over UOCAVA, 52 U.S.C. § 20307(a), and the United States has a substantial interest in defending UOCAVA's constitutionality.

The United States files this Statement for the limited purpose of explaining why the Court need not address Plaintiffs' constitutional challenge to UOCAVA to resolve this matter. The United States takes no position on any other issue at this time. However, should the Court conclude it must resolve Plaintiff's constitutional challenge, the United States respectfully notes its intent to intervene promptly to defend UOCAVA's constitutionality and to address other matters as appropriate, pursuant to Rule 5.1(c) of the Federal Rules of Civil Procedure and 28 U.S.C. § 2403(a).[1]

## I.   BACKGROUND

Plaintiffs ask the Court to order Defendants to hold a new Republican federal primary election for New York's Third Congressional District ("primary election") with Plaintiff Philip Pidot and Defendant Jack Martins on the ballot. *See* Compl. ¶ 48. Absent relief, they argue, their First Amendment associational rights, Fourteenth Amendment equal protection rights, and, perhaps, rights under UOCAVA will be violated. *Id.* ¶¶ 54-69. As to the latter point, Plaintiffs contend that UOCAVA is unconstitutional if and only if the Court finds that a new primary election is warranted, but that UOCAVA's 45-day advance transmission requirement for mailing ballots to military and overseas voters bars that relief. *See id.* ¶¶ 47-53; 52 U.S.C.

---

[1] The United States calculates the deadline for seeking intervention to be September 12, 2016. FED. R. CIV. P. 5.1(c); 28 U.S.C. § 2403(a). The United States will, however, promptly comply with any order necessitating it to intervene prior to the statutory deadline.

§ 20302(a)(8)(A).   But UOCAVA is neither the source of Plaintiffs' injury nor a bar to the relief Plaintiffs seek here.   Accordingly, and consistent with constitutional avoidance principles, this Court need not address Plaintiffs' constitutional challenge to UOCAVA.

## A.   Statutory Background

UOCAVA, as amended by the MOVE Act, constitutes "a comprehensive series of requirements aimed at ending the widespread disenfranchisement of military voters stationed overseas."   *United States v. Alabama*, 778 F.3d 926, 928 (11th Cir. 2015).   UOCAVA thus requires that states permit absent uniformed services voters and overseas voters ("UOCAVA voters") "to vote by absentee ballot in general, special, primary, and runoff elections for Federal office."   52 U.S.C. § 20302(a)(1).[2]   As relevant here, UOCAVA requires that states transmit validly requested absentee ballots to UOCAVA voters not later than 45 days before an election for federal office when the request is received at least 45 days before the election (the "45-day advance transmission requirement").   *Id.* § 20302(a)(8)(A).

---

[2] UOCAVA defines "absent uniformed services voter" to include: (1) "a member of a uniformed service on active duty who, by reason of such active duty, is absent from the place of residence where the member is otherwise qualified to vote"; (2) "a member of the merchant marine who, by reason of service in the merchant marine, is absent from the place of residence where the member is otherwise qualified to vote"; and (3) "a spouse or dependent of a [member of a uniformed service or the merchant marine] who, by reason of the active duty or service of the member, is absent from the place of residence where the spouse or dependent is otherwise qualified to vote." 52 U.S.C. § 20310(1).   UOCAVA defines "overseas voter" to include: (1) "an absent uniformed services voter who, by reason of active duty or service is absent from the United States on the date of the election involved"; (2) "a person who resides outside the United States and is qualified to vote in the last place in which the person was domiciled before leaving the United States"; and (3) "a person who resides outside the United States and (but for such residence) would be qualified to vote in the last place in which the person was domiciled before leaving the United States."   52 U.S.C. § 20310(5).

As a failsafe, UOCAVA authorizes Chief State Election Officials to request waivers from the Department of Defense ("DOD")[3] if they cannot comply with UOCAVA's 45-day advance transmission requirement due to an undue hardship.  *Id.* § 20302(g)(1).   The DOD may grant a waiver in several enumerated circumstances, including where "[t]he State has suffered a delay in generating ballots due to a legal contest," and such an issue "creates an undue hardship for the State."[4]  *Id.* § 20302(g)(2)(B).

