**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

───────────────────────────────────────────

PHILIP PIDOT, NANCY HAWKINS and STEVEN AXELMAN, individually and as representatives of eligible Republican Party voters in Suffolk, Nassau and Queens Counties within New York's Third Congressional District,

                Plaintiffs,

-against-

NEW YORK STATE BOARD OF ELECTIONS; SUFFOLK COUNTY BOARD OF ELECTIONS; NASSAU COUNTY BOARD OF ELECTIONS; BOARD OF ELECTIONS IN THE CITY OF NEW YORK; PETER KOSINSKI and DOUGLAS KELLNER, in their official capacities as Commissioners and Co-Chairs of the New York State Board of Elections; ANDREW J. SPANO and GREGORY P. PETERSON, in their official capacities as Commissioners of the New York State Board of Elections; and TODD D. VALENTINE and ROBERT A. BREHM, in their official capacities as Co-Executive Directors of the New York State Board of Elections,

                Defendants,

-and-

JACK MARTINS,

                Defendant-Intervenor.

**No. 16-cv-859 (FJS/CFH)**

───────────────────────────────────────────

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT-INTERVENOR'S MOTION FOR RELIEF FROM JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................................... 1

ARGUMENT ..................................................................................................................................... 2

    I.    This Court Should Modify Its Order And Move The General Election For The Third Congressional District To December 6, 2016 ....................................................................... 2

    II.    In The Alternative, This Court Should Withdraw Its Order That A New Primary Election Be Held On October 6, 2016 ................................................................................................. 5

        A.    The Court's Order Violates Principles Set Forth in *Purcell v. Gonzalez* ........................ 5

        B.    The Court's Order Results in Differential Treatment of Similarly Situated Candidates for Office in Violation of the Equal Protection Clause .................................................... 7

CONCLUSION .................................................................................................................................. 9

## TABLE OF AUTHORITIES

**Cases**

Analytical Surveys Inc. v. Tonga Partners, L.P., 684 F.3d 26 (2d Cir. 2012) ................................ 1
Busbee v. Smith, 549 F. Supp. 494 (D.D.C. 1982) ............................................................. 2, 3, 4, 5
Clark v. Jeter, 486 U.S. 456 (1988) ................................................................................................ 8
Cobos v. Adelphi Univ., 179 F.R.D. 381 (E.D.N.Y. 1998) ............................................................ 2
Davis v. FEC, 554 U.S. 724 (2008) ................................................................................................ 8
Democratic-Republican Org. v. Guadagno, 900 F. Supp. 2d 447 (D.N.J. 2012) .......................... 5
Doe v. Reed, 561 U.S. 186 (2010) .................................................................................................. 5
Hines, Inc. v. United States, 551 F.2d 717 (6th Cir. 1977) ............................................................ 3
In re Beacon Associates Litig., 818 F. Supp. 2d 697 (S.D.N.Y. 2011) ......................................... 1
Interstate Commerce Commission v. Southern Railway, 543 F.2d 534 (5th Cir. 1976) ................ 3
Mazzone v. Stamler, 157 F.R.D. 212 (S.D.N.Y. 1994) .................................................................. 2
Morton v. Mancari, 417 U.S. 535 (1974) ....................................................................................... 4
Nordlinger v. Hahn, 505 U.S. 1 (1992) .......................................................................................... 8
Payne v. Washington Metropolitan Area Transit Commission, 415 F.2d 901 (D.C. Cir. 1968) .... 3
Purcell v. Gonzalez, 549 U.S. 1 (2006) ...................................................................................... 5, 6
Riddle v. Hickenlooper, 742 F.3d 922 (10th Cir. 2014) ............................................................. 7, 8
Riley v. Kennedy, 553 U.S. 406 (2008) .......................................................................................... 5
SEIU Local 1 v. Husted, 698 F.3d 341 (6th Cir. 2012) .................................................................. 5
Shrader v. CSX Transp., Inc., 70 F.3d 255 (2d Cir. 1995) ............................................................ 1
South Carolina v. Katzenbach, 383 U.S. 301 (1966) ..................................................................... 3
Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17 (1st Cir. 1992) ...................................................................................................... 1
The Vestris, 53 F.2d 847 (S.D.N.Y. 1931) ..................................................................................... 3
U.S. v. Tynen, 78 U.S. 88 (1871) .................................................................................................... 3
United States v. Tynen, 78 U.S. 88 (1870) ..................................................................................... 3
Williams v. Poulos, 11 F.3d 271 (1st Cir. 1993) ............................................................................ 1
Woodhouse v. Me. Comm'n on Governmental Ethics & Election Practices, 40 F. Supp. 3d 186 (D. Me. 2014) ............................................................................................................................ 8