In addition, absent hardship waivers, courts have ordered into effect remedial plans to vindicate UOCAVA voters' rights when UOCAVA voters would otherwise have been left without ample time to cast their ballots.   *See* Consent Decree, *United States v. West Virginia*, No. 2:14-cv-27465 (S.D. W.Va. Nov. 3, 2014), ECF No. 5 at 4-5 (adopting a remedial plan to protect UOCAVA voters where an undue hardship waiver was rejected), *available at*

---

[3] UOCAVA requires the President to designate an executive department head to have primary responsibility for federal functions under UOCAVA.   52 U.S.C. § 20301.   The Secretary of Defense was designated the Presidential designee by Executive Order 12642, 53 Fed. Reg. 21975 (June 8, 1988).   The Secretary of Defense has delegated this authority to the Under Secretary of Defense (Personnel & Readiness) through DOD Directive 1004.04.

[4] State waiver applications must "explain the hardship preventing the state from complying with the forty-five day rule *and* propose a substitute timeline specifying how many days before the election UOCAVA voters will receive their ballots."   *Alabama*, 778 F.3d at 930 (citing 52 U.S.C. § 20302(g)(1)(B)-(C)).   Along with the substitute timeline, the application must articulate a "comprehensive plan to ensure that [UOCAVA] voters are able to receive absentee ballots which they have requested and submit marked absentee ballots to the appropriate State election official in time to have that ballot counted in the election for Federal office[.]"   52 U.S.C. § 20302(g)(1)(D).   The Under Secretary of Defense for Personnel and Readiness reviews States' waiver applications, consults with the Department of Justice, and decides whether the applications do or do not meet the requirements for a one-time undue hardship waiver.   *See* Decl. of David V. Simunovich in Supp. of Order to Show Cause, Ex. 8 (Federal Voting Assistance Program, Guidance on *Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) Ballot Delivery Waivers*), ECF No. 22-8 at 9.   For waivers sought on the basis of a delay due to a legal contest, the Presidential designee is required to respond within five business days of receipt.   52 U.S.C. § 20302(g)(3)(B).

https://www.justice.gov/crt/about/vot/misc/wv_uocava_cd.pdf (last visited Aug. 16, 2016); Memorandum-Decision and Order, *United States v. New York,* 1:10-cv-1214, ECF No. 59 at 2 (N.D.N.Y. Jan. 27, 2012) (ordering a UOCAVA-compliant primary date after hardship waivers granted for prior elections had proven inadequate), *available at* https://www.justice.gov/crt/about/vot/misc/ny_uocava_order.pdf (last visited Aug. 16, 2016). These plans typically involve extending the ballot receipt deadline for UOCAVA voters to afford these voters a full 45-day period in which to receive, mark, and return their ballots.   *See, e.g.*, Consent Decree, *United States v. New York*, No. 1:10-cv-1214 (N.D.N.Y. Oct. 19, 2010), ECF No. 9 at 6-7, *available at* https://www.justice.gov/crt/about/vot/misc/ny_uocava10_cd.pdf (last visited Aug. 16, 2016); Settlement Agreement and Stipulated Motion for Entry of Order, *United States v. Vermont*, No. 5:12-cv-236 (D. Vt. Oct. 22, 2012), ECF No. 10 at 3, *available at* https://www.justice.gov/crt/about/vot/misc/vt_uocava_settlement12.pdf (last visited Aug. 16, 2016).   Remedial court orders may also provide for alternative means of transmission and receipt of UOCAVA voters' ballots, allowing these voters to receive and return their ballots on an expedited basis via pre-paid express mail or electronic transmission.   *See, e.g.*, Consent Decree, *United States v. Virgin Islands*, No. 3:12-cv-00069 (D.V.I. Sept. 7, 2012), ECF No. 10 at 8, *available at* https://www.justice.gov/crt/about/vot/misc/vi_cd.pdf (last visited Aug. 16, 2016). Through such remedial court orders, federal courts have ensured that UOCAVA voters' rights are protected to the extent possible.   *See* Memorandum-Decision and Order, *United States v. New York,* 1:10-cv-1214, ECF No. 59 at 2 (N.D.N.Y. Jan. 27, 2012) (Sharpe, *J.*) ("It is unconscionable to send men and women overseas to preserve our democracy while simultaneously disenfranchising them while they are gone.").