**Statutes**

2 United States Code § 7 ............................................................................................................ 3
2 United States Code § 8 ............................................................................................................ 4
52 United States Code § 20301 .................................................................................................. 4
52 United States Code § 30116 .................................................................................................. 8

**Other Authorities**

80 Federal Register 5750 ........................................................................................................... 8

**Rules**

Federal Rule Civil Procedure 59 ................................................................................................ 1
Federal Rule Civil Procedure 60 ................................................................................................ 1

**Constitutional Provisions**

United States Constitution, Amendment XIV ........................................................................... 7

**INTRODUCTION**

Defendant-Intervenor seeks relief from this Court's judgment in the form of this motion to alter or amend the judgment of the Court pursuant to Federal Rule of Civil Procedure 59(e). Fed. R. Civ. P. 59(E), "The decision to grant or deny a Rule 59 motion is committed to the wide discretion of the district court." Williams v. Poulos, 11 F.3d 271, 289 (1st Cir. 1993). A motion under Fed. R. Civ. P. 59(e) is proper where (1) the moving party can show an intervening change in the controlling law; (2) upon discovery of new evidence not previously available; or (3) on a showing of the need to correct a clear error of law or prevent manifest injustice. In re Beacon Associates Litig., 818 F. Supp. 2d 697, 701-02 (S.D.N.Y. 2011) (granting motion for reconsideration under Rule 59(e). Defendant-Intervenor Martins seeks reconsideration under the third category. In particular, a motion under Rule 59(e) will be granted where "the moving party can point to controlling decisions or data that the court overlooked." Analytical Surveys Inc. v. Tonga Partners, L.P., 684 F.3d 26, 52 (2d Cir. 2012) (citing Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995)). Looking at the context of the facts of the electoral calendar and rules could reasonably be expected to alter the order and judgment.

Defendant-Intervenor additionally, or in the alternative, seeks to be relieved from the Court's judgment and order pursuant to Federal Rule of Civil Procedure 60(b) for the reasons set forth below that justify relief. Fed. R. Civ. P. 60. "The district court has wide discretion in deciding whether or not to grant a motion under Fed. R. Civ. P. 60(b), and its decision will only be reversed for clear abuse of discretion." Atkinson v. Prudential Property Co., 43 F.3d 367, 371 (8th Cir. 1994); see also Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 19 (1st Cir. 1992) ("[m]otions brought under Civil Rule 60(b) are committed to the district court's discretion"); Cobos v. Adelphi Univ., 179 F.R.D. 381,

1

388 (E.D.N.Y. 1998) ("while any Rule 60(b) motion is addressed to the sound discretion of the trial court, judicial discretion is especially broad under clause (6) to accomplish justice") (internal citation omitted); Mazzone v. Stamler, 157 F.R.D. 212, 214 (S.D.N.Y. 1994) ("It is within the court's broad discretion to grant relief under Rule 60(b). . . . In exercising this discretion, courts should balance the policy in favor of serving the ends of justice against the policy in favor of finality.").

**ARGUMENT**

**I.     This Court Should Modify Its Order And Move The General Election For The Third Congressional District To December 6, 2016**

Defendant-Intervenor motions first for a modification of the Court's order of August 17, 2016, to move the General Election for New York's 3rd Congressional District to December 6, 2016.