**B.     Factual Background**

On April 14, 2016, Plaintiff Pidot filed a designating petition with Defendant New York State Board of Elections ("SBOE") seeking to have his name placed on the ballot for the Republican nomination for New York's Third Congressional District.    Compl. ¶¶ 22-23. Under an existing consent decree between New York and the United States entered by this Court, the Republican primary election for the Third Congressional District was scheduled to take place on June 28, 2016.    *See* Compl., Ex. 1, ECF No. 1-1 at 1-2; *see also* Supplemental Remedial Order, *United States v. New York*, No. 1:10-cv-1214 (N.D.N.Y. Oct. 29, 2015), ECF No. 88, Decl. of Ernest A. McFarland in Supp. of Statement of Interest of the United States, Ex. A. UOCAVA's 45-day advance transmission deadline for that election fell on May 14, 2016.

On April 27, 2016, objectors to Pidot's petition commenced a special proceeding in New York State Supreme Court, Nassau County, seeking to invalidate Pidot's designating petition. Compl. ¶ 24.    On May 4, 2016, in response to this invalidation proceeding, Defendant SBOE determined that Pidot's designating petition contained too few valid signatures to qualify for inclusion on the primary election ballot.    *Id.* ¶ 25.

On May 6, 2016, Pidot commenced a special proceeding under Article 16 of New York State Election Law in New York State Supreme Court, Nassau County, to dispute the rejection of his designating petition.    *Id.* ¶ 26.    The court dismissed Pidot's suit on May 11, 2016 for failure to effect proper service of process.    *Id.* ¶ 28.    That decision came three days before the May 14, 2016, 45-day advance transmission deadline for UOCAVA ballots.

On May 18, 2016, Pidot moved to vacate the trial court's order dismissing his petition. *Id.* ¶ 30.    The Supreme Court, Nassau County denied this motion on June 7, 2016, and Pidot

6

appealed to the Appellate Division, Second Department. *Id.* ¶¶ 30-31. On June 17, 2016, that court reversed the trial court's dismissal order and remanded for a determination of the merits of Pidot's petition. *Id.* ¶ 31.

The state trial court held a three-day hearing and, on June 24, 2016, ruled that Pidot's petition contained enough valid signatures to place his name on the ballot. *Id.* ¶¶ 36, 39. But, given that the primary election remained scheduled for June 28, 2016, Pidot's counsel conceded that adding Pidot's name to the ballot for the June 28, 2016 primary election was infeasible. Compl., Ex. 2, ECF No. 1-2 at 2. The trial court agreed, noting multiple reasons preventing Pidot's addition to the ballot in the short period of time remaining, including the long-passed deadline for transmitting UOCAVA ballots. *Id.*

Although conceding that Pidot's name could not be added to the June 28, 2016 ballot, Pidot's counsel sought alternative relief in the form of a new primary election date. *Id.* at 2-3. The state trial court denied this relief, however, explicitly noting the state court defendants' arguments that new elections are rarely granted under New York State law. *Id.* at 3. The trial court did not cite UOCAVA as an additional reason for denying Pidot's request for a new election. Nor would UOCAVA have in any way limited the grant of a new primary election set for a date allowing timely transit of ballots to UOCAVA voters.

On July 7, 2016, represented by new counsel, Pidot appealed from the state trial court's order denying him relief. *See* Decl. of David V. Simunovich in Supp. of Order to Show Cause, Ex. 7, ECF No. 22-7 at 10, 25. On July 21, 2016, the Appellate Division affirmed the trial court decision in all respects. *Id.*, Ex. 9, ECF No. 22-9 at 1. As to Pidot's request to be placed on the June 28, 2016 ballot, the appellate court found that "[t]he Supreme Court properly concluded

7

based, inter alia, on the concession of Pidot's counsel, that it would be impossible to grant Pidot the relief he specifically requested in his petition, namely, to include his name on the June 28, 2016, primary ballot." *Id.* at 2 (internal citation omitted). The appellate court similarly rejected Pidot's request for a rescheduled primary election, noting that this relief had not been requested in Pidot's petition and had only been sought orally by his counsel on the last day of the trial court hearing. *Id.* The Appellate Division's decision does not mention UOCAVA or cite it as a reason for not ordering a new election.