Rescheduling the general election to December 6, 2016, is consistent with the single instance in which a federal court has considered such an extraordinary circumstance. In Busbee v. Smith, 549 F. Supp. 494 (D.D.C. 1982), a three-judge District Court panel ordered the rescheduling of a general election for two seats of the U.S. House of Representatives in order for the State to comply with the Voting Rights Act. Id. at 518.  The Court's order included changing the date of the federal general election from its regular date of November 2, 1982, to November 30, 1982, in order to allow the State to redraw its congressional districts in compliance with federal law. See id. at 519. This decision of the three-judge panel was subsequently affirmed by the U.S. Supreme Court. Busbee, 459 U.S. at 1166.

In part, the Court acknowledged the Assistant Attorney General's objection to a rescheduled primary which would have allowed just over two months of campaigning for the general election, citing that such limited time would not allow for voters "to make a reasoned

selection among candidates." Busbee, 549 F. Supp. at 521. Moreover, the Court held that a primary election schedule affording only three weeks from finalizing district boundaries to primary election day would have "not only prevented potential candidates from mounting effective campaigns, but more important, would have frustrated voters' attempts to prepare themselves to make a reasoned choice among the candidates." Id. at 521.

Usual rules of statutory construction dictate that "where there is a conflict between an earlier statute and a subsequent enactment, the subsequent enactment governs." Interstate Commerce Commission v. Southern Railway, 543 F.2d 534, 539 (5th Cir. 1976); see also The Vestris, 53 F.2d 847, 853 (S.D.N.Y. 1931) (quoting U.S. v. Tynen, 78 U.S. 88, 92 (1871)) ("When there are two acts on the same subject, the rule is to give effect to both if possible."). The Voting Rights Act was enacted in 1965 "to rid the country of racial discrimination in voting." Busbee, 549 F. Supp. at 520 (quoting South Carolina v. Katzenbach, 383 U.S. 301, 315 (1966)). That statute was, of course, enacted long after the 1872 requirement that "[t]he Tuesday next after the 1st Monday in November, in every even numbered year, is established as the day for the election, in each of the States and Territories of the United States, of Representatives and Delegates to the Congress commencing on the 3d day of January next thereafter." 2 U.S.C. § 7; see also Act of Feb. 2, 1872, ch. 11, § 3, 17 Stat. 28, 28. *Busbee* held that "[w]hen the usual rule of statutory construction is applied to these statutes, it makes evident that section 7 in no way limits [the Voting Rights Act's] command." Busbee, 549 F. Supp. at 523*; see also* United States v. Tynen, 78 U.S. 88, 92 (1870); Hines, Inc. v. United States, 551 F.2d 717, 725 (6th Cir. 1977); Payne v. Washington Metropolitan Area Transit Commission, 415 F.2d 901, 908 (D.C. Cir. 1968); 2A C. Sands, Statutes and Statutory Construction § 51.02 (4th ed. 1973).

Moreover, *Busbee* recognized that rescheduling an election to a date other than that prescribed by section 7 is permissible under the companion section 8(a), which provides in part:

> [T]he time for holding elections in any State, District, or Territory for a Representative or Delegate to fill a vacancy, whether such vacancy is caused by a failure to elect at the time prescribed by law, or by the death, resignation, or incapacity of a person elected, may be prescribed by the laws of the several States and Territories respectively.

2 U.S.C. § 8. *Busbee* held that this section meant that "where exigent circumstances arising prior to or on the date established by section 7 preclude holding an election on that date, a state may postpone the election until the earliest practicable date." Busbee, 549 F. Supp. at 526.

Similarly, the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA), 52 U.S.C. § 20301 *et seq.*, enacted in 1986, as amended by the Military and Overseas Voter Empowerment (MOVE) Act of 2009, must now be read in conjunction with earlier enacted legislation. Simply stated, UOCAVA, as amended by the MOVE Act, demands that an election not have the effect of disenfranchising overseas and military voters by requiring that states transmit validly requested absentee ballots to UOCAVA voters not later than 45 days before an election for federal office when the request is received at least 45 days before the election. Id. § 20302(a)(8)(A). Congress was certainly aware of the provisions of 2 U.S.C. § 7 when it legislated in this area. However, because section 8 "creates an exception to section 7's absolute rule in a limited class of cases," Busbee at 527, UOCAVA and section 7 are "capable of coexistence." Morton v. Mancari, 417 U.S. 535, 552 (1974).