## C. Procedural History

On July 13, 2016, Plaintiffs Pidot, Nancy Hawkins, and Steven Axelman filed this action.[5] All three Plaintiffs, as purported voters in the Third Congressional District, along with Pidot, as a candidate seeking election from this district, argue that their First and Fourteenth Amendment rights, and possibly their rights under UOCAVA, have been violated by the failure to hold a new primary election. Compl. ¶¶ 47-69. Seeking a Court-ordered primary election as a remedy, they argue that, to the extent such an election conflicts with UOCAVA's 45-day advance transmission requirement, this Court should require Defendant SBOE to seek a hardship exemption under UOCAVA. *Id.* at 17. Should a UOCAVA exemption be unavailable or infeasible, Plaintiffs alternatively seek a declaration that UOCAVA's 45-day advance transmission requirement is unconstitutional as applied here. *Id.*

When filing their Complaint, Plaintiffs requested that this case be designated as related to

---

[5] On June 27, 2016, following the state trial court's decision, Pidot and Hawkins filed a *pro se* complaint in the United States District Court for the Eastern District of New York. Compl. ¶ 40. On July 5, 2016, Plaintiffs' present counsel entered an appearance in the action and voluntarily dismissed it without prejudice pursuant to Federal Rule of Civil Procedure 41(a). *Id.* ¶ 41.

8

*United States v. New York*, No. 10-cv-1214 (N.D.N.Y. filed Oct. 12, 2010), a separate case in which this Court set the primary election calendar for federal Congressional elections throughout New York.   *See* Notice of Related Cases, ECF No. 6.   On July 18, 2016, the Honorable Gary L. Sharpe, who presided over the previous matter, denied Plaintiffs' request.   *See* Order, July 18, 2016, ECF No. 11.

Along with their Complaint, Plaintiffs also filed notice that this action involves a challenge to the constitutionality of UOCAVA, pursuant to Federal Rule of Civil Procedure 5.1(a)(1)(A).   *See* Notice to Court that Action Involves Challenge to Constitutionality of Federal Statute, ECF No. 2.   On July 19, 2016, this Court ordered that the question of UOCAVA's constitutionality be certified to the United States Attorney General, pursuant to Rule 5.1(b) and 28 U.S.C. § 2403.   *See* Order, July 19, 2016, ECF No. 16.   Under Rule 5.1(c), the United States has 60 days from the filing of Plaintiffs' notice to intervene in this litigation (i.e., September 12, 2016).   FED. R. CIV. P. 5.1(c).   In the interim, this Court may reject Plaintiffs' constitutional challenge, but it may not enter a final judgment holding UOCAVA unconstitutional before the time to intervene expires.   *Id.*

## II.   ARGUMENT

This Court need not reach Plaintiffs' potential claim regarding UOCAVA's constitutionality to resolve this matter.   That is because the state courts' refusals to order a new election for New York's Third Congressional District were premised on state law grounds only. UOCAVA played no role.   Plaintiffs' alleged harms, therefore, if any, resulted solely from state courts applying state law -- and not from any barrier imposed by UOCAVA.

Nor does UOCAVA present any barrier to relief now.  To the extent the Court believes it appropriate to order a new election, that election can be conducted in a manner that fully protects UOCAVA voters' rights.  Accordingly, because UOCAVA imposed no harm below, and because it presents no barrier to relief here, its constitutionality is not implicated by this case.[6]

**A.      UOCAVA Played No Role In Causing The Harms Alleged Here.**

Plaintiffs ask this Court to order what New York State courts applying state law have already declined to grant -- a new federal primary election.  They also ask this Court to declare UOCAVA's 45-day advance transmission requirement unconstitutional to the extent that it bars that requested relief.  But because UOCAVA played no role in blocking the relief Plaintiffs seek here, its constitutionality is not at issue.

In state Supreme Court, Plaintiff Pidot initially requested that his name be placed on the ballot for the then-pending June 28, 2016 Republican primary election.  The court denied that request, after Pidot conceded there was not enough time to grant this relief.  Compl., Ex. 2, ECF No. 1-2 at 2.  Although the state trial court cited UOCAVA as one of several reasons for not placing Pidot on the ballot for the scheduled primary election, UOCAVA appeared to play no role whatsoever in the court's rejecting Pidot's eleventh hour alternate request *for a new election* (the relief Pidot seeks here).  *Id.* at 2-3.  On the latter point, the trial court noted only New York's argument that ordering a new election lacked precedent under state law absent evidence of fraud.  *Id.* at 3.