Further, the schedule currently proposed by the Court affords a mere four weeks for one party's nominee to campaign for the general election, while the other party's nominee will have been afforded the advantage of campaigning for the general election for a full five months. If, however, the primary election is not immediately certified the Republican nominee will have

4

even less than those mere four weeks to campaign for the general election. Such an inherent disadvantage is clearly at odds with the standards established in *Busbee*, which proposed a schedule that would not prevent "potential candidates from mounting effective campaigns," or more importantly, would frustrate "voters' attempts to prepare themselves to make a reasoned choice among the candidates." Busbee, 549 F. Supp. at 521.

## II. In The Alternative, This Court Should Withdraw Its Order That A New Primary Election Be Held On October 6, 2016

### A. The Court's Order Violates Principles Set Forth in *Purcell v. Gonzalez*

In the alternative, Defendant-Intervenor moves that this Court withdraw its August 17, 2016, Order requiring a new primary be held on Thursday, October 6, 2016, for two reasons.

First, holding a new primary on a Thursday in October, only one month before a highly contested general election, is certain to cause voter confusion and hardship, especially in light of the fact that this primary election was already held months ago, and that the general election follows barely one month later. In *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006), the U.S. Supreme Court explained that "Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls." See also Doe v. Reed, 561 U.S. 186 (2010); Riley v. Kennedy, 553 U.S. 406, 411 (2008) ("practical considerations sometimes require courts to allow elections to proceed despite pending legal challenges"); SEIU Local 1 v. Husted, 698 F.3d 341, 345 (6th Cir. 2012) ("As a general rule, last-minute injunctions changing election procedures are strongly disfavored. . . . The plaintiffs' failure to act earlier in pursuing these claims significantly undermines their assertions of irreparable harm in the absence of the injunction."); Democratic-Republican Org. v. Guadagno, 900 F. Supp. 2d 447, 461 (D.N.J. 2012) ("At this late state in the election process, any injunctive remedy ordered by this Court would dramatically upset ongoing ballot printing

5

and distribution."). Accordingly, such orders are disfavored. Following the *Purcell* principle, it is critical that this Court's Order be weighed carefully in light of the voter confusion and hardship it will assuredly cause. See Purcell, 549 U.S. at 4-5.

Second, while the Order requires that New York State Defendants seek a "hardship exemption" from the UOCAVA 45-day requirement, the Order does not clarify which ballot or in which order the ballots are to be sent to military and overseas voters, thereby causing further voter confusion, uncertainty as to the content of the multiple ballots, and as a result, likely causing the disenfranchisement of military and overseas voters. This is a critical point that must be addressed, as various ballots could overlap in the ballot mailing timeline.

For instance, the Court's Order is unclear as to: (1) whether all general election ballots containing only the Presidential race and U.S. Senate race will be mailed to all voters from the Third Congressional District, (2) Whether a primary ballot containing only the Third Congressional District Republican Primary will be mailed to Republican primary voters separately from the general election ballot, or (3) whether only the primary election ballot for the Republican Congressional primary will be mailed to primary voters from the Third Congressional District, followed by a complete general election ballot for all voters that will necessarily be delayed until after the results of the newly-ordered Congressional primary are certified and new ballots can be printed.

One of the rationales supporting the Supreme Court's *Purcell* principle was the Court's acknowledgment that hastily issued court orders impacting elections fail to recognize "the necessity for clear guidance to the State." Purcell, 549 U.S. at 5. The result is confusion and chaos. In the instant matter, ordering a new primary election one month prior to the scheduled general election, without providing election administrators with "clear guidance" on how

precisely the ballot mailing timeline must be adjusted to ensure that military and overseas voters are not disenfranchised, will result in, at best, confused military and overseas voters, and, as a likely outcome, disenfranchised military and overseas voters. While the Court's Order is succinct, its lack of clarity and guidance threatens the integrity of the elections process, and threatens the ability of the other Defendants to make a proper waiver application under the MOVE Act. Following the U.S. Supreme Court's guidance in *Purcell*, this Court should allow the general election to proceed as scheduled without requiring a new primary election given that the state courts have already adjudicated the same questions about the primary, particularly given the voter confusion and disenfranchisement of military and overseas voters that is likely to result.