---

[6] As noted, should the Court disagree and find that an analysis of UOCAVA's constitutionality is unavoidable under the circumstances, the United States would expect to intervene in this action to defend UOCAVA's constitutionality on or before September 12, 2016 (or as ordered by the Court).  FED. R. CIV. P. 5.1(c); 28 U.S.C. § 2403(a).

10

The state trial court's failure to cite UOCAVA in denying Pidot's request for a new election was not likely an oversight.  At the time of the trial court's decision on June 24, 2016, more than four months remained before the general election, and UOCAVA's 45-day advance transmission requirement posed no bar whatsoever to a rescheduled primary election.  Ample time remained to schedule a new UOCAVA-compliant primary election without affecting preparation for the general election.

Nor did UOCAVA play any role in the Appellate Division's refusal to order a new election.  Its decision notes only that Pidot's request for a new election was procedurally defective, having been raised for the first time during the state trial court hearing.  Decl. of David V. Simunovich in Supp. of Order to Show Cause, Ex. 9, ECF No. 22-9 at 2.  As with the trial court ruling, UOCAVA was not and could not have been the basis for the Appellate Division's refusal to order a new election.  At the time of the Appellate Division's decision, sufficient time existed to schedule a new primary election that complied fully with UOCAVA's 45-day advance transmission requirement.

Thus, because UOCAVA played no role whatsoever in the decisions by New York State courts to deny Pidot's request for a new election, UOCAVA could not have caused any of the harms alleged here.[7]

---

[7] Plaintiffs allege that New York's failure to seek a hardship waiver exemption violated UOCAVA.  Pls.' Mem. of Law in Supp. of Their Request to Proceed by Order to Show Cause and For a New Election, ECF No. 20 at 12-13.  To remedy this alleged violation, they ask the Court to order the state to seek a "hardship exemption" from DOD -- but only "if it is determined that a Republican primary election for the Third Congressional District cannot be held in compliance with UOCAVA's 45-day requirement[.]"  *Id.* at 14.  Yet, under the circumstances of this case, it is unclear what harm, if any, flowed from the State's alleged failure to seek a hardship exemption.  The state courts noted several logistical impediments to adding Pidot's name to the June 28, 2016 primary election ballot, notwithstanding the absence of a "hardship waiver."  Compl., Ex. 2, ECF

**B.     UOCAVA Is No Bar to a New Election Should This Court Order One.**

Should this Court conclude that a new election is an appropriate remedy for the First and Fourteenth Amendment harms alleged here, it still need not consider UOCAVA's constitutionality.   That is because UOCAVA is no bar to a new election.   Indeed, if a new election is deemed appropriate and if that new election were required to be held without sufficient time to transmit ballots 45 days before the required election day, then -- consistent with prior cases where compliance with UOCAVA's 45-day advance transmission requirement has proven impossible (and absent a waiver) -- this Court may require Defendants, in consultation with the United States, to implement that primary election on a schedule that ensures the rights of UOCAVA voters.   This course would serve the Plaintiffs' interests, vindicate the rights of the state's military and overseas voters, and honor principles of constitutional avoidance.

### 1. New York Can Develop an Election Calendar to Remedy Any Imminent UOCAVA Violation.

Nothing bars this Court from ordering UOCAVA-compliant relief.   Indeed, in other cases, including those originating in this court, courts have fashioned relief even where strict compliance with UOCAVA's 45-day advance transmission deadline has not been possible because of time constraints.   *See, e.g.*, Consent Decree, *United States v. New York*, No. 1:10-cv-1214 (N.D.N.Y.

---

No. 1-2 at 2.   Even if a state court had ordered a new election (which, of course, did not happen), and even if a UOCAVA waiver had been granted in the days before June 28, 2016, *see* Pls.' Mem. of Law in Supp. of Their Request to Proceed by Order to Show Cause and For a New Election, ECF No. 20 at 13 (arguing that Defendant SBOE "should have sought a waiver no later than June 17, 2016" (emphasis omitted)), these other logistical challenges would still have prevented Pidot's placement on the ballot.   Moreover, it is unclear whether a private right of action exists to force states to seek hardship waiver exemptions.   *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (noting that "private rights of action to enforce federal law must be created by Congress.") Accordingly, Plaintiffs' allegations regarding the state's failure to seek a hardship waiver exemption are inapt.

Oct. 19, 2010), ECF No. 9 at 7 (remedial order adopted "[t]o ensure that New York's UOCAVA voters will have sufficient opportunity under Federal law to receive absentee ballots they have requested and submit marked absentee ballots in time to be counted"); Consent Decree, *United States v. Illinois*, No. 1:13-cv-00189 (N.D. Ill. Jan 11, 2013), ECF No. 9 at 1 ("[T]he State will not be able to transmit ballots to UOCAVA voters 45 days prior to the scheduled February 26, 2013 special primary election . . . ."), *available at* https://www.justice.gov/crt/about/vot/misc/il_uocava_cd13.pdf (last visited Aug. 16, 2016). In such cases, UOCAVA's protections for military and overseas voters are not ignored or discarded as barriers standing in the way of the constitutional rights of candidates and voters. Rather, even absent an undue hardship exemption, courts have remedied imminent or actual UOCAVA violations and provided military and overseas voters constructive relief. *See* Supplemental Consent Decree, *United States v. Illinois*, No. 1:13-cv-00189 (N.D. Ill. Oct. 31, 2013), ECF No. 11 at 1 (explaining that the Consent Decree "order[ed] the State to take certain actions as an appropriate remedy" for its UOCAVA violations), *available at* https://www.justice.gov/crt/about/vot/misc/il_uocava_cd13_supp.pdf (last visited Aug. 16, 2016).

Such remedies are designed to ensure that UOCAVA voters enjoy sufficient time to receive, mark, and return their ballot, consistent with the purpose of UOCAVA's 45-day advance transmission requirement. For example, jurisdictions can extend the deadline for receipt of ballots from UOCAVA voters, provide notice to these voters of such extension, and offer

alternative means of expedited transmission and receipt of ballots.[8]  *See, e.g.*, Settlement Agreement and Stipulated Motion for Entry of Order, *Vermont*, ECF No. 10 at 3-4 (providing additional time for receipt of absentee ballots from eligible UOCAVA voters whose ballots were sent late, as well as individual notice to each affected voter); Consent Decree, *Virgin Islands*, ECF No. 10 at 6-8 (extending the ballot return deadline for UOCAVA ballots, and utilizing express mail, fax and e-mail options for the delivery and return of UOCAVA ballots).

Indeed, this Court has entered several orders to address imminent or actual UOCAVA violations, including where New York had missed deadlines under an existing UOCAVA waiver or scheduled special elections on short notice.  *See* Consent Decree, *United States v. New York*, No. 1:10-cv-1214 (N.D.N.Y. Oct. 19, 2010), ECF No. 9 at 6-7 (providing extra time for the receipt and counting of ballots, along with additional transmission methods, where ballots were sent with insufficient time to permit timely return) "); Consent Decree, *United States v. New York*, No. 1:09-cv-335 (N.D.N.Y. Mar. 26, 2009), ECF No. 6 at 4-6 (providing additional time for the receipt and counting of ballots where a special election was scheduled with insufficient time for UOCAVA voters to receive and return ballots), *available at* https://www.justice.gov/crt/about/vot/misc/ny_uocava09_cd.pdf (last visited Aug. 16, 2016); *see also* Memorandum-Decision and Order, *United States v. New York,* 1:10-cv-1214, ECF No. 59 at

---

[8] Additionally, such a remedy may provide that, where the existing vote margin exceeds the number of outstanding UOCAVA ballots, states with an extended deadline for receipt of ballots can certify election results prior to expiration of the receipt deadline.  *See* Consent Decree, *United States v. Wisconsin*, No. 3:12-cv-197 (W.D. Wis. Mar. 23, 2012), ECF No. 6 at 7 (explaining that election results "may be formally certified by late-transmittal municipalities if the number of outstanding absentee ballots from UOCAVA voters could not mathematically alter the outcome of the election, subject to amendment or re-certification to add any votes from any ballots returned by the extended receipt deadline."), *available at* https://www.justice.gov/crt/about/vot/misc/wi_uocava_cd12.pdf (last visited Aug. 16, 2016).

2 (N.D.N.Y. Jan. 27, 2012) (ordering an earlier primary date to prevent upcoming UOCAVA violations). [9]

Accordingly, if the Court decides that a new election is necessary here, it need not undertake an inquiry implicating the constitutionality of UOCAVA, as applied or otherwise. Rather, as in past cases where transmitting ballots to UOCAVA voters 45 days prior to an election is not possible, the Court should order New York, in consultation with the United States, to develop a primary election calendar that protects the rights of UOCAVA voters.  New York is best suited to determine the timing and manner for scheduling and conducting a new UOCAVA-compliant election.   The Defendants, in consultation with the United States, can likely adopt a calendar that allows sufficient time for UOCAVA voters to receive, mark, and return their ballots both in any newly scheduled primary election and in a subsequent federal general election. This calendar can account for practical concerns involved in scheduling a new primary election, including the truncated time needed to prepare and certify ballots, and the availability of polling places, voting machines, and poll workers.

### 2. Constitutional Avoidance Counsels Against Ruling On UOCAVA's Constitutionality.

In the event a new election is deemed appropriate, requiring New York to develop an emergency compliance plan here would serve principles of constitutional avoidance.  *See Nw. Austin Mun. Utility Dist. No. One v. Holder*, 557 U.S. 193, 204 (2009) ("[J]udging the constitutionality of an Act of Congress is the gravest and most delicate duty that this Court is

---

[9] If the court decides that a new primary election is warranted in the Third Congressional District, among the various options that would be available is for the primary election to be held in that congressional district on the date of the November general election, and for a special general election to be held in that district thereafter. This would be another way to meet all of the interests involved, including those of UOCAVA voters.

15

called on to perform." (internal quotation marks omitted)). Plaintiffs explicitly frame their claim that UOCAVA is unconstitutional as a solution of last resort, to be used if no other course is available to grant relief. *See* Compl. at 17. They are correct. "It is a well established principle governing the prudent exercise of this Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case." *Escambia Cty. v. McMillan*, 466 U.S. 48, 51 (1984). Rather than undertake an expedited analysis of UOCAVA's constitutionality, this Court can simply require New York to follow past remedial practices in similar cases. *See Horne v. Coughlin*, 191 F.3d 244, 246 (2d Cir. 1999) ("Under our system of constitutional government, we generally prefer some prolongation of uncertainty over unnecessary, hasty resolution of constitutional questions."). Indeed, if necessary here, this Court may, consistent with its role in other UOCAVA cases, enter an order that ensures that UOCAVA's 45-day advance transmission requirement will not conflict with any purported constitutional interest. This course is preferred because it allows New York to resolve any difficulties posed by scheduling a new primary election without requiring the Court to undertake a disfavored and unnecessary analysis of UOCAVA's constitutionality. *See Branch v. Smith*, 538 U.S. 254, 272 (2003) ("Only when it is utterly unavoidable should we interpret a statute to require an unconstitutional result – and that is far from the situation here.").

## CONCLUSION

For the foregoing reasons, this Court should resolve this litigation without addressing the merits of Plaintiffs' as applied constitutional challenge to UOCAVA.

|  | Respectfully submitted, |
|---|---|
| DATED: August 16, 2016 | |
| RICHARD S. HARTUNIAN<br>United States Attorney<br>Northern District of New York | VANITA GUPTA<br>Principal Deputy Assistant Attorney General<br>Civil Rights Division |
| | /s/ *Ernest A. McFarland* |
| JOHN D. HOGGAN, JR. – 511254<br>Assistant United States Attorney<br>United States Attorney's Office<br>James T. Foley U.S. Courthouse<br>445 Broadway, Room 218<br>Albany, N.Y. 12207 | T. CHRISTIAN HERREN, JR.<br>REBECCA J. WERTZ<br>RICHARD DELLHEIM<br>ERNEST A. MCFARLAND – 515101<br>NEAL UBRIANI – 520192<br>RACHEL EVANS<br>Attorneys, Voting Section<br>Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530 |

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2016, I served the foregoing on all counsel of record via the Court's ECF Filing System.  In addition, I hereby certify that on August 16, 2016, I served the foregoing via United States Postal Service first-class mail on the following counsel:

>Steven H. Richman
>General Counsel
>Board of Elections in the City of New York
>Executive Office
>32 - 42 Broadway, 7 Floor
>New York, NY  10004

>*/s/ Ernest A.McFarland*
>ERNEST A. MCFARLAND – 515101
>U.S. Department of Justice
>Civil Rights Division - Voting Section
>Room 7265-NWB
>950 Pennsylvania Avenue, N.W.
>Washington, DC 20530
>Phone:  (202) 307-6552
>Email:  ernest.a.mcfarland@usdoj.gov