      **B.**    **The Court's Order Results in Differential Treatment of Similarly Situated Candidates for Office in Violation of the Equal Protection Clause**

The Equal Protection Clause of the Fourteenth Amendment guarantees all persons the equal protection of the laws. See U.S. Const. amend XIV. Under New York law, the Republican and Democrat Party primaries were held on June 28, 2016. See Dkt. No. 1-2, p. 2. The Democrat candidate, therefore, has 132 total days to campaign for that office between June 29, 2016 and November 8, 2016.

The district court's ruling ordering a second primary election on October 6, 2016 drastically shortens the time available to campaign for the general election for the Republican candidate. Because of the federal court's order, the time the Republican candidate has to campaign for federal office has shrunk to just 32 days. This violates the Equal Protection Clause enshrined in the Fourteenth Amendment.

Courts have found differing contribution limits for candidates competing against each other in the same election as violating the Equal Protection Clause. See Riddle v. Hickenlooper, 742 F.3d 922, 930 (10th Cir. 2014). Similarly, here, the Republican nominee and the Democrat

nominee are similarly situated in that they are competing for the same office on the same General Election day, November 8, 2016. Thus they are similar "in all relevant respects." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992); see also Woodhouse v. Me. Comm'n on Governmental Ethics & Election Practices, 40 F. Supp. 3d 186, 194 (D. Me. 2014).

After the Court's order of a new primary on October 6, 2016, however, the Republican nominee will now have only 32 days to campaign in the general election, whereas the Democrat will have 100 extra days to campaign for the same office.

Generally, to satisfy Equal Protection Clause scrutiny, a government action that differentiates between similarly situated persons is constitutional so long as it has a rational relationship to a legitimate government objective. But when government action infringes upon fundamental rights, such as the right to vote, the government action must be analyzed under strict scrutiny. See Clark v. Jeter, 486 U.S. 456, 461 (1988).

Here, the Court's order to hold a second primary election 32 days before the general election compels the Republican nominee to campaign against the Democrat opponent at a drastic disadvantage: 100 fewer campaign days. This poses an undue burden on the Republican nominee that is not shared by the Democrat nominee. This violates the Equal Protection Clause. See Riddle, 742 F.3d at 930; cf. Davis v. FEC, 554 U.S. 724 (2008) (stating that, using equal protection terms, that the Supreme Court has "never upheld the constitutionality of a law that imposes different contribution limits for candidates who are competing against each other.").

Additionally, the Court's order creates an additional disadvantage for the Republican nominee competing against the Democrat nominee for the same office. Under the Federal Election Campaign Act, contributors can contribute $2,700 per election to candidates for federal office. See 52 U.S.C. § 30116(a)(1)(A); 80 Fed. Reg. 5750, 5751 (Feb. 3, 2015). After the June

8

28, 2016 primary, both the Republican nominee and Democrat nominee were then permitted to use general election funds and convert any unused primary funds into their general election accounts.

But now, because of the Court's order, the Republican nominee must cease using general election funds. Presumably because the Republican nominee's primary funds were shifted into general election funds, this will likely require the Republican nominee to begin soliciting primary contributions again with little clarity about whether this is a new election pursuant to the Federal Election Campaign Act or subject to primary contribution limits applicable to the June 28, 2016 primary, while the Democrat nominee can continue using general election funds to campaign for the November general election. This, too, puts the Republican nominee at a competitive disadvantage.

## CONCLUSION

For the foregoing reasons, Defendant-Intervenor's Motion for Relief should be granted.

Dated: August 19, 2016
      Albany, New York

                              Respectfully submitted,

                              /s/ Paul DerOhannesian II
                              Paul DerOhannesian II (Bar Roll 104792)
                              Danielle R. Smith (Bar Roll 517775)
                              DerOhannesian & DerOhannesian
                              677 Broadway, Suite 707
                              Albany, New York 12207

                              Jason Torchinsky (D.C. Bar No. 976033)*
                              Holtzman Vogel Josefiak PLLC
                              45 North Hill Drive, Suite 100
                              Warrenton, VA 20186
                              *pro hac vice application to be filed*

                              *Attorneys for Defendant-Intervenor Jack Martins